**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| ASYLUM SEEKER ADVOCACY PROJECT<br>228 Park Ave. S. #84810<br>New York, NY 10003-1502,<br><br>                        Plaintiff,<br><br>   v.<br><br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES<br>5900 Capital Gateway Dr.<br>Camp Springs, MD 20746<br>Prince George's County,<br><br>JOSEPH B. EDLOW, in his official capacity<br>as Director of United States Citizenship and<br>Immigration Services<br>5900 Capital Gateway Dr.<br>Camp Springs, MD 20746<br>Prince George's County,<br><br>EXECUTIVE OFFICE FOR IMMIGRATION<br>REVIEW<br>5107 Leesburg Pike<br>Falls Church, VA 22041, and<br><br>SIRCE E. OWEN, in her official capacity as<br>Acting Director of the Executive Office for<br>Immigration Review<br>5107 Leesburg Pike<br>Falls Church, VA 22041,<br><br>                        Defendants. | Civil Action No. _____ |

**Complaint**

Plaintiff the Asylum Seeker Advocacy Project ("ASAP") alleges as follows:

## I.    Introduction

1.    On July 4, 2025, the President signed into law the One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 ("OBBBA" or "the Act").  As relevant here, the Act creates new requirements that asylum applicants pay an annual asylum fee for each calendar year their applications remain pending in the backlog.  Pub. L. No. 119-21, § 100009(a), 139 Stat. at 371 (codified at 8 U.S.C. § 1808(a)).  Defendants United States Citizenship and Immigration Services ("USCIS") and the Executive Office for Immigration Review ("EOIR") are tasked with operationalizing this new statutory requirement.  Both agencies have failed to do so in a lawful or coherent manner.  These failures have caused significant confusion among and a strain on asylum seekers and the attorneys and organizations that support them.  And they threaten to deprive asylum seekers of full and fair consideration of their claims.

2.    Both USCIS and EOIR are improperly attempting to impose the new annual asylum fee retroactively in two ways.  The agencies are retroactively imposing the annual asylum fee by: (1) requiring asylum seekers whose applications were already pending on July 4, 2025 to pay the annual asylum fee; and (2) counting the time the applications were pending prior to July 4 to determine whether the applications have been pending for a "calendar year."  USCIS's and EOIR's imposition of annual asylum fees on applications that were pending as of July 4, 2025 violates the fundamental rule that a statute cannot "operate retroactively . . . absent clear congressional intent favoring such a result."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

3.    To make matters worse, the agencies have failed to implement these supposedly mandated fees in a rational or coherent manner, resulting in massive confusion and uncertainty for asylum seekers.  For reasons that remain unclear, EOIR and USCIS chose different dates to begin imposing the annual asylum fee.  According to EOIR, the first annual asylum fees were due on

July 5, 2025, for applicants who applied for asylum a year or more before that date. According to USCIS's initial instructions, however, the first annual asylum fees would not be due until September 30, 2025 (at the earliest) for individuals with asylum applications filed on or before October 1, 2024.

4.      According to USCIS, the agency "began sending notices" on October 1 to asylum seekers "who are required to pay the new Annual Asylum Fee," and that if applicants receive a notice, they "should pay the fee within 30 days." On or about October 2, USCIS made available on its website a portal for applicants to pay the annual asylum fee. This new development came after USCIS's prior ambiguous suggestion of a September 30 deadline, which prompted mass panic among asylum seekers who received advice that they had to pay the $100 fee by that date.

5.      Moreover, even though both agencies claim that many applicants are already required to pay the annual asylum fee, until two days ago, neither agency had provided applicants any way to pay. Although USCIS appears to have finally created a mechanism to pay, as of the date of this filing, many applicants had yet to receive guidance from USCIS about when they would be required to pay and were unable to use the mechanism to pay the fee in advance.

6.      For applicants who are purportedly required to pay the annual asylum fee to EOIR, EOIR *still* has not made available *any* mechanism through which they can pay fees that, according to the agency, are already due. Further, both agencies have failed to provide clear guidance to applicants as to how (and whether) their annual asylum fees are due to be paid. This state of affairs is confounding applicants, their attorneys, and immigration judges alike.

7.      Troublingly, ASAP has received reports that some immigration judges at EOIR are already requiring applicants to have paid the annual asylum fee, and in at least one case even

rejected an asylum application and ordered an asylum seeker removed for non-payment of the annual asylum fee, despite the agency providing no way to pay this fee.

8.    The annual asylum fee imposes economic hardship on asylum seekers, many of whom have limited means. That problem is magnified by USCIS's and EOIR's retroactive application of the statute, which purports to require asylum seekers to come up with the funds on short (or no) notice.

9.    Again, this harm is compounded by the agencies' lack of clear guidance, which has led some families to attempt to pay the *initial* asylum fee required by OBBBA for new applications in lieu of any mechanism to pay the *annual* fee. It is unclear whether such payments will be counted, returned, or forfeited, or whether the agencies will inform applicants of how they will treat these desperate attempts to comply with the agencies' expectations.

10.    Many other crucial questions also remain unanswered. For example, do applicants with appeals pending at EOIR have to pay the annual asylum fee? If so, when? What about applicants who initially filed with EOIR but then later filed with USCIS? When will the agencies provide applicants individualized notice, as USCIS has explicitly promised? Will it come via snail mail, an email, or a text? Will EOIR provide applicants *any* notice or opportunity to pay before it rejects their applications for non-payment? Can applicants pay the fee in advance to avoid missing the deadline? If an immigration judge erroneously orders an applicant removed for non-payment, where does the applicant go for relief? How can an applicant who has been detained pay the fee without access to the internet or their bank account?

11.    Despite the economic hardship, and even though the agencies lack statutory authority to impose the annual asylum fee retroactively, the vast majority of asylum seekers are urgently seeking to discern the appropriate way to pay. After all, the stakes for asylum seekers with pending

applications could not be higher.  Both agencies have declared that applicants' failure to pay annual asylum fees will result in the denial or dismissal of their applications—a devastating result with severe trickle-down effects, including the potential loss of employment authorization or an applicant's ability to seek asylum at all.  And that is not to mention the obvious and severe risk of deportation to the countries from which applicants sought asylum in the first place, where they could face persecution, torture, or worse.

12.     The fear and confusion caused by USCIS's and EOIR's inability to provide clear instructions or roll out payment mechanisms in a timely manner is the natural consequence of the agencies' unlawful decision to impose the fees retroactively.  Congress gave the agencies plenty of time to provide asylum seekers with notice of the annual asylum fee before it would become due and to provide a method of and clear instructions for payment—under the statute, the first fees should not be due until one "calendar year" *after* July 4, 2025, at the earliest.  Instead of following the statute and taking the time they needed, the agencies have placed asylum seekers in the untenable position of trying to determine how to pay retroactive fees without adequate notice, and without any clear guidance or instructions that would give them the chance to comply and avoid the risk that their applications will be dismissed.

13.     This lawsuit challenges: (1) USCIS's and EOIR's unlawful application of the annual asylum fee retroactively; (2) USCIS's and EOIR's arbitrary and capricious decisions to impose the fee retroactively; and (3) EOIR's unlawful withholding and unreasonable delay of agency action to provide applicants with a clear mechanism and necessary instructions on how to pay the fee, to the extent payment is required.

14.     For these reasons and more, the Court should grant emergency preliminary relief barring USCIS and EOIR from requiring asylum seekers who filed their applications on or before

July 4, 2025 to pay the annual asylum fee while this litigation is pending, set aside USCIS's and EOIR's unlawful interpretations of the Act, and order EOIR to provide a mechanism and clear instructions pursuant to which applicants can pay the annual asylum fee (to the extent the Act requires it) and refrain from penalizing applicants for nonpayment until it gives them notice and a reasonable opportunity to pay. ASAP plans to seek preliminary relief in the coming days.

## II. Parties

15.    Plaintiff ASAP is a national voluntary membership organization of asylum seekers from 175 countries who are now living in the United States. ASAP is a nonprofit organization headquartered in New York, New York.

16.    ASAP provides members with legal and community support, including time-sensitive updates, legal resources, and opportunities for members to work together for nationwide systemic reform based on the priorities identified by its membership.

17.    Asylum seekers apply to join ASAP by filling out a voluntary online membership form. ASAP issues each member a digital membership card and member ID that they can use to identify themselves to ASAP and access the full range of member benefits. Although ASAP members must be at least 14 years old, the benefits of ASAP membership also extend to the children of ASAP members as derivatives of their parents' membership. ASAP's members do not pay any fees or costs for their membership.

18.    While some ASAP members have already won asylum or have lawful permanent residency, thousands of ASAP members have pending asylum applications. Members regularly report they have been waiting for more than five years for their asylum application to be adjudicated.

19.     Defendant United States Citizenship and Immigration Services is a federal agency within the Department of Homeland Security.  USCIS headquarters are located at 5900 Capital Gateway Drive, Camp Springs, Maryland 20746.

20.     Defendant Joseph B. Edlow is the Director of USCIS.  ASAP brings claims against Director Edlow solely in his official capacity.

21.     Defendant Executive Office for Immigration Review is a federal agency within the Department of Justice.  EOIR's headquarters are located at 5107 Leesburg Pike, Falls Church, Virginia 22041.

22.     Defendant Sirce E. Owen is the Acting Director of EOIR.  ASAP brings claims against Acting Director Owen solely in her official capacity.

## III.    Jurisdiction and Venue

23.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*  This Court therefore has subject-matter jurisdiction under 28 U.S.C. § 1331.

24.     ASAP has associational standing because its members have standing to sue in their own right.  *See, e.g.*, *United Food & Com. Workers Union Loc. 751 v. Brown Group, Inc.*, 517 U.S. 544, 552–53 (1996).  Thousands of ASAP members will be forced to pay fees or risk denial or dismissal of their asylum applications solely because of USCIS's and EOIR's retroactive application of the annual asylum fee and EOIR's failure to provide applicants any way to pay the fee.  ASAP members' interests are directly related to ASAP's organizational purpose in helping them navigate the asylum system and achieve successful outcomes.  And this lawsuit does not require the participation of ASAP's individual members because ASAP seeks only declaratory and injunctive relief under the APA and the case raises pure questions of law.

25.    Below are descriptions of some of the ASAP members with pending asylum applications before EOIR and USCIS.  These are just examples.  ASAP has thousands of members who may be harmed by the agencies' unlawful implementation of the annual asylum fee.  Thousands of ASAP members have already expressed stress or confusion about how and when to pay asylum fees.[1]

26.    The following are some of the ASAP members with asylum applications pending before EOIR:

27.    **Jon** is an ASAP member from Russia living in New Jersey.  Jon applied for asylum before EOIR in 2022.  Jon has not paid the annual asylum fee with EOIR and is confused about what he is supposed to do.  Jon first learned about the fee from some colleagues who are also asylum seekers.  Jon has not paid the annual asylum fee.  He has been very worried because he does not have extra income to pay a fee, and he has not received any instruction from the government on how or when he is supposed to pay.

28.    **Michelle** is an asylum seeker from Honduras who lives in Texas.  She entered the United States in 2021 and applied for asylum with EOIR in 2022.  Her asylum application was denied, and she is now in the process of appealing her case, though she does not know how long the appeal will take.  She recently learned through the news about the new annual asylum fee but has not paid the fee.  She has not received any notice or instruction to pay it.  Michelle is already having trouble making ends meet and worries she will not be able to pay the annual asylum fee, if and when there is a way to pay.  She worries that failure to pay could lead to greater fines or even a deportation order.

---

[1] The ASAP members identified in this Complaint are using pseudonyms.

29.    **Greg** is an ASAP member from Russia living in California.  Greg came to the United States in 2023 and applied for asylum with EOIR thereafter.  Greg has not paid the fee because he is confused about how and when to pay the fee.  Greg worries that if he pays now for the initial fee, the money will not go towards the annual fee, and he will have to pay another $100.  Greg feels confused by the lack of guidance, and he has been trying to find more information about the annual asylum fee.  He is also concerned that the lack of information about how to pay the fee and the lack of an option to pay the fee in person will make him susceptible to online scammers.

30.    **Natalia** is a Colombian ASAP member, now living in Georgia.  She arrived to the United States in 2023, and she applied for asylum with EOIR shortly thereafter.  Natalia has not yet paid the annual asylum fee because she is not sure whether she needs to pay and has not received clear instructions about when and how to pay.  She is very concerned about the annual asylum fee because it conditions access to the fundamental right to asylum on having sufficient money.

31.    Under EOIR's retroactive interpretation of the Act, each of these ASAP members is required to pay the annual asylum fee despite the expectation at the time of filing their application for asylum that their applications would not be subject to an annual fee.  According to the EOIR, some of them were required to pay the annual asylum fee as early as July 5, 2025.  Despite this payment deadline, the ASAP members identified above have not received any notice from EOIR concerning how to pay the fee.

32.    The following are some of the ASAP members with asylum applications pending before USCIS:

33.    **Mark Anthony** is an ASAP member from Nigeria who lives in Pennsylvania.  He came to the United States in 2019 and applied for asylum with USCIS in 2020.  Mark Anthony

recently learned about the new annual asylum fee through news reports.  He is concerned about how it could affect his case if he does not pay—e.g., whether it could lead to collections proceedings, create complications for his asylum case, or result in him being ordered removed.  As of the date of this filing, he has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

34.    **Mustafa** is an asylum seeker and ASAP member from Turkey.  Mustafa lives in California and applied for asylum with USCIS in 2022.  As of September 30, 2025, his USCIS online account showed no notice or instructions about the new annual asylum fee.  He first learned of the fee on September 22, 2025, from a YouTube video posted by an attorney, and he remains anxious and confused absent guidance from the government about when and how he should pay.  Mustafa fears that he could face deportation simply for missing a payment deadline he was never told about, and he is anxious that this could happen at any time.  Mustafa worries that the lack of guidance will increase online scams, which makes him more nervous.  Mustafa is also concerned about affording the annual payment.  As of the date of this filing, he has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

35.    **Richard** is an ASAP member from Venezuela who lives in Florida.  He arrived in the United States in 2017 and applied for asylum with USCIS that same year.  Richard is very worried about the annual asylum fee.  After OBBBA passed, he waited for USCIS to release information on when and how to pay the fee and was disappointed when USCIS failed to provide any of these details.  Richard has been anxiously waiting for the notice USCIS promised it would send, but he has yet to receive any notice.  He is also very anxious because USCIS recently created a portal for asylum seekers to pay the annual asylum fee, but he still cannot use the portal to pay the fee.  He worries that he will have to prioritize the annual asylum fee over other bills.  As of the

date of this filing, he has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

36.    **Syed** is an asylum seeker and ASAP member from India who now lives in California.  Syed applied for asylum in 2024 with USCIS.  Syed has not paid the fee because he is waiting for a communication by mail or by email from USCIS explaining whether and how he should pay. Syed found out about the fee from the ASAP member newsletter.  Syed is worried that he is not in a position to pay the fee.  As of the date of this filing, he has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS. Syed tried to pay the fee online, but USCIS said the fee is not due yet in his case.

37.    **Alba** is an ASAP member from Honduras, now living in Texas.  Alba applied for asylum with EOIR upon entering the United States.  Her case was dismissed at EOIR, and she was instructed to apply for asylum with USCIS if she wanted to continue her case.  She applied for asylum in 2024 with USCIS.  She is very confused about how to pay the annual asylum fee.  Alba is also very worried about not being able to afford paying the annual fee.  As of the date of this filing, she has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

38.    **Jeff** is an ASAP member and asylum seeker from Kenya.  Jeff has been waiting in the USCIS asylum backlog for over ten years.  Jeff is very concerned about the fee, not only because he does not know when he is supposed to pay it and has not received any notice, but also because at this time he would have difficulty affording it.  Jeff has a family to feed, and this fee adds yet another financial burden on his shoulders.  As of the date of this filing, he has not received a notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

39.    **Aaron** is an ASAP member from Haiti, living in Maryland.  He came to the United States in 2021 and applied for asylum with USCIS that same year.  Aaron feels confused, stressed, and frustrated about the new annual asylum fee.  He recently lost his job, and he worries he cannot afford it.  As of the date of this filing, he has not received any notice from USCIS and has not been able to pay the annual asylum fee with USCIS.

40.    Under USCIS's retroactive interpretation of the Act, each of these ASAP members may be required to pay the annual asylum fee despite their expectations at the time of filing their applications that applying for asylum was free and that their applications would not be subject to annual fees.

41.    Venue is proper under 28 U.S.C. § 1391(e)(1) because this is an action against agencies of the United States and USCIS is headquartered in Camp Springs, Maryland.  Venue is proper for the other federal defendants because at least one defendant in the action resides in this District.

## IV.    Factual Allegations

### A.    Legal Background on the U.S. Asylum System

42.    The United States has long been a safe haven for individuals from around the world fleeing persecution.

43.    Congress passed and the President signed the first specific "refugee" act, the Displaced Persons Act of 1948, in the aftermath of World War II and gave millions of displaced Europeans a safe home.  Over the ensuing decades, Congress expanded asylum opportunities for refugees from around the world.  The Immigration and Nationality Act ("INA") of 1965 provided a pathway to admission for refugees from the Eastern Hemisphere.

44.    In the Refugee Act of 1980, Congress eliminated the geographical and ideological limitations on the definition of "refugee" in the INA, created a statutory right to apply for asylum,

and increased the number of refugees who could be admitted to the United States on an annual basis.  8 U.S.C. § 1158(a)(1).

45.    Generally, applicants must file their asylum applications with either USCIS or EOIR within one year of arrival in the United States or forfeit their ability to apply.  8 U.S.C. § 1158(a)(2)(B).

46.    There are two ways to apply for asylum: affirmatively with USCIS, or defensively before an immigration judge at EOIR.

47.    Applicants seek asylum defensively before immigration judges if they are in re-moval proceedings, which are initiated when the government files a Notice to Appear with the immigration court.[2]  If an applicant does not have removal proceedings pending, generally the applicant must file an asylum application with USCIS before the one-year deadline lapses to pre-serve their eligibility.  8 U.S.C. § 1158(a)(2)(B).

48.    A person's asylum application can be pending before only one agency at a time, but there are some circumstances in which a person's asylum case may be moved between USCIS and EOIR.

49.    Congress requires asylum applications to be adjudicated within 180 days of filing, barring exceptional circumstances.  8 U.S.C. § 1158(d)(5)(A)(iii).  But in reality, both USCIS and EOIR often take many years to adjudicate an asylum application.

---

[2] *See generally* U.S. Citizenship & Immigr. Servs., U.S. Dep't of Homeland Sec., Policy Memo-randum 602-0187, *Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens* (Feb. 28, 2025), https://www.uscis.gov/sites/default/files/document/policy-alerts/NTA_Policy_FINAL_2.28.25_FINAL.pdf (explaining USCIS, Immigration and Customs Enforcement ("ICE"), and Customs and Border Protection ("CBP") have concurrent authority to issue Notices to Appear and file them with an immigration court to commence removal proceed-ings).

50. Indeed, the most recent Office of the Inspector General Report on the asylum back-log at USCIS reported that over 97% of asylum cases at USCIS were not adjudicated within the 180-day period required.[3]  The backlog has only grown since that report.

51. USCIS itself has acknowledged a "massive backlog" of asylum applications, *see Hasnat v. Rubio*, No. 24-02175, 2025 WL 675221, at *4 (D. Md. Mar. 3, 2025), with a recent report confirming a backlog of more than one million asylum applications at USCIS alone.[4]

52. Similarly, as of the end of February 2025, EOIR had a growing backlog of 1,961,655 asylum applications filed by immigrants who are waiting for asylum hearings or deci-sions in immigration court.[5]

53. The growing backlogs in asylum adjudications have caused lengthy delays, signifi-cant burdens, and uncertainty for asylum seekers with long-pending applications.[6]

54. As of the filing of this lawsuit, ASAP has thousands of members whose asylum applications have been pending for more than a year.  In fact, ASAP members have long raised the issue of asylum backlogs to ASAP as one of the biggest issues facing asylum seekers.  As a result, ASAP has made advocacy for ending asylum backlogs one of the organization's top policy priorities.

---

[3] Off. of Inspector Gen., U.S. Dep't of Homeland Sec., *Final Report: USCIS Faces Challenges Meeting Statutory Timelines and Reducing Its Backlog of Affirmative Asylum Claims* 6 (2024), https://www.oig.dhs.gov/sites/default/files/assets/2024-07/OIG-24-36-Jul24.pdf.

[4] *See, e.g.*, Citizenship and Immigr. Servs. Ombudsman, U.S. Dep't of Homeland Sec., *Annual Report 2024* (2024), https://www.dhs.gov/sites/default/files/2024-07/24_0628_cisomb_2024-an-nual-report.pdf.

[5] *See Immigration Court Backlog: Overall Down, Asylum Backlog Up*, TRAC Reports (Mar. 20, 2025), https://tracreports.org/whatsnew/email.250320.html.

[6] *See, e.g.*, Ayelet Parness, *Asylum Backlog Presents Anguish, Uncertainty for Seekers*, HIAS (Apr. 4, 2024), https://hias.org/news/asylum-backlog-presents-anguish-uncertainty-seekers/.

55.     Historically, the government did not require asylum applicants to pay any fees to apply for asylum, let alone annual fees while they awaited a decision on their applications.

56.     Asylum applicants generally cannot be deported while their asylum claims are pending.  Moreover, an asylum seeker is eligible for work authorization while they await adjudication of their asylum application.  But asylum seekers must wait for 150 days after their asylum application is continuously pending with USCIS or EOIR before submitting their first application for an employment authorization document, and an additional 30 days before they can receive their work permit.  *See* 8 C.F.R. §§ 208.7(a)(1), 274a.12(c)(8).  Interruptions in the pendency of an asylum claim can delay an applicant's ability to receive work authorization.

**B.      The One Big Beautiful Bill Act Introduces the Annual Asylum Fee, and USCIS and EOIR Quickly Release Documents Purporting to Impose the Fee Retroactively**

57.     On July 4, 2025, President Trump signed into law the One Big Beautiful Bill Act.  Among many other things, the Act imposes new statutory fees for various immigration-related benefits, including applications for asylum.  As relevant here, the Act imposes a fee to apply for asylum in the first instance, as well as an annual asylum fee for applications that remain pending for a calendar year or more.  This lawsuit challenges EOIR's and USCIS's actions only with respect to the annual asylum fee.

58.     For the initial asylum fee, the Act provides that "the Secretary of Homeland Security or the Attorney General . . . shall require the payment of" the initial asylum fee "at the time such application is filed."  8 U.S.C. § 1802(a).  Subsection (b) pegs the amount of the fee to inflation, providing that in "fiscal year 2025," the fee must be the greater of $100 or "such amount as the Secretary or the Attorney General" establishes "by rule."  *Id.* § 1802(b).  In later years, the fee equals the sum of the prior year's fee and an inflation adjustment.  *Id.* § 1802(c).

59.     For the annual asylum fee, the Act similarly provides that "for each calendar year that an alien's application remains pending, the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a fee, equal to the amount specified in subsection (b)."  8 U.S.C. § 1808(a).

60.     Subsection (b), in turn, provides the "Amount specified" for the annual asylum fee and, like the initial asylum fee, pegs the minimum amount of the annual asylum fee to inflation, again using fiscal year 2025 as the baseline to calculate the amount:  "For fiscal year 2025, the amount specified in this section shall be the greater of . . . $100" or "such amount as the Secretary of Homeland Security may establish, by rule."  8 U.S.C. § 1808(b)(1).  For fiscal year 2026 and subsequent years, "the amount specified in this section shall be equal to the sum of" the prior fiscal year's fee plus an inflation adjustment.  *Id.* § 1808(b)(2).

61.     Within a few weeks of the enactment of the Act, both EOIR and USCIS issued documents to implement the Act's new requirements.

62.     EOIR announced its position in a policy memorandum on July 17, 2025.  *See* Sirce E. Owen, Exec. Off. for Immigr. Rev., U.S. Dep't of Just., Policy Memorandum 25-36 (Amended), *Statutory Fees Under the One Big Beautiful Bill Act* (July 17, 2025), https://www.justice.gov/eoir/media/1408356/dl?inline (the "EOIR Memo").  The EOIR Memo purported to "implement[] the statutorily mandated immigration fees and fee waiver changes established by" the Act.  *Id.* at 1.

63.     EOIR stated that "an asylum application filed on July 7, 2024, that was still pending as of July 7, 2025, would be subject to the fee."  EOIR Memo at 2 n.4.  EOIR further determined that asylum applicants who applied for asylum in prior years before the enactment of OBBBA must pay annual asylum fees as early as July 5, 2025—the "date after the date of enactment of

OBBBA." *Id.* at 2.  EOIR also warned that "[f]ilings that do not comply with the statutory fee requirement shall be rejected." *Id.* at 3.

64.    USCIS announced its position in a notice published in the Federal Register on July 22, 2025.  *See* USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 Fed. Reg. 34511, 34511 (July 22, 2025) ("USCIS Notice").

65.    Under the USCIS Notice, any asylum applicant with a pending application whose application has been pending since October 1, 2024 or earlier must pay the annual asylum fee as early as September 30, 2025.  90 Fed. Reg. at 34515.  For applicants with applications pending on October 2, 2024 or later, the USCIS notice would require them to pay the annual fee on the one-year anniversary of the date they filed their applications (and on the same date each year thereafter while their applications remain pending).  *Id.*

66.    On or about October 2, USCIS stated on its website that "On Oct. 1, 2025, we began sending notices" to asylum seekers "who are required to pay the new Annual Asylum Fee," that "[i]f you receive a notice, you should pay the fee within 30 days," and that "[i]f you do not pay this fee, it may negatively affect your application, including, but not limited to, a delay in processing."[7]

67.    Unlike the EOIR Memo, which requires applicants to pay the annual asylum fee as early as July 5, 2025, the USCIS Notice provides that no applicant is required to pay the annual asylum fee until September 30, 2025, at the earliest.  Later, on or around October 2, USCIS stated that no applicant is required to pay the fee until 30 days after receiving notice from the agency, which the agency says it "began" providing on October 1.

---

[7] I-589, Application for Asylum and for Withholding of Removal, USCIS, https://www.uscis.gov/i-589 (accessed Oct. 3, 2025).

68.    Neither the EOIR Memo nor the USCIS Notice attempts to reconcile these conflicting applications of the statute.  In fact, neither document references the other.  The EOIR's and USCIS's conflicting guidance leaves applicants confused about what OBBBA requires and when the agencies believe annual asylum fees might be due.

69.    The conflicting guidance and lack of coordination demonstrate that the EOIR Memo and USCIS Notice are arbitrary and capricious.

70.    Moreover, both EOIR and USCIS are impermissibly imposing the annual asylum fee retroactively, in two distinct ways.  First, both agencies would require asylum seekers to pay the annual asylum fee even if they filed their applications on or before July 4, 2025, when the statute implementing the fees was enacted.  Second, both agencies count the *time* an asylum seeker's application was pending before July 4, 2025 to determine whether the application "remains pending" for a full "calendar year."  *See* 8 U.S.C. § 1808(a).

71.    The USCIS Notice acknowledges that it is applying the annual asylum fees "retroactive[ly]."  90 Fed. Reg. at 34515.[8]  Citing the Supreme Court's decision in *Landgraf*, USCIS claims that the Act "contains a clear expression of intent" that "requires" USCIS to "apply[] the fee to applications pending with USCIS before enactment of [OBBBA]."  *Id.*  USCIS asserts that because the Act assigns a $100 fee to fiscal year 2025, "it necessarily applies the provision to the start of FY 2025"—that is, applications that were filed "on or before October 1, 2024 that remain pending for the entirety of fiscal year 2025."  *Id.*  Otherwise, according to USCIS, "[t]o apply the law only to applications filed after the date of enactment in July 2025 or later would result in no fee collections in FY 2025 because no such application would be pending for a calendar year (*i.e.*

---

[8] By contrast, the EOIR Memo contains no acknowledgement or explanation of EOIR's decision to impose the annual asylum fee retroactively.

twelve months) during that time frame." *Id.*  USCIS also maintains that its retroactive interpretation is not "impermissibly retroactive because it merely applies changes in procedural rules required by statute." *Id.* (citing *Landgraf*, 511 U.S. at 275).

72.    USCIS's interpretation of the Act is wrong.  Nothing in the statute authorizes—let alone clearly authorizes—the agencies to either: (1) impose the annual asylum fee on asylum seekers who filed their applications on or before July 4, 2025; or (2) count the time an application was pending prior to July 4, 2025 in determining whether the application "remains pending" for a full "calendar year."

73.    Contrary to USCIS's assertion, nothing in the statute's text requires the government to collect the $100 annual asylum fee in FY 2025.  Even if no FY 2025 fee is collected, Congress's decision to set the FY 2025 fee at $100 serves an essential and obvious role because it is the baseline number used to calculate the fee for FY 2026 and future years.  That Congress set a reference value says nothing—and certainly not enough to overcome the presumption against retroactivity—about whether Congress intended the annual asylum fees to apply retroactively.

74.    USCIS's attempt to minimize imposing the annual asylum fees retroactively by characterizing it as simply a "procedural" change is also wrong.  The Supreme Court has made clear that "[w]hen determining whether a new statute operates retroactively, it is not enough to attach a label . . . [the court] must ask whether the statute operates retroactively." *Martin v. Hadix*, 527 U.S. 343, 359 (1999).  Here, the USCIS Notice and the EOIR Memo "attach[] new legal consequences to events completed before its enactment"—namely, USCIS and EOIR will require asylum seekers to pay annual fees for applications filed on or before July 4, 2025.  *See id.* at 357–58 (quoting *Landgraf*, 511 U.S. at 270); *see also Landgraf*, 511 U.S. at 275 n.29 ("Nor do we suggest that concerns about retroactivity have no application to procedural rules.").

75.     The EOIR Memo, for example, determines that asylum applicants who applied for asylum in prior years before OBBBA's enactment must pay annual asylum fees as early as July 5, 2025—the "date after the date of enactment of OBBBA." *See* EOIR Memo at 2.  In other words, EOIR purports to require applicants to pay annual asylum fees calculated by counting the time that their application was pending *before* the Act became law to determine whether their applications have remained pending for a "calendar year." *Id.*

76.     The USCIS Notice similarly requires applicants with cases pending since October 1, 2024, or earlier to pay the annual fee this year, 90 Fed. Reg. at 34515; the agency later clarified that these applicants will be required to pay "within 30 days" after receiving individualized notice from the agency, which the agency says it "began" sending on October 2, 2025.  Applicants who filed after October 2, 2024, must pay their first annual asylum fee based on the one-year anniversary of their filing date—and on that date each year thereafter—again counting pre-enactment time against them. *Id.*

77.     Thus, the USCIS Notice and EOIR Memo have impermissible retroactive effect in two distinct ways.  First, both agencies attach new legal consequences to asylum seekers' requests for asylum even though those requests were filed before OBBBA's enactment.  Second, both agencies attach new legal consequences to the *time* applications remained pending before OBBBA's enactment.

**C.    The Lack of Clarity Regarding Payment Requirements Has Created Confusion and Penalized Asylum Applicants**

78.     Remarkably, even though both USCIS and EOIR claim that some applicants are already required to pay the annual asylum fee, neither agency has been able to articulate to asylum applicants a clear plan for collecting the fee.

79.    On or around October 2, 2025, USCIS posted to its website a form that purports to allow asylum applicants to pay the annual asylum fee.  Many applicants who tried to pay their annual asylum fee have received an error message stating:  "At this time, the Annual Asylum Fee payment is not due for this case. USCIS will issue a notice the first time the Annual Asylum Fee is due." However, asylum applicants remain confused about how they will receive notice of when they can or must pay the annual asylum fee. Will it come in the mail, electronically, by text message, or some other form of notice?

80.    As of the filing of this Complaint, EOIR still has not provided asylum applicants any way to pay the annual asylum fee. It is unclear whether the agency will do so, and if they do, whether they will provide notice to asylum applicants whose cases are pending with EOIR.

81.    This bureaucratic Catch-22 places asylum seekers in an untenable dilemma: their applications are at risk of dismissal or rejection for non-payment of a fee that EOIR has provided no way to pay.

82.    As one news story reported, last weekend "asylum seekers in New York were flooded with messages—some from their lawyers—telling them to pay a $100 fee to the Trump administration by [Tuesday, September 30, 2025] or risk deportation."[9]  As quoted in the news story, a spokesperson for the American Immigration Lawyers Association stated at that time that "[t]here is still no way to pay the annual fee for pending applications," and "so many practitioners are still concerned about applications being dismissed if there is no mechanism set up to pay that fee . . . . There are very real consequences for asylum seekers navigating this completely unneces-

---

[9] Liv Veazey, *Asylum-Seekers in Panic Over Trump's Unclear $100 Fee*, The City (Sept. 29, 2025), https://www.thecity.nyc/2025/09/29/asylum-seekers-immigration-trump-100-dollar-fee/.

sary bureaucratic mess." One asylum seeker stated, "I have no idea what to do," noting that "[p]eople say that the site isn't even finished. We hear a lot of things. In the end, you don't know what's true or not." A legal aid attorney said she'd heard reports of *notarios*, non-lawyers who represent themselves as qualified to offer advice on immigration matters, "using this confusion to spread widespread fear amongst noncitizens and charge them exorbitant amounts to purportedly help them pay these fees."

83.    EOIR experienced similar problems with the initial asylum fee required for new applications. One news source reported that "[o]fficials are adjusting on the fly" to the Act's new fee requirements, and in one court appearance, "[n]either the clerk nor the U.S. Department of Homeland Security attorney representing the government at the family's hearing knew which agency was accepting the checks."[10] According to the news source, the immigration judge at that hearing informed the family, "I can't tell you who to pay" because "[immigration judges] haven't been told where the money is to be sent."

84.    Though EOIR eventually provided a mechanism for new applicants to pay the initial asylum fee, as of the date of this filing it has still refused to take the same commonsense step for the annual asylum fee—even though the agency's public statements have been telling applicants their fee is due for more than two months.

85.    As a result, asylum applicants and their attorneys attempted to use EOIR's payment method for *initial* asylum applications, sending the immigration court $100 for the annual asylum fee through the mechanism for paying the initial fee and hoping that will suffice. Many asylum seekers with applications pending before EOIR believed they needed to pay the annual asylum fee

---

[10] Andrew Hazzard, *New fees for immigration paperwork creates confusion in court, challenges for applicants*, Sahan J. (July 14, 2025), https://sahanjournal.com/news/immigration-court-new-fees-asylum-big-beautiful-bill/.

to EOIR by September 30, 2025 based on USCIS's instruction that this was the first date on which annual asylum fees might become due, and attempted to pay by submitting an *initial* asylum fee payment through the EOIR portal.

86.    Some asylum seekers went without groceries so they could come up with the money to pay EOIR annual asylum fees through the online mechanism for paying the initial asylum fee. And it is unclear whether EOIR will even credit payments made in this unorthodox matter.

87.    USCIS's and EOIR's failure to provide clear instructions and guidance deprives asylum seekers of an adequate opportunity to present their claims and leaves them vulnerable to removal to countries where their physical safety or lives are in danger. Asylum seekers who miss their payment window or have no ability to pay the fee are afraid they cannot ensure their asylum applications will remain pending with the government. And the rejection or dismissal of an asylum application for non-payment could have severe consequences, including being targeted for detention and deportation, loss of employment authorization, and delays in eligibility for employment authorization. And if an individual attempted to reapply for asylum, they could theoretically be precluded from doing so because they would have missed the one-year deadline to apply for asylum.

88.    There is currently no way for an asylum applicant to pay the annual asylum fee using EOIR's online portal. The EOIR portal traditionally allowed users to pay fees only for specific appeals or motions. As noted above, EOIR eventually issued an update and established a portal to pay the *initial* asylum fee required by the OBBBA directly to EOIR. *See* Exec. Off. for Immigr. Rev. U.S. Dep't of Just., *Updates to the EOIR Payment Portal* (Sept. 23, 2025), https://www.justice.gov/eoir/media/1414551/dl?inline. The update does not explain how

applicants are to pay the annual asylum fee, however, and as of the date of this filing, EOIR has not provided a way for applicants to pay the annual asylum fee.

89.    To make matters more confusing, when applicants pay the *initial* asylum fee, they are directed to a web landing page informing them that they will be required to pay the annual asylum fee "within 30 days of the anniversary date" of their application.  This page tells applicants that "[p]ayment of this fee can be made at https://epay.eoir.justice.gov/index."  But that link directs applicants to EOIR's payment portal, which, as explained, does *not* provide applicants any way to pay the annual asylum fee.

90.    According to the EOIR Memo, "[u]ntil the new asylum fees are fully integrated into existing payment systems, the Immigration Courts will implement temporary measures—e.g., possibly authorizing provisional acceptance of an application pending the subsequent submission of the fee—to ensure that aliens have an avenue to pay the required fees and submit applications. All other fees should remain payable through existing payment structures at EOIR or the Department of Homeland Security."  EOIR Memo at 3 n.7.

91.    Contrary to EOIR's representation, however, ASAP has received reports from both asylum seekers (including ASAP members) and their attorneys that some immigration judges in EOIR proceedings are requiring asylum applicants to pay the annual asylum fee before adjudicating their asylum claims.  In at least one case, an immigration judge even issued a deportation order for failure to pay the annual asylum fee, even under circumstances where the government failed to provide the applicant with notice and instructions on how to pay, and even though the asylum application also contained claims for withholding of removal and protection under the Convention Against Torture, which are not subject to the fee.

**Count One (USCIS and EOIR)**

**Impermissible Retroactivity as to Applications Filed On or Before July 4, 2025**

92.     ASAP incorporates by reference the allegations of the preceding paragraphs.

93.     Under the APA, courts must "hold unlawful and set aside agency action . . . not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

94.     A statute may not "operate retroactively . . . absent clear congressional intent favoring such a result."  *See Landgraf*, 511 U.S. at 280; *see also, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 214 (1988) ("[T]he absence of any express authorization for retroactive [rulemaking in the statute] weighs heavily against the Secretary's position.").

95.     Here, the EOIR Memo and USCIS Notice each imposed annual asylum fees retroactively to applications that were pending as of July 4, 2025, without clear authorization from Congress.  These asylum seekers should never have to pay an annual asylum fee.  Thus, each agency exceeded the scope of its statutory authority.

**Count Two (USCIS and EOIR)**

**Impermissible Retroactivity as to Time Applications Were Pending Before July 4, 2025**

96.     ASAP incorporates by reference the allegations of the preceding paragraphs.

97.     In the alternative, and even assuming the Act imposed annual asylum fees on asylum seekers who filed their applications on or before July 4, 2025, Congress did not clearly provide that the *time* an application "remains pending" includes time prior to OBBBA's enactment.  Rather, the earliest any applicant may be charged the annual asylum fee is one calendar year from OBBBA's enactment—on or after July 5, 2026—which is one "calendar year" later.

98.     Despite the lack of clear authorization from Congress, the USCIS Notice and EOIR Memo each purport to count the days an asylum application was pending prior to the date of

OBBBA's enactment as part of the calendar year that triggers the annual asylum fee payment requirement.  Thus, each agency exceeded the scope of its statutory authority.

## Count Three (USCIS and EOIR)

### Arbitrary and Capricious Decisionmaking

99.    ASAP incorporates by reference the allegations of the preceding paragraphs.

100.    Under the APA, courts must "hold unlawful and set aside" arbitrary and capricious agency action.  5 U.S.C. § 706(2)(A).

101.    USCIS and EOIR share authority to implement and enforce the provisions of OBBBA imposing annual asylum fees.

102.    The USCIS Notice and EOIR Memo adopted inconsistent and conflicting interpretations of the Act as applied to asylum seekers with asylum applications that were pending as of July 4, 2025.

103.    Neither agency acknowledged or considered the other agency's position or the confusion that their conflicting positions would engender.

104.    Both agencies imposed annual asylum fees on applicants with pending asylum applications without providing an adequate process for applicants to pay the fees before the first fees became due.

105.    Neither agency acknowledged how applications for asylum will be treated for purposes of annual asylum fees if jurisdiction over the applications is transferred between agencies during the pendency of the asylum claim.

106.    For these reasons, among others, both the USCIS Notice and the EOIR Memo are arbitrary and capricious.

**Count Four (EOIR Only)**

**Failure to Provide Applicants a Mechanism to Pay the Annual Asylum Fee**

107.    ASAP incorporates by reference the allegations of the preceding paragraphs.

108.    Under the APA, courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

109.    OBBBA provides that "for each calendar year that an alien's application for asylum remains pending, the Secretary of Homeland Security or the Attorney General . . . *shall* require the payment of a fee, equal to the amount specified in subsection (b)." 8 U.S.C. § 1808(a) (emphasis added).

110.    OBBBA therefore requires USCIS and EOIR to collect an annual asylum fee for each calendar year for which an asylum application remains pending.

111.    Any retroactive application of the annual asylum fee is unlawful. In the alternative, however, even if the Court were to conclude that such retroactive application is permissible, EOIR is failing to comply with OBBBA's statutory directive because it has failed to provide a mechanism for asylum seekers to pay the annual asylum fee.

112.    Under EOIR's interpretation of OBBBA, asylum applicants who applied for asylum in prior years before the enactment of the Act must pay annual asylum fees as early as July 5, 2025—the "date after the date of enactment of OBBBA." EOIR Memo at 2.

113.    EOIR is unlawfully withholding agency action that would make it possible for applicants to pay any annual asylum fees purportedly required by OBBBA.

114.    EOIR is unreasonably delaying agency action that would make it possible for applicants to pay any annual asylum fees purportedly required by OBBBA.

**Prayer For Relief**

115.    ASAP respectfully requests entry of an order and judgment:

   a.    Declaring that the USCIS Notice and EOIR Memo are unlawful;

   b.    Vacating and setting aside the USCIS Notice and EOIR Memo;

   c.    Enjoining USCIS and EOIR from imposing annual asylum fees for asylum applications that were pending as of July 4, 2025;

   d.    Declaring that OBBBA does not authorize the retroactive imposition of annual asylum fees to individuals whose applications for asylum were filed on or before July 4, 2025;

   e.    Ordering EOIR to provide applicants a method through which they can pay any required annual asylum fee, and to refrain from penalizing applicants for nonpayment until it gives them notice and a reasonable opportunity to pay;

   f.    Mandating that USCIS and EOIR reinstate to the status quo ante asylum applications that were pending as of July 4, 2025, and were then dismissed or otherwise rejected for failure to pay an annual asylum fee;

   g.    Mandating that EOIR make appropriate efforts to either reimburse or credit asylum seekers' attempts to pay the annual fee made through the EOIR's initial fee portal, by mail, or otherwise;

   h.    Entering any necessary preliminary relief;

   i.    Awarding ASAP its reasonable costs, including attorney fees, incurred in bringing this action under 28 U.S.C. § 2412 or other applicable law; and

   j.    Granting such other and further relief as this Court deems just and proper.

DATED:  October 3, 2025

Respectfully submitted,

/s/ Andrew G. Barron

Matt Gregory*
Susan M. Pelletier*
Hayley N. Lawrence*
Andrew G. Barron (D. Md. Bar 30311)
T. Hunter Mason*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:     (202) 955-8500
Facsimile:     (202) 831-6088
mgregory@gibsondunn.com
spelletier@gibsondunn.com
hlawrence@gibsondunn.com
abarron@gibsondunn.com
hmason@gibsondunn.com


Conchita Cruz*
Jessica Hanson*
Leidy Perez*
Marcela X. Johnson*
Juan E. Bedoya*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone:     (646) 647-6779
conchita.cruz@asylumadvocacy.org
jessica.hanson@asylumadvocacy.org
leidy.perez@asylumadvocacy.org
marcela.johnson@asylumadvocacy.org
juan.bedoya@asylumadvocacy.org

*Counsel for Plaintiffs*

*Application for admission *pro hac vice* forth-coming