IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ASYLUM SEEKER ADVOCACY PROJECT**

    **Plaintiff,**

    v.

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** *et al.*

    **Defendants.**

Civil Case No.: SAG-25-03299

# MEMORANDUM OPINION

Plaintiff Asylum Seeker Advocacy Project, a membership organization of asylum seekers, brings this action against Defendants United States Citizenship and Immigration Services ("USCIS"), Joseph B Edlow in his official capacity as Director of USCIS, Executive Office for Immigration Review ("EOIR"), and Sirce B. Owen in her official capacity as Acting Director of EOIR (collectively, "Defendants") for claims regarding the implementation of the new annual asylum fee ("AAF"). ECF 1. Plaintiff has filed a motion for a temporary restraining order, a preliminary injunction, or a stay pursuant to 5 U.S.C. § 705, ECF 29, which Defendants jointly opposed, ECF 43. Plaintiff then filed a reply. ECF 45. On October 28, 2025, this Court held a hearing on Plaintiff's motion and ordered Defendants to provide additional information to the Court. ECF 48. The following day, Defendants filed a notice containing updated information, ECF 50, to which Plaintiff responded, ECF 52. Defendants then filed an updated notice. ECF 53. This Court has reviewed all of the filings. For the reasons explained below, Plaintiff's motion will be granted in part and denied in part.

I.  **BACKGROUND**

On July 4, 2025, the One Big Beautiful Bill Act (the "Act") became law. ECF 1 at ¶ 1. One section of the Act created a new requirement for asylum applicants codified at 8 U.S.C. § 1808, which provides, in pertinent part:

> In addition to any other fee authorized by law, for each calendar year that an alien's application for asylum remains pending, the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a fee, equal to the amount specified in subsection (b), by such alien.

8 U.S.C. § 1808(a). Section 1808(b)(1), in turn, provides that "[f]or fiscal year 2025, the amount specified in this section shall be the greater of--(A) $100; or (B) such amount as the Secretary of Homeland Security may establish, by rule." 8 U.S.C. § 1808(b)(1). Section 1808(b)(2) provides:

> During fiscal year 2026, and during each subsequent fiscal year, the amount specified in this section shall be equal to the sum of—
>
> (A) the amount of the fee required under this subsection for the most recently concluded fiscal year; and
>
> (B) the product resulting from the multiplication of the amount referred to in subparagraph (A) by the percentage (if any) by which the Consumer Price Index for All Urban Consumers for the month of July preceding the date on which such adjustment takes effect exceeds the Consumer Price Index for All Urban Consumers for the same month of the preceding calendar year, rounded down to the nearest dollar.

8 U.S.C. § 1808(b)(2).

The Act also created a new initial asylum fee codified at 8 U.S.C. § 1802, which requires asylum applicants to pay a fee when they file their application. 8 U.S.C. § 1802.

A person currently in removal proceedings may apply for asylum defensively before EOIR. ECF 1 at ¶¶ 46–47. A person not currently in removal proceedings, however, applies for asylum affirmatively with USCIS. *Id.* Although a person's asylum application is pending before only one

agency at a time, that application may be transferred between the two agencies under certain circumstances. *Id.* at ¶ 48.

On July 22, 2025, USCIS published a notice in the Federal Register that stated that asylum applicants whose applications had been pending since the beginning of fiscal year ("FY") 2025 on October 1, 2024 or earlier and remained pending at the end of FY 2025 on September 30, 2025 would have to pay the AAF amount specified in the Act for FY 2025. USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 Fed. Reg. 34511, 34515 (July 22, 2025) ("Federal Register Notice"). The Notice further specified that USCIS would provide individual notice of the first time the AAF becomes due on an application before the applicant would have to pay. *Id.* That notice would include several pieces of information, including "when the fee must be paid" and "the consequences of failure to pay." *Id.*

On or about October 2, 2025, USCIS announced that it had begun sending individual notices to applicants on October 1, 2025. ECF 1 at ¶ 66. A notice received by one applicant instructs to "pay this fee within 30 days" and that failure to do so "may negatively affect your application, including, but not limited to, a delay in processing." ECF 45-7.

EOIR, in turn, had issued a policy memorandum on July 17, 2025, stating that the new fee would apply to "any asylum application pending for more than one year as of a date after the date of enactment of [the Act]." Sirce E. Owen, Exec. Off. for Immigr. Rev., U.S. Dep't of Just., Policy Memorandum 25-36 (Amended), Statutory Fees Under the One Big Beautiful Bill Act (July 17, 2025), https://www.justice.gov/eoir/media/1408356/dl?inline ("July 17 Memo"). At the time Plaintiff filed its complaint, EOIR had not yet provided a mechanism by which to pay the AAF. ECF 1 at ¶ 80.

3

In its opposition brief, EOIR represented that it would apply the AAF to any applicant who filed an application "before or on the beginning of FY 2025, October 1, 2024, and whose application remains pending at the end of FY 2025" and had therefore resolved any inconsistency with USCIS's policy. ECF 43-3 at ¶ 4; ECF 43 at 30. The July 17 Memo has not been rescinded, however. ECF 51 at 40. EOIR further represented in its opposition brief that no AAFs would be due until thirty days after individual notice is mailed and that no such notices have yet been mailed. ECF 43-3 at ¶ 10. On or about October 23, 2025 EOIR provided a mechanism to pay the AAF on its online payment portal. ECF 45-1 at ¶ 11.

Plaintiff has received multiple reports of EOIR applicants ordered removed for failure to pay the AAF and has attached copies of removal orders in two such cases. *Id.* at ¶ 12; ECF 45-5. Both orders state that, in addition to their applications for asylum, the applicants' applications for withholding of removal and Convention Against Torture ("CAT") relief were being denied because of the applicants' failure to pay the AAF. ECF 45-5. One order reflects that an immigration judge had ordered one applicant removed for failure to pay the AAF on October 21, 2025, after Defendants had filed their opposition brief in this case representing that no AAFs were currently due to EOIR. *Id.*

On October 28, 2025, this Court held a hearing on this motion and ordered Defendants to provide additional information on several points by the end of the day. Defendants did not provide any of the requested information by the end of the day but filed a notice the following day making several representations: (1) EOIR had posted new instructions regarding the AAF to its online Payment Portal Frequently Asked Questions ("FAQ") page; (2) EOIR sent an email regarding the AAF to its immigration judges on October 29, 2025; (3) EOIR will take corrective action in cases in which individuals were ordered removed solely for failure to pay the AAF on or before October

4

29, 2025; (4) USCIS has not yet initiated any adverse consequences for failure to pay the AAF and will not do so until it issues a new policy rule defining such consequences; and (5) USCIS applicants have thirty days from the date of the notice to pay their AAF, and an extra three days if notice is by mail, and USCIS will "as soon as technically able" revise future notices to clarify this deadline. ECF 50.

The new instructions provided on EOIR's FAQ page provide, in pertinent part:

> Any alien who had an asylum application pending for one year or more as of July 4, 2025, must pay an Annual Asylum Fee (AAF). Additionally, any alien who filed (or files) a Form I-589 after July 4, 2025, that remains pending for 365 days, must pay the AAF as of the one-year anniversary of that filing date and each year thereafter, for which the application remains pending. Written or electronic notices by EOIR will be issued to aliens when the first AAF is due, which will include the amount of the fee, when it must be paid, and the consequences of failing to pay. Aliens must pay the AAF by the deadline specified in the notice. Aliens must use the EOIR Payment Portal to pay the AAF listed in the "Filing Type" drop-down menu on the Portal's webpage.

ECF 50-1.

The email sent to EOIR's immigration judges stated that EOIR had identified six applicants whose applications were pretermitted due to failure to pay the AAF. ECF 50-2. It further stated:

> While recognizing the decisional independence of its adjudicators and the availability of administrative remedies through a motion to reconsider or appeal to the BIA, EOIR nevertheless encourages adjudicators to carefully review the appropriateness of pretermitting an asylum application for failure to pay the required fee during a time before such fees were payable through the Portal.

*Id.* The email noted that asylum "fees are now payable through EOIR's Payment Portal, and adjudicators should be directing aliens to pay those fees through that Portal accordingly." *Id.* It also stated that EOIR would provide individual notices regarding the AAF but that "Immigration Judges are encouraged to also provide oral notice, if appropriate, at any hearings prior to the final merits hearing on the application." *Id.*

5

Later on October 29, 2025, Plaintiff filed a response to Defendant's notice that identified inconsistencies between the notice and Defendants' expressed position. ECF 52. Plaintiff acknowledged that Defendants intended to file an updated notice correcting some of the issues but argued that the persistence of the issues demonstrates the need for preliminary relief. *Id.* Later that night, Defendants filed a supplemental notice contending that their earlier notice was consistent with their position. ECF 53.

Plaintiff brings four claims. ECF 1. Counts I and II allege that Defendants have impermissibly applied § 1808 retroactively in two ways: (1) by applying it to asylum applicants who filed their applications when no AAF existed and (2) by counting time before July 4, 2025 to calculate the length of time an application has been pending. *Id.* at ¶¶ 92–98. Count III alleges that Defendants acted arbitrarily or capriciously by adopting divergent policies concerning the AAF. *Id.* at ¶¶ 99–106. Count IV alleges that EOIR has unreasonably delayed agency action by failing to provide applicants with a way to pay the AAF. *Id.* at ¶¶ 107–14.

## II. LEGAL STANDARDS

A temporary restraining order or a preliminary injunction is warranted when the movant demonstrates four elements: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The movant must establish all four elements to prevail. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). These same elements also govern issuance of a stay pursuant to 5 U.S.C. § 705. *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 935, 950 (D. Md. 2020).

A preliminary injunction affords "an extraordinary and drastic remedy" prior to trial. *See Munaf v. Green*, 553 U.S. 674, 689–90 (2008); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating that preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances") (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). Because preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.* (quoting *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)).

### III. DISCUSSION

#### A. Standing

As an initial matter, Defendants argue that Plaintiff lacks standing. Plaintiff has asserted associational standing, which has three elements: "(1) [The group's] members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). Defendants challenge only the second element, arguing that the interests at stake in this litigation are not germane to Plaintiff's purpose.

Plaintiff is a membership organization of asylum seekers, and its priorities are determined by its members. ECF 45-1 at ¶ 4. Part of its mission is to "build a more functional immigration system." ECF 29-2 at ¶ 9. Thousands of Plaintiff's members have recently expressed concern

about the AAF, and thousands voted for Plaintiff to file this lawsuit. ECF 45-1 at ¶¶ 6, 8. Plaintiff compiles information regarding how to apply for asylum and makes that information available to its members online, disseminates updated information to its members each month, and answers its members' questions about asylum. ECF 29-2 at ¶¶ 14–16. Since mid-September 2025, Plaintiff's resources regarding new fees have been viewed over 100,000 times, making them two of the top four resources on Plaintiff's website during that time. ECF 45-1 at ¶ 7.

These facts demonstrate that the interests at stake in this litigation, clarity regarding the applicability of fees attendant to applying for asylum, are germane to Plaintiff's purpose, which includes building a more functional immigration system and providing individuals applying for asylum with information about how to do so. Furthermore, another court in this district determined that Plaintiff could "easily satisfy" associational standing's second element in a lawsuit challenging agency rules regarding work authorization for asylum seekers, noting that Plaintiff devotes significant time and resources to representing individuals as they navigate the asylum application process. *See Casa de Maryland*, 486 F. Supp. 3d at 935, 948. Plaintiff has standing to bring this action.

**B. Counts I and II: Retroactivity**

Plaintiff first alleges that Defendants have impermissibly applied § 1808 retroactively by (1) applying it to asylum applicants who filed their applications when no AAF existed and (2) counting time before July 4, 2025 to calculate the length of time an application has been pending. In analyzing whether a statute applies retroactively, a court first determines "whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). If Congress has done so, then the court need proceed no further. *Jaghoori v. Holder*, 772 F.3d 764, 770 (4th Cir. 2014). If the statute lacks such an express command, however, then

the court must determine whether the statute would have retroactive effect. *Landgraff*, 511 U.S. at 280. If it would, then the presumption against retroactivity absent clear congressional intent will apply. *Id.*

Regarding the first step, "[t]he prescriptive language in the statute must be express, unambiguous, and unequivocal," *Jaghoori*, 772 F.3d at 770, but "[i]n the absence of language as helpful as that [the court] tr[ies] to draw a comparably firm conclusion about the temporal reach specifically intended by applying '[its] normal rules of construction.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)).

In the Act, Congress stated that it applies "for each calendar year that an alien's application for asylum remains pending." 8 U.S.C. § 1808. Although the statute does not explicitly state that it applies to applications filed in or before FY 2025, it specifies a fee amount "[f]or fiscal year 2025." § 1808(b)(1). If the AAF applied only to applications filed after the date of enactment, or counted only time following enactment, no AAFs would be collected in or for FY 2025 because no application would have been pending for one year by the end of FY 2025 on September 30, 2025. Plaintiff's proposed interpretation would thus render the provision setting a fee amount for FY 2025 mere surplusage. Accordingly, this Court concludes that this provision constitutes a clear statement of Congress's intent to collect AAFs for FY 2025 and therefore to apply the statute to applications filed before enactment.

Plaintiff argues that by using "for" in this provision, as opposed to the "during" it uses to set an amount for FY 2026 and each subsequent year, Congress intended to use the FY 2025 provision to set a baseline. That contention is unpersuasive. As Defendants note, both 8 U.S.C. § 1806(2) and 8 U.S.C. § 1804(c) set amounts for the visa integrity fee and the parole fee, respectively, by using the same "[f]or fiscal year 2025" and "[d]uring fiscal year 2026" language.

9

*See* 8 U.S.C. § 1806(2); 8 U.S.C. § 1804(c). These provisions do not use the FY 2025 amount merely as a baseline because the event triggering each fee, the issuance of a nonimmigrant visa and the granting of parole respectively, could occur in FY 2025 following the date of enactment. These provisions suggest that Congress did not intend to apply any difference in meaning through its use of "for" and "during." *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (describing how the "meaningful-variation canon," which instructs that different terms in the same statute generally have different meanings, "is mostly applied to terms with some heft and distinctiveness, whose use drafters are likely to keep track of and standardize").

After concluding that Congress has expressly prescribed the statute's scope, this Court need proceed no further, but it is also clear that § 1808 would not have retroactive effect. A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraff*, 511 U.S. at 280.

Applying the AAF to applications filed before the date of enactment would not do any of these things because the triggering event is the pendency of the application for one year as of a date *after enactment* and the continued pendency of the application. In *Fernandez-Vargas v. Gonzales*, the Supreme Court rejected an argument that a law establishing new removal procedures for those who had unlawfully reentered the country applied retroactively to a person who had reentered before the law's enactment. 548 U.S. at 47. The Court noted that although the law "look[ed] back to a past act," the illegal reentry, the "predicate action" for application of the law was remaining in the country, which occurred after enactment. *Id.* at 44. The noncitizen's choice to remain in the country, rather than "a past act that he is helpless to undo" subjected him to the new law. *Id.*

Section 1808 similarly looks back to past acts, the filing of an asylum application and its pendency before enactment, but the pendency of the application for at least one year at some point after enactment constitutes the predicate that triggers imposition of the fee. An applicant's choice to keep his application pending after enactment, rather than any past act that he is helpless to undo, subjects him to the fee. In contrast, the cases cited by Plaintiff involve the imposition of new consequences on a past predicate action that an individual would be "helpless to undo," namely the decision to plead guilty to an offense. *See Jaghoori*, 772 F.3d at 772 (concluding that the application of a new rule regarding the effect of convictions on cancellation of removal to a noncitizen who had pled guilty to an offense before enactment would "impose new and unforeseen consequences" on the decision to forgo trial); *see also Vartelas v. Holder*, 566 U.S. 257, 266–68 (2012) (rejecting argument that noncitizen could avoid application of new rule rendering individuals with certain convictions inadmissible by avoiding foreign travel because the rule would impose a "new disability," a prohibition on foreign travel, on an event "already past," his decision to plead guilty).

Nor does Plaintiff's comparison to *Church v. Att'y Gen. of Va.*, 125 F.3d 210 (4th Cir. 1997) advance its position. In that case, the plaintiff filed an appeal before enactment of a law requiring the payment of a filing fee when filing an appeal. *Id.* at 212. The Fourth Circuit concluded that applying the fee requirement to the plaintiff would have retroactive effect because it would impose a new duty on a transaction already completed, the filing of the appeal, given that "the obligation to pay the appropriate filing fee arises at the moment of filing." *Id.* at 213. The court rejected the argument that the plaintiff could avoid the fee by withdrawing his appeal because the application of the new rule to him would impair rights he had possessed when he acted to file the appeal and impose new duties on the already completed filing of the appeal. *Id.* at 214.

Thus, *Church* involved a predicate action in the past, the filing of an appeal, that triggered imposition of a new fee. *Church* might control if Defendants had applied the new *initial* asylum fee to applications filed before enactment or had applied the AAF to applications that had been pending for at least one year before enactment, regardless of whether they remained pending following enactment, because applying the new rules in such ways would impose new obligations on acts completed before enactment. Defendants have not done so, however, and instead have applied the AAF to an act completed following enactment, the pendency of an application for one year as of a date following enactment and the continued pendency of the application.

In so ruling, this Court expresses no view of the wisdom or fairness of the policies at issue. Policymaking is within Congress's purview, and this Court's role in this context is limited to interpreting the words Congress wrote. After doing so, this Court concludes that Plaintiff has failed to demonstrate a likelihood of success on the merits regarding its retroactivity arguments that would warrant preliminary relief. Accordingly, this Court need not reach the other elements required for preliminary relief and will deny Plaintiff's motion as to Counts I and II.

C. **Count III: Arbitrary and Capricious Agency Action**

1. **Likelihood of Success on the Merits**

Plaintiff next alleges that Defendants have acted arbitrarily and capriciously by adopting inconsistent policies regarding the application of § 1808. Although Defendants argue that any inconsistency between USCIS and EOIR policies has now been resolved, significant discrepancies remain. Most importantly, EOIR's July 17 Memo has yet to be rescinded and remains in effect. Additionally, this Court finds, for several reasons, that the new information added to EOIR's Payment Portal FAQ page and the guidance provided to EOIR's immigration judges yesterday has further muddled, rather than clarified, matters.

First, the FAQ page states that applications pending for one year or more as of July 4, 2025 must pay the fee, whereas USCIS's policy applies the fee to applications pending for at least one year as of September 30, 2025. Furthermore, EOIR had previously represented in its opposition brief that it would also use September 30, 2025 as the relevant date. Although this Court recognizes that, as a practical matter, there are no currently pending applications that were pending for at least one year as of July 4, 2025 that were not also pending for at least one year as of September 30, 2025, the discrepancy adds to further confusion. This Court also notes that the FAQ page is inconsistent with the July 17 Memo, which stated that the fee would be applied to applications pending for one year or more as of a date after the date of enactment, thereby making July 5, 2025 the relevant date.

Second, EOIR's use of the past tense "had" to provide that any applicant who "had an asylum application pending for one year or more as of July 4, 2025" must pay the fee suggests that applicants are liable for the fee even if their applications are no longer pending, a suggestion that Defendants have disavowed throughout this litigation.

Third, although the FAQ page references applications pending for at least one year as of July 4, 2025 and applications filed after July 4, 2025, it provides no guidance regarding those applications filed between July 5, 2024 and July 4, 2025.

Fourth, although the FAQ page states that individual notices will be issued, it does not make clear, as USCIS's policy does and as EOIR has represented during this litigation, that issuance of the notice serves as a condition precedent to an applicant's fee becoming due. The email to the immigration judges further complicates this issue. The email directs immigration judges to instruct applicants to pay their fees now that the payment portal is operational and to provide oral notice regarding the fees, notwithstanding the email's discussion of future written

notices. Immigration judges could interpret these instructions to suggest that oral notice may serve as a valid substitute to the written notice, such that issuance of the written notice is not a condition precedent to the fee becoming due.

Fifth, and most concerningly, the email guidance to immigration judges to "carefully review the appropriateness of pretermitting an asylum application for failure to pay the required fee during a time before such fees were payable through the Portal" and its recognition of "the decisional independence of [EOIR's] adjudicators" suggests that immigration judges were within their discretion to deny asylum applications based on the failure to pay while no mechanism to pay existed. This suggestion not only is inconsistent with EOIR's representation that it will take corrective action in such cases but also indicates that fees became due during that time, even though no individual notices had issued.

For all of these reasons, this Court concludes that Defendants have not resolved the inconsistency between the two agencies' policies and will address Plaintiff's claim that Defendants acted arbitrarily and capriciously in adopting those inconsistent policies. The Administrative Procedure Act ("APA") requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious when it has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"No one should face 'multiple and perhaps conflicting interpretations of the same requirement' when disobedience may result in [significant] penalties." *DeNaples v. Off. of the Comptroller of the Currency*, 706 F.3d 481, 488 (D.C. Cir. 2013) (quoting *Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1253 (D.C. Cir. 2003)) (citation omitted). Accordingly, there exists "a

compelling need for interpretive uniformity" of a particular statute when "a single individual may be subject to [action regarding that statute] by multiple agencies." *Id.*; *see also Benitez v. Wilkinson*, 987 F.3d 46, 52–53, 56 (1st Cir. 2021) (concluding that an agency had "exercised its judgment in an arbitrary, capricious, or irrational way" by failing to consider the position of its sister agency, which the court viewed as "at least a 'significant factor' that should weigh on the [agency's] analysis") (quoting *Murillo-Robles v. Lynch*, 839 F.3d 88, 91 (1st Cir. 2016)).

Because some individuals have their asylum applications transferred between USCIS and EOIR, Defendants' inconsistent policies subject those individuals to conflicting requirements. For example, an individual who applied for asylum affirmatively with USCIS on July 5, 2024 may not yet have received individual notice that his fee is due and so has not yet paid the fee, consistent with USCIS policy. However, if that individual is placed in removal proceedings, his application will be transferred to EOIR. EOIR's July 17 Memo could be interpreted, and immigration judges in six cases evidently did interpret it, to suggest that a fee becomes due regardless of whether individual notice has issued. That individual could therefore be subject to denial of his asylum application and removal under EOIR's policy, even though he had complied with USCIS's policy.

Given that an individual may be subject to both agencies' policies in this way and the significant penalties involved, this Court views this circumstance as one presenting a "compelling need for interpretive uniformity" such that the other agency's interpretation was at least "an important aspect of the problem" that Defendants had to consider. But neither USCIS nor EOIR did so, even though they publicized their policies only five days apart. Thus, this Court concludes that Plaintiff has shown a likelihood of success on the merits that USCIS and EOIR acted arbitrarily and capriciously in adopting divergent policies.

### 2. Irreparable Harm

To be entitled to injunctive relief, Plaintiff must also make a "clear showing" that, without an injunction, it will suffer irreparable harm that is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). Removal constitutes irreparable harm. *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 61 (D. Md. 2020).

As explained above, individuals whose applications are transferred from USCIS to EOIR may have complied with USCIS's policy but failed to comply with EOIR's policy, and that failure apparently subjects them to denial of their applications and removal. EOIR's actions regarding applicants before it demonstrate that this harm is neither remote nor speculative. Plaintiff has shown that at least two individuals have already had their asylum, withholding of removal, and CAT relief applications denied for failure to pay the AAF, and Defendants acknowledge that at least six individuals had their applications pretermitted for failure to pay. This Court further finds that EOIR's email to its immigration judges does not alter this analysis. For the reasons explained above, the email suggests that written individual notice, consistent with USCIS's policy, is not required before an applicant's fee becomes due and recognizes the discretion immigration judges have to pretermit applications even under circumstances in which Defendants have represented no fees were yet due.

Furthermore, EOIR's representation that it would take corrective action in cases in which individuals were ordered removed solely for failure to pay the AAF on or before October 29, 2025 does not render that harm "reparable." First, it does not address any applicants ordered removed for that same reason after that date. Second, as this Court has explained, EOIR's email to its immigration judges suggests that it was within an immigration judge's discretion to pretermit an

16

application for failure to pay before any individual written notices, consistent with USCIS's policy, had issued. Finally, Defendants' supplemental notice refers to that email as "strongly encourag[ing] the remediation of the 6 cases" that EOIR had identified as involving pretermitted applications for failure to pay before a payment mechanism existed. ECF 53. This characterization similarly emphasizes immigration judges' discretion and calls into question whether the harm will be undone in those six cases.

This Court therefore concludes that Plaintiff has made a clear showing of irreparable harm due to the inconsistency between Defendants' policies.

### 3. Balance of the Equities and Public Interest

To be entitled to preliminary relief, Plaintiff must finally demonstrate that the balance of equities and public interest weighs in its favor. *See Benisek v. Lamone*, 585 U.S. 155, 158 (2018). When the Government is the opposing party, these factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). There is no public interest in allowing an agency to proceed with unlawful agency action. *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Furthermore, "it is in the public interest to prevent confusion." *El Pollo Rico, LLC v. Wings & Pollo, LLC*, No. PWG 21-cv-2346, 2022 WL 2916168, at *3 (D. Md. July 25, 2022).

This Court has concluded that Plaintiff has shown a likelihood of success on its claim that Defendants' inconsistent policies are arbitrary and capricious and therefore constitute unlawful agency action. Thus, no public interest exists in allowing Defendants to proceed with those policies. It would be in the public interest, however, to ease the significant confusion that has ensued due to Defendants' divergent policies. Moreover, in contrast to Plaintiff's irreparable harm discussed above, this Court finds that Defendants would incur little prejudice by delaying enforcement of their policies until they can address the inconsistency between those policies,

action that Defendants represent they are currently pursuing. Accordingly, this Court concludes that Plaintiff has satisfied the final two elements as well, and, because Plaintiff has satisfied each element, preliminary relief is warranted as to Count III.

4. **Remedy**

Having concluded that preliminary relief is warranted as to Count III, this Court must now determine what form that relief should take. Section 705 of the APA permits a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of review proceedings" where "required and to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. This Court concludes that a § 705 stay of the USCIS Federal Register Notice and the EOIR July 17 Memo is appropriate. Temporarily staying Defendants' policies will prevent the irreparable harm identified while giving Defendants an opportunity the complete the process they have represented is ongoing to resolve the inconsistency between the two policies.

Although Defendants argue that even a § 705 stay should be limited to the parties, that request is inconsistent with the text of the APA, which authorizes a court to "set aside agency action." *See* 5 U.S.C. § 706(2)(A). Moreover, in its recent decision limiting universal injunctions, the Supreme Court explicitly stated that its decision did not concern "whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025). This Court concludes, consistent with other recent cases addressing this issue, that the decision in *CASA* does not apply to relief under the APA. *See City of Columbus v. Kennedy*, -- F. Supp. 3d. --, 2025 WL 2426382, at *34 (D. Md. Aug. 22, 2025) (collecting cases).

This Court further rejects Defendants' requests for a bond under Federal Rule of Civil Procedure 65(c) or a stay pending appeal. Rule 65(c) requires bond if the court grants a preliminary

18

injunction or a temporary restraining order. Fed. R. Civ. P. 65(c). This Court is not doing so. It is staying agency action pursuant to § 705 of the APA, which has no bond requirement. See 5 U.S.C. § 705; see also *Nken*, 556 U.S. at 428 ("An injunction and a stay have typically been understood to serve different purposes."); *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 779 F. Supp. 3d 584, 623 n.14 (D. Md. 2025) (rejecting request for bond when issuing § 705 stay and noting that a court's authority to "set aside" and "postpone" agency action under the APA is far narrower than its equitable power to issue injunctive relief). Regarding its request for an administrative stay pending appeal, Defendants have offered no argument.

To be clear, Defendants have expressed an intent to reconcile the two agencies' policies and have taken some steps in the right direction. This Court will entertain promptly a motion to lift the stay once the agencies have enacted uniform policies providing asylum applicants with fair notice of the applicable fee deadline, the mechanism for payment, and the adverse consequences that might result from nonpayment.

### D. Count IV: Unreasonable Delay of Agency Action

Plaintiff also alleged unreasonable delay of agency action regarding EOIR's failure to provide a payment mechanism. Plaintiff pled this claim to compel agency action in the alternative to its other claims seeking the enjoining or staying of agency action. Because this Court has concluded that a stay is warranted as to Count III, it need not address Count IV.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion, ECF 29, is granted in part and denied in part. USCIS's Federal Register Notice and EOIR's July 17 Memo are temporarily stayed pursuant to 5 U.S.C. § 705. A separate Order follows.

Dated: October 30, 2025

/s/
Stephanie A. Gallagher
United States District Judge