IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ASYLUM SEEKER ADVOCACY PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-03299-SAG |

**Plaintiff's Emergency Motion to Clarify the Stay**

Plaintiff moves for clarification of this Court's October 30, 2025 stay under 5 U.S.C. § 705 on an emergency basis. Despite representations to Plaintiff and the Court—and notwithstanding the stay itself—Defendant Executive Office for Immigration Review ("EOIR") is currently requiring payment of the annual asylum fee and imposing imminent deadlines—as early as January 13, 2026—under threat of denial or abandonment of asylum.[1]  EOIR's unilateral re-implementation of the annual asylum fee has created confusion, a lack of fair notice, and the risk of adverse immigration consequences for asylum seekers, including removal from the United States.

As discussed in this Emergency Motion and accompanying Proposed Order, Plaintiff respectfully requests an immediate order clarifying that under this Court's stay, Defendants EOIR and the United States Citizenship and Immigration Services ("USCIS") may not implement the

---

[1] *See* Heilbrun Decl. ¶¶ 2–4 & Ex. 2 (written immigration judge order dated January 5, 2026 and setting annual asylum fee payment deadline of January 13, 2026).  January 13, 2026 is the earliest annual asylum fee payment deadline Plaintiff is aware of that has been imposed by written order since EOIR began re-implementing the annual asylum fee.  Note that all redactions in exhibits submitted with this motion contain information that could be used to identify individual asylum applicants and are redacted for the same reasons identified in ECF 47.

1

annual asylum fee or take adverse action against individuals' asylum (or Convention Against Torture or withholding from removal) application unless and until the agencies move the Court to lift the stay and Plaintiff has had an opportunity to respond to that motion.

### I. EOIR is currently requiring applicants to pay the annual asylum fee despite the stay and in contravention of its representations to Plaintiff and the Court.

On October 30, 2025, this Court stayed USCIS's and EOIR's policies implementing the annual asylum fee, finding that Plaintiff was likely to succeed on its claim that the agencies had arbitrarily adopted divergent and inconsistent implementation schemes. *See* ECF 55 ("Order"); ECF 54, at 12–15 ("Mem. Op."). Yet EOIR is now unilaterally re-implementing the annual asylum fee, violating the spirit of the stay and contravening its prior representations to Plaintiff and the Court.

EOIR has consistently assured Plaintiff and the Court that it would not require payment of the annual asylum fee unless and until applicants received 30 days' notice and EOIR's policy was harmonized with USCIS's policy as the stay requires:

- In support of its opposition to Plaintiff's motion for a stay, EOIR Director Daren Margolin submitted a sworn declaration stating that "[n]o alien for whom the [annual asylum fee] was due prior to the integration of that fee into EOIR's existing electronic payment system will be required to pay the [annual asylum fee] until 30 days after the [annual asylum fee] billing notices have been mailed out." ECF 44-1, ¶ 10.[2]

- During the October 28, 2025 hearing on Plaintiff's motion, counsel for EOIR stated that "[t]he idea here is to provide notice that the fee will become due within 30 days," Oct. 28, 2025 Hr'g Tr. 25:7–8, and "EOIR's declaration makes clear that no one will have to pay until notice is issued, and they'll have 30 days from the point in which that notice is issued to pay," *id.* 38:12–14.

- In the Opinion accompanying its stay order, the Court held that "[t]emporarily staying Defendants' policies will prevent the irreparable harm identified while giving Defendants an opportunity [to] complete the process they have represented is ongoing to resolve the inconsistency between the two policies." Mem. Op. at 18. The Court added that it "will entertain promptly a motion to lift the stay once the agencies have enacted uniform policies providing asylum applicants with fair notice of the applicable

---

[2] Under Fed. R. Civ. P. 25(d), Director Daren K. Margolin is automatically substituted to replace Defendant Sirce E. Owen as a party.

- deadline, the mechanism for payment, and the adverse consequences that might result from nonpayment." *Id.* at 19.
- Later, in support of Defendants' motion for an extension of time to respond to Plaintiff's complaint, Defendants represented that they "have been working to harmonize their positions to the extent possible. That effort is ongoing." ECF 60 ¶¶ 2–3.

Given these representations, the parties and the Court all understood that EOIR would institute policies ensuring that applicants would have no less than 30 days' notice before the annual asylum fee was due, and that when EOIR believed it had crafted a lawful approach to implementation of the annual asylum fee, it would first seek relief from the Court's stay.

EOIR failed to file a motion to lift the Court's stay as instructed by the Court's order. *See* Mem. Op. at 19. Instead, without notice to the Court or Plaintiff, EOIR Director Margolin issued a new policy memorandum on January 2, 2026, asserting that the Court's stay had "no practical impact on EOIR," supplying immigration judges with a template order for imposing the annual asylum fee, and instructing them that they are required to impose the fee. Daren Margolin, Exec. Off. for Immigr. Rev., U.S. Dep't of Just., Policy Memorandum 26-01, Annual Asylum Fee (Jan. 2, 2026), https://www.justice.gov/eoir/media/1422321/dl?inline ("Jan. 2 Memo"), at 4, 6.[3]

EOIR's immigration judges have done exactly that. Over the past week, immigration judges have issued orders demanding payment of the annual asylum fee and warning that failure to comply will result in applications being deemed abandoned or denied. The immigration judges' orders set varying deadlines requiring payment as early as January 13, 2026. *See* Heilbrun Decl.

---

[3] EOIR's January 2 Memorandum references various new objections to the Court's stay order and criticisms of the Court's decision that are not implicated by this motion to clarify. Plaintiff does not address those issues here because they have no bearing on whether the stay both remains in place and encompasses EOIR's implementation of the annual asylum fee. Plaintiff will address EOIR's substantive attacks on the Court's ruling in further briefing if Defendants move to lift the stay, or in a reply or supplemental brief should the Court conclude that such issues are more appropriately addressed in connection with this motion.

¶¶ 2–4 & Ex. 2 (January 13, 2026 deadline); Karmali Decl. ¶¶ 2–4 & Ex. 2 (January 26, 2026 deadline); Lewis Shukla Decl. ¶¶ 2–8 (observed wide variation in deadlines set for *pro se* applicants).

This is not a theoretical dispute about policy alignment. EOIR has re-implemented the annual asylum fee without seeking to lift the Court's stay or addressing the inconsistencies and risk of irreparable harm that prompted the stay.[4]

## II. EOIR's unilateral re-implementation of the annual asylum fee is causing immediate harm, including confusion, lack of notice, and adverse immigration decisions.

EOIR's actions have produced exactly the irreparable harm this Court's stay sought to prevent: confusion, lack of adequate notice, and risk of adverse decisions on asylum. *See* Mem. Op. at 16–17 (finding irreparable harm and need for stay remedy given "significant confusion," lack of clear and fair notice, and risk of application denial).

First, EOIR's unilateral re-implementation of the fee has resulted in significant confusion regarding whether the annual asylum fee is currently due, when payment is required, and whether this Court's stay remains operative. Immigration attorneys have expressed surprise, concern, and confusion that their clients are being required to pay a fee that the attorneys understood to be stayed by this Court. *See, e.g.*, Karmali Decl. ¶ 4; Lewis Shukla Decl. ¶ 8; Heilbrun Decl. ¶ 4. At the same time, USCIS has continued to abide by the Court's stay and is not currently requiring applicants to pay an annual asylum fee. *See* Press Release, U.S. Citizenship & Immigr. Servs., Court Order on Annual Asylum Fee Notices (Nov. 7, 2025),

---

[4] Plaintiff also reserves the right to submit briefing, at the appropriate time, explaining why EOIR's January 2 Memorandum remains inconsistent with USCIS's implementation of the annual asylum fee. Resolution of that issue is not necessary to clarify the existing stay at ECF 55.

https://www.uscis.gov/newsroom/alerts/court-order-on-annual-asylum-fee-notices (last accessed Jan. 11, 2026).

For asylum applicants who are not represented by counsel, the risk of confusion is even greater. On January 6, 2026, for instance, an attorney observed a Master Calendar Hearing where the immigration judge ordered numerous *pro se* asylum applicants to pay the annual asylum fee. *See* Lewis Shukla Decl. ¶¶ 2–3. The attorney was concerned that the lack of details about the fee requirement could lead to noncitizens being confused and potentially failing to pay the annual asylum fee in time to avoid adverse immigration consequences. *See id.* ¶¶ 4, 7.

The recent immigration judge orders also cause confusion because they suggest that failure to timely pay the annual asylum fee will result in abandonment or denial of an applicant's entire Form I-589 application, without clarifying that any accompanying withholding of removal or Convention Against Torture claims—which are not subject to annual (or initial) asylum fees under the One Big Beautiful Bill Act—would remain pending. *See* Heilbrun Decl. Ex. 2 (immigration judge order stating that "[f]ailure to timely pay the fee may result in a finding that you have abandoned or withdrawn **your application** and may result in its denial or dismissal" (emphasis added)); Karmali Decl. Ex. 2 (same).[5]

---

[5] Indeed, some immigration courts have already rejected Form I-589 applications that *only* included claims for withholding of removal and protection under the Convention Against Torture absent payment of the *initial* asylum fee, even though the applicants were not seeking asylum. *See, e.g.*, Freidel Decl. ¶¶ 3–6. This indicates that an incorrect interpretation of the initial asylum fee's applicability to withholding of removal and Convention Against Torture claims may be informing EOIR's enforcement of the similar annual asylum fee, despite the Government's claims to the contrary. *See* Oct. 28, 2025 Hr'g Tr. 41:10–19 (Government counsel representing that nonpayment of the annual asylum fee "would not impact" applications for relief under the Convention Against Torture or other forms of relief, notwithstanding the use of a single application form for these claims).

Second, EOIR is imposing the annual asylum fee inconsistently across cases and is not providing at least 30 days' notice to all applicants. Immigration judges are ordering applicants to pay the fee on a case-by-case basis, resulting in a lack of clear notice and wide variation in deadlines. In some cases, the deadlines set by immigration judges provide applicants significantly less than the 30 days' notice to which EOIR previously committed and which is consistent with USCIS's policy and a minimum standard of adequate notice. For instance, one practitioner received an electronic order from an immigration judge on January 6, 2026 requiring her client to pay the annual asylum fee by January 13. *See* Heilbrun Decl. ¶¶ 2–3 & Exs. 1 (notice email), 2 (immigration judge order). Another practitioner received notice on January 6, 2026 requiring her client to pay the annual asylum fee by January 26. *See* Karmali Decl. ¶¶ 2–3 & Exs. 1 (notice email), 2 (immigration judge order). And a third attorney observed an immigration judge give numerous *pro se* applicants vague and varying instructions about when their annual asylum fee was due. *See* Lewis Shukla Decl. ¶¶ 2–7. For the many applicants who receive notice of the payment requirement by mail rather than electronically, several days of the notice period would likely have already passed by the time the notice arrives.

Third, EOIR's reimposition of the annual asylum fee again raises the specter of the deportations of bona fide asylum seekers and applicants seeking withholding of removal or protection under the Convention Against Torture. In the orders Plaintiff has reviewed to date— which appear to be generated by an EOIR template—the payment deadline for the annual asylum fee is buried in a paragraph near the bottom of the order, which states that "[f]ailure to timely pay the fee may result in a finding that you have abandoned or withdrawn your application and may result in its denial or dismissal." Heilbrun Decl. Ex. 2; Karmali Decl. Ex. 2; *see also* Jan. 2 Memo at 4 (encouraging immigration judges to use a template annual asylum fee order). Further, in a

January 6, 2026 Master Calendar Hearing, an immigration judge told numerous *pro se* applicants that if they did not pay the annual asylum fee by the date set in their respective orders, their applications would be considered abandoned. *See* Lewis Shukla Decl. ¶¶ 2–4. The immigration judge did not explain what "abandoned" means. *Id.* ¶ 4.

These harms are concrete and irreparable. By circumventing the Court's stay and resuming implementation of the annual asylum fee without clear notice or uniform procedures, EOIR has predictably exposed applicants to denial or removal for nonpayment under ad hoc deadlines that cannot be meaningfully anticipated or met.[6]

### III. Emergency clarification is necessary to preserve the status quo and prevent irreparable harm.

Clarification is urgently required to ensure that EOIR does not continue to inflict irreparable harm through its re-imposition of the annual asylum fee while judicial review is ongoing.

The Court has already exercised its authority under Section 705 of the Administrative Procedure Act to preserve the status quo pending further review of Defendants' policies, and the Court may clarify or modify the scope of its order under Federal Rule of Civil Procedure 54(b) to prevent EOIR from circumventing the Court's order. Where an agency rescinds a stayed policy and issues a replacement policy that creates the same harms or carries the same procedural defects, courts may clarify or modify relief to prevent evasion and preserve the status quo pending review. *See, e.g.*, *Nat'l Nutritional Foods Ass'n v. Novitch*, 589 F. Supp. 798, 800 (S.D.N.Y. 1984) (explaining that a court may enjoin an agency regulation that is sufficiently similar to a regulation

---

[6] Indeed, unlike USCIS's system, there is no way for an asylum applicant at EOIR to proactively check if their fee is due. *Compare* Suppl. Reddy Decl., ECF 45-1, ¶ 19 ("There are now two ways for an asylum applicant to proactively check online if USCIS believes their annual asylum fee is now due."), *with id.* ¶ 32 ("It appears that anyone with a case at EOIR can pay any type of fee on the EOIR payment portal even if they do not owe that type of fee.").

subject to an injunction without reconsideration of the merits of the injunction).

\* \* \*

To mitigate and prevent ongoing and future irreparable harm, and as detailed in the accompanying Proposed Order, Plaintiff therefore respectfully requests that the Court clarify that the October 30, 2025 stay prohibits USCIS and EOIR from: (1) implementing the annual asylum fee under the OBBBA in any form, including pursuant to EOIR's January 2 Memorandum; and (2) imposing adverse consequences against individuals' asylum (or Convention Against Torture or withholding of removal) applications based on nonpayment of the annual asylum fee.

Plaintiff respectfully requests that the Court provide such clarification through the most expedient means available.

DATED: January 12, 2026

Respectfully submitted,

/s/ Andrew G. Barron
Matt Gregory\*
Susan M. Pelletier\*
Andrew G. Barron (D. Md. Bar 30311)
T. Hunter Mason\*
Rachel E. Schwab (D. Md. Bar 31646)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:   (202) 955-8500
Facsimile:   (202) 831-6088
mgregory@gibsondunn.com
spelletier@gibsondunn.com
abarron@gibsondunn.com
hmason@gibsondunn.com
rschwab@gibsondunn.com


Conchita Cruz\*
Jessica Hanson (D. Md. Bar 31903)
Leidy Perez\*
Marcela X. Johnson\*
Juan E. Bedoya\*
ASYLUM SEEKER ADVOCACY PROJECT

228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone:     (646) 647-6779
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org
juan.bedoya@asaptogether.org

*Counsel for Plaintiff*

\*Admitted *pro hac vice*