# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

ASYLUM SEEKER ADVOCACY PROJECT,

      Plaintiff,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

      Defendants.

Civil Action No. 1:25-cv-03299-SAG

---

**Plaintiff's Reply In Support of Emergency Motion to Clarify the Stay**

Defendants' opposition brief misconstrues the scope of the relief granted by this Court in its October 30 decision and Plaintiff's request to clarify that relief. The immediate question before the Court is whether EOIR can lift the stay itself by instructing immigration judges to disregard this Court's order and resume imposing the annual asylum fee, even though EOIR has failed to take the steps it promised the Court in October—e.g., harmonizing its policy with USCIS, and ensuring that applicants receive written notice and at least 30 days to pay the fee.[1]

The Court should not condone EOIR's attempt to evade the stay unilaterally. Instead, the Court should promptly clarify that the stay granted on October 30, 2025 remains in effect and prohibits Defendants from imposing the annual asylum fee in any form or imposing adverse

---

[1] EOIR attempts to reimagine Director Margolin's prior commitment as applying *only* to applicants "for whom the AAF was due prior to the integration of that fee into EOIR's electronic payment system." Opp. at 4 (quoting ECF 44-1 (Margolin Decl.) ¶ 10). But that ignores other paragraphs of the same declaration re-iterating the plan to provide 30-days notice (ECF 44-1 ¶¶ 5, 8) as well as the government's own prior representations to the Court concerning Director Margolin's declaration—e.g., counsel's representation that "EOIR's declaration makes clear that *no one* will have to pay until notice is issued, and they'll have 30 days from the point in which that notice is issued to pay," Oct. 28, 2025 Hr'g Tr. 38:12–14 (emphasis added). Nor does the government respond to the serious practical problems with EOIR's imposition of deadlines as short as seven days, including the risk that many applicants will not receive notice before the deadline. Mot. 6.

consequences against applicants' asylum (or Convention Against Torture or withholding of removal) applications based on nonpayment of the annual asylum fee.

### I.    The Court need not "enjoin the statute" to confirm that the stay of USCIS's and EOIR's unlawful *implementation* of the statute remains in effect.

EOIR's main argument is that Plaintiff's motion to clarify the stay seeks to "enjoin[] the enforcement of a duly enacted statute." Opp. 2. That is false. Plaintiff has never challenged (or sought to enjoin) Section 1808. And the annual asylum fee in Section 1808 is not self-executing such that Congress itself required applicants to pay the fee without any further action by USCIS or EOIR. Instead, Congress directed "*the Secretary of Homeland Security or the Attorney General*" to "require the payment of a fee." 8 U.S.C. § 1808(a) (emphasis added); *see also* 8 C.F.R. § 1003.0(b) (EOIR Director reports to and exercises delegated authority on behalf of the Attorney General). In this APA lawsuit, Plaintiff challenges USCIS's and EOIR's unlawful implementation of that directive through their arbitrary-and-capricious and inconsistent policies, not Section 1808 itself. *Cf. Am. Petrol. Institute v. SEC*, 953 F. Supp. 2d 5, 9, 24–25 (D.D.C. 2013) (vacating arbitrary-and-capricious SEC rule despite statutory mandate and remanding to the agency for further proceedings).

This Court held that Plaintiff is likely to prevail on its argument that USCIS and EOIR acted unlawfully in adopting inconsistent and otherwise arbitrary policies implementing Section 1808. Dkt. 54 at 12–19. The Court temporarily stayed both agencies' policies implementing the fee on that basis. This motion asks the Court to clarify that USCIS's and EOIR's implementation of the fee remains stayed unless and until the agencies cure the defects this Court identified in its order and successfully move to lift the stay. That is classic APA relief preventing unlawful agency action under 5 U.S.C. § 705, not an effort to "obtain an injunction against a duly enacted federal statute." Opp. 4.

The government similarly confuses the delegation of authority to apply existing law to specific facts in individual cases—which is vested in immigration judges—with EOIR's obligation under the APA and Section 1808 to adopt reasonable and otherwise lawful policies to "require" and collect the annual asylum fee. Opp. 2–3. Section 1808 grants no independent authority for individual immigration judges to craft their own bespoke procedures for collecting the fee, nor would such a chaotic and ad hoc system make sense. So, it is true but irrelevant that the EOIR Director does not have the authority to "direct the result of an adjudication assigned to . . . an immigration judge." 8 C.F.R. § 1003.0(c); Opp. 3. For generally applicable rules and policies, EOIR itself—specifically, Director Margolin—retains responsibility "for the direction and supervision of each EOIR component in the execution of its respective duties pursuant to the [INA]," *id.* § 1003.0(b)(1), including the authority to "[i]ssue operational instructions and policy," such as "procedural instructions regarding the implementation of new statutory or regulatory authorities" like the annual asylum fee. *Id.* § 1003.0(b)(1)(i).

For the annual asylum fee specifically, EOIR's July 17 and January 2 Memos did exactly that – providing "procedural instructions" regarding the implementation of Section 1808. 8 C.F.R. § 1003.0(b)(1)(ii). Unsurprisingly, immigration judges have correctly interpreted both Memos as generally applicable directives from EOIR implementing the annual asylum fee, rather than idle ruminations on a supposedly self-executing statute. In November and December, prior to Director Margolin's new directive, immigration judges appear to have complied with the stay entered by this Court without issue. But within days of the January 2 directive from Director Margolin to begin re-imposing the fee, Plaintiff has already learned of numerous examples of immigration judges imposing the annual asylum fee. *See, e.g.*, Lewis Shukla Decl. ¶ 3 ("I witnessed that any noncitizen with an asylum case pending who had not paid the annual asylum fee was provided an

3

order with a deadline to pay the annual asylum fee. None of these noncitizens had legal counsel."); Karmali Decl. Ex. 2; Heilbrun Decl. Ex. 2. This Court has already come to a similar conclusion in evaluating the legal effect of the July Memo—namely, that it operated as a generally applicable directive and that immigration judges followed it.

To the extent the government now contends the Court should never have stayed EOIR's implementation of the annual asylum fee because immigration judges may impose the fee on an ad hoc basis, it could and should have raised that argument in its October opposition brief. Or EOIR could have filed a motion for reconsideration or moved to lift the stay. Instead, EOIR chose to instruct immigration judges to *ignore* the stay, relying on a new (and meritless) argument that the Court should not have expected immigration judges to comply with its order. The Court has ample authority under Section 705 to clarify that the stay prohibits EOIR from implementing this unlawful instruction. *See* 5 U.S.C. § 705 (a court "may issue all necessary and appropriate process to postpone the effective date of an agency action *or to preserve status or rights pending conclusion of the review proceedings*") (emphasis added).

## II.    Defendants' jurisdictional arguments are meritless and have already been rejected by the Court.

Defendants' final argument is that the Court lacks jurisdiction to enter universal relief and that ASAP lacks associational standing. Opp. 4. This Court already held that relief under 5 U.S.C. § 705 is not "limited to the parties," Dkt. 54 at 18, and that ASAP has associational standing, *id.* at 8. The government does not explain why the Court should reconsider those decisions now.

## III.   Defendants' anticipated motion to lift the stay does not change this analysis, and immediate clarification is necessary.

In response to Plaintiff's motion, Defendants now say they will move to lift the stay "this week." Opp. 3 n.1. They should have done so before EOIR flouted the plain intent of this Court's prior decision by seeking to re-impose the fee unilaterally on January 2. Should Defendants follow

through on their commitment to file a motion to lift the stay, Plaintiff will respond in due course and explain why EOIR's new policy fails to cure the defects that led the Court to enter the stay in the first place.

In the meantime, the government's forthcoming motion does nothing to cure the emergency requiring immediate clarification of the stay. For example, Defendants do not dispute that some applicants received orders from immigration judges requiring them to pay the fee as early as *Tuesday, January 13*. Accordingly, Plaintiff respectfully requests that the Court clarify that the October 30, 2025 stay prohibits USCIS and EOIR from: (1) implementing the annual asylum fee under the OBBBA in any form, including pursuant to EOIR's January 2 Memorandum; and (2) imposing adverse consequences against individuals' asylum (or Convention Against Torture or withholding of removal) applications based on nonpayment of the annual asylum fee, unless and until the parties complete briefing on a motion to lift the stay, and the Court determines that Defendants have satisfied the requirements discussed in the Court's Memorandum Opinion, ECF No. 54.


DATED:  January 12, 2026                Respectfully submitted,

                                        */s/ Andrew G. Barron*
                                        Matt Gregory*
                                        Susan M. Pelletier*
                                        Andrew G. Barron (D. Md. Bar 30311)
                                        T. Hunter Mason*
                                        Rachel E. Schwab (D. Md. Bar 31646)
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1700 M Street, N.W.
                                        Washington, D.C. 20036
                                        Telephone:    (202) 955-8500
                                        Facsimile:    (202) 831-6088
                                        mgregory@gibsondunn.com

spelletier@gibsondunn.com
abarron@gibsondunn.com
hmason@gibsondunn.com
rschwab@gibsondunn.com


Conchita Cruz*
Jessica Hanson (D. Md. Bar 31903)
Leidy Perez*
Marcela X. Johnson*
Juan E. Bedoya*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone:    (646) 647-6779
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org
juan.bedoya@asaptogether.org

*Counsel for Plaintiff*

*Admitted pro hac vice*