# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ASYLUM SEEKER ADVOCACY PROJECT, | |
| *Plaintiff*, | |
| *v.* | No. 1:25-cv-03299-SAG |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND/OR PRELIMINARY RELIEF UNDER 5 U.S.C. § 705 AND REPLY IN SUPPORT OF MOTION TO LIFT STAY

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

I.    Statutory Background ................................................................................................ 2

II.   Factual Background .................................................................................................. 4

ARGUMENT .................................................................................................................... 4

I.    Plaintiff Is Not Likely to Succeed on the Merits of its Claims. ............................... 5

     A.    Plaintiff Lacks Standing. .................................................................................. 5

          1.    PM 26-01 Is Not Causing Cognizable Harm to Plaintiff or Its
                 Members. ............................................................................................... 5

          2.    Plaintiff Has Not Established Associational Standing to Bring Any
                 of Its Claims. ......................................................................................... 7

     B.    The APA Does Not Provide Plaintiff with a Cause of Action to Challenge
          PM 26-01 ......................................................................................................... 8

     C.    EOIR Has Not Unlawfully Withheld Agency Action. ...................................... 9

     D.    Defendants Have Not Engaged in Arbitrary and Capricious Action. ............... 10

          1.    PM 26-01 Is Not "Inconsistent" with USCIS's Notice. ....................... 10

          2.    PM 26-01 Is Not Arbitrary and Capricious Considered Alone. ............ 13

          3.    USCIS's Notice Is Not Arbitrary and Capricious. ............................... 15

     E.    EOIR Is Not Applying § 1808 in an Impermissibly Retroactive Manner. ...... 15

II.   Plaintiff and Its Members Will Not Suffer Irreparable Harm Absent Preliminary
     Relief. ..................................................................................................................... 16

III.  The Equities and Public Interest Favor Defendants. ............................................. 19

IV.  If the Court Chooses to Grant Preliminary Relief, Such Relief Must Be Narrowly
     Tailored to Plaintiff, Its Members, and Any Harms They Establish. ..................... 20

V.    If the Court Chooses to Grant Preliminary Relief, It Should Require Plaintiff to Post
Sufficient Bond and Should Enter a Stay. ...................................................................... 22

CONCLUSION ............................................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013).................................................................................................. 19

*Anglers Conservation Network v. Pritzker*,
  809 F.3d 664 (D.C. Cir. 2016) .................................................................................. 9

*Ardestani v. INS*,
  502 U.S. 129 (1991).................................................................................................... 8

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988).................................................................................................. 17

*Casa de Md., Inc. v. Wolf*,
  486 F. Supp. 3d 928 (D. Md. 2020) .......................................................................... 4

*Chase v. Town of Ocean City*,
  No. 11-cv-1771, 2015 WL 4993583 (D. Md. Aug. 19, 2015) ................................. 19

*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001) ................................................................................. 9

*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017) ................................................................................... 16

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
  952 F.2d 802 (4th Cir. 1991) ................................................................................... 16

*Family Plan. Ass'n of Me. v. U.S. Dep't of Health & Human Servs.*,
  No. 25-cv-364, 2025 WL 2439209 (D. Me. Aug. 25, 2025) ................................... 20

*Genesis Healthcare, Inc. v. Becerra*,
  39 F.4th 253 (4th Cir. 2022) ...................................................................................... 8

*Gill v. Whitford*,
  585 U.S. 48 (2018)..................................................................................................... 21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) ................................................................................... 23

*Horne v. Flores*,
  557 U.S. 443 (2009) ........................................................................................... 19

*In re Bluewater Network*,
  234 F.3d 1305 (D.C. Cir. 2000) ........................................................................... 9

*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008) ............................................................................. 9

*Jersey Heights Neighborhood Ass'n v. Glendening*,
  174 F.3d 180 (4th Cir. 1999) ............................................................................... 8

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ............................................................................................. 19

*Lee v. Christian Coal. of Am., Inc.*,
  160 F. Supp. 2d 14 (D.D.C. 2001) ...................................................................... 17

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ............................................................................................. 4

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022) .............................................................................. 19

*Munaf v. Geren*,
  553 U.S. 674 (2008) ............................................................................................. 4

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ................................................................................. 6, 7, 12, 20

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................................... 4, 18

*Orellana v. Bondi*,
  1412 F.4th 560 (4th Cir. 2025) .......................................................................... 5, 7

*Sampson v. Murray*,
  415 U.S. 61 (1974) ............................................................................................. 16

*Sandra Townes Powell*,
  915 F.3d 197 (4th Cir. 2019) ............................................................................. 15

*Sierra Club v. EPA*,
  873 F.3d 946 (D.C. Cir. 2017) ............................................................................. 6

iv

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ............................................................................................. 22

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .......................................................................................... 6, 22

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ............................................................................................. 21

*Turner Broad. Sys., Inc. v. FCC*,
   507 U.S. 1301 (1993) ........................................................................................... 20

*USA Farm Labor, Inc. v. Su*,
   694 F. Supp. 3d 693 (W.D.N.C. 2023) ................................................................. 19

*USA Farm Labor, Inc. v. Micone*,
   No. 23-2108, 2025 WL 586339 (4th Cir. Feb. 24, 2025) ...................................... 19

*White Tail Park, Inc. v. Stroube*,
   413 F.3d 451 (4th Cir. 2005) ............................................................................. 5, 6

*Williams v. State Univ. of N.Y.*,
   635 F. Supp. 1243 (E.D.N.Y. 1986) ..................................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .............................................................................................. 4, 18

**Statutes**

5 U.S.C. § 704 ............................................................................................................ 8

5 U.S.C. § 705 ............................................................................................................ 4

5 U.S.C. § 706 ......................................................................................................... 8, 9

8 U.S.C. § 1229a ...................................................................................................... 2, 8

8 U.S.C. § 1252 ........................................................................................................ 2, 8

8 U.S.C. § 1802 ........................................................................................................ 3, 7

8 U.S.C. § 1808 ................................................................................................... *passim*

28 U.S.C. § 2349 ...................................................................................................... 2, 8

One Big Beautiful Bill Act,
  Pub. L. No. 119-21, 139 Stat. 72 (2025)................................................................ 2, 3

**Rules**

Federal Rule of Civil Procedure 23 ...................................................................... 22

Federal Rule of Civil Procedure 65(c) .................................................................. 23

**Regulatory Materials**

8 C.F.R. § 208.2 ..................................................................................................... 2

8 C.F.R. § 1003.0 ............................................................................................... 5, 14

8 C.F.R. § 1003.1 ............................................................................................... 2, 8

8 C.F.R. § 1003.9 ............................................................................................... 5, 14

8 C.F.R. § 1003.10 ............................................................................................. 5, 8

8 C.F.R. § 1003.31 ............................................................................................... 13

USCIS Immigration Fees Required by HR-1 Reconciliation Bill,
  90 Fed. Reg. 34511 (July 22, 2025)................................................................... 11

**Other Authorities**

H.R. Rep. No. 119-106, Book 1 (2025) ................................................................. 2

**INTRODUCTION**

After this Court stayed two of Defendants' policies implementing the One Big Beautiful Bill Act's annual asylum fee provision, the Executive Office for Immigration Review (EOIR) took steps to address each of the concerns the Court described as underlying the stay. Specifically, EOIR issued a new Policy Memorandum (PM 26-01) bringing its policy into material alignment with that of the United States Citizenship and Immigration Services (USCIS). After EOIR issued PM 26-01, Plaintiff moved for emergency relief. This Court denied that relief and noted that Plaintiff had not provided a basis to enjoin the operation of a federal statute. Letter Order, ECF No. 70 (Jan. 13, 2026). EOIR, USCIS, and the other Defendants then took the Court up on its invitation to move to lift the stay, given the changed circumstances. Defs.' Mot. to Lift Stay & Mem. in Supp., (Defs.' Mem.), ECF No. 71.

Now, Plaintiff is back again with a request to keep in place this Court's stay order and issue yet more sweeping relief that not only would enjoin the operation of a federal statute, but would also do so pending EOIR's rewriting of its policy to fit Plaintiff's specifications. Such relief cannot be supported on this record. Plaintiff has not even established standing to challenge PM 26-01 (or any of Defendants' actions challenged in this matter). Even if Plaintiff had standing, it does not have a cause of action under the Administrative Procedure Act (APA) to seek its requested relief. And even if Plaintiff had standing and a cause of action, it would not be likely to succeed on the merits of its claims for agency action unlawfully withheld or arbitrary-and-capricious agency action. Moreover, Plaintiff has not made the required showing on the remaining equitable factors that are required for preliminary relief to issue. Finally, its requested relief far outsweeps both the alleged harms to Plaintiff's members and this Court's authority.

The Court should deny Plaintiff's motion and grant Defendants' motion to lift the stay.

1

# BACKGROUND

## I.    Statutory Background

An alien may apply for asylum in one of two ways. First, if the alien is not in removal proceedings, the alien must generally file an affirmative asylum application with USCIS. 8 C.F.R. § 208.2.

Second, if the alien is in removal proceedings, he may apply for asylum defensively before an EOIR immigration judge (IJ). In removal proceedings, an alien may be represented by counsel of his choosing. 8 U.S.C. § 1229a(b)(4)(A). He may prepare an application for relief from removal, including asylum. *See id.* § 1229a(c)(4). If an alien is ordered removed, he has the right to appeal. *Id.* § 1229a(c)(5). The alien may seek review on the "complete record . . . of all testimony and evidence produced at the proceeding." *Id.* § 1229a(b)(4)(C). He may appeal first to the Board of Immigration Appeals (BIA). 8 C.F.R. § 1003.1(b). If dissatisfied with the result there, the alien may file a petition for review in a federal court of appeals, which may "make and enter, on the petition, evidence, and proceedings set forth in the record on review, a judgment determining the validity of, and enjoining, setting aside, or suspending, in whole or in part, the order of the agency." 28 U.S.C. § 2349(a); *see also* 8 U.S.C. § 1252. An alien may also file a motion to reconsider an IJ's "decision that the alien is removable" or a motion to reopen the alien's proceeding after the entry of an order of removal. 8 U.S.C. § 1229a(c)(6)(A), (7).

Asylum applications often remain pending for several years, given the substantial number of pending applications and new filings every year and finite government resources to process them. As the HR 1 (OBBBA) Judiciary Committee's report on immigration fees noted, last year, "[t]he combined asylum backlog from EOIR and USCIS [stood] at more than 3 million pending applications." H.R. Rep, No. 119-106, Book 1, at 859 & nn.130-135 (2025). To help address the

cost of this backlog and remediate longstanding abuse of the asylum system, the One Big Beautiful

Bill Act ("OBBBA" or "Act"), enacted on July 4, 2025, created a new requirement that asylum

seekers pay an initial fee at the time they submit their application for asylum, and an annual asylum

fee ("AAF") for "each calendar year" that their applications remain pending. Pub. L. No. 119-21,

§§ 100002, 100009, 139 Stat. 72, 364, 371 (2025) (codified at 8 U.S.C. §§ 1802, 1808).

> Section 1802(b), in relevant part, imposes the initial fee as follows:

> During fiscal year 2025, the amount specified in this section shall be the greater
> of—

> (1) $100; or

> (2) such amount as the Secretary or the Attorney General, as applicable, may
> establish, by rule.

For the AAF, Section 1808(a) provides, in relevant part:

> In addition to any other fee authorized by law, for each calendar year that an alien's
> application for asylum remains pending, the Secretary of Homeland Security or the
> Attorney General, as applicable, shall require the payment of a fee, equal to the
> amount specified in subsection (b), by such alien.

Section 1808(b)(1), in turn, determines the "amount specified" for the fee:

> For fiscal year 2025, the amount specified in [Section 1808] shall be the greater
> of—

> (A)     $100; or

> (B)     such amount as the Secretary of Homeland Security may establish, by rule.
> Subsection (b)(2) then provides for "[a]nnual adjustments for inflation," and states
> that "[d]uring fiscal year 2026, and during each subsequent fiscal year," the amount
> equals the amount required "for the most recently concluded fiscal year" plus an
> inflation adjustment.

## II.    Factual Background

Defendants incorporate by reference the Background section from their Motion to Lift Stay and Memorandum in Support. Defs.' Mem. at 2–5.[1]

## ARGUMENT

In this new context of a revised agency approach to the AAF in PM 26-01, Plaintiff has not carried its heavy burden to justify preliminary relief. The Court should consider Plaintiff's claims afresh in the light of the new PM and deny the motion.

"[A] preliminary injunction is an extraordinary and drastic remedy." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (citation omitted). An injunction is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674,  at 690 (2008), and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek*, 520 U.S. at 972 (citation omitted). To warrant preliminary relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors of the analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Finally, the standard for a stay under Section 705—which applies only to APA claims—is the same as the standard for a preliminary injunction. *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 950 (D. Md. 2020).

---

[1] Page numbers for filings in this case refer to the ECF page numbers at the top right of the page (e.g., "Page 24 of 30").

4

I.      **Plaintiff Is Not Likely to Succeed on the Merits of Its Claims.**

    A.      **Plaintiff Lacks Standing.**

        1.      **PM 26-01 Is Not Causing Cognizable Harm to Plaintiff or Its Members.**

To the extent Plaintiff's claims for relief are predicated on PM 26-01—and to the extent it seeks a stay of PM 26-01, *see* Plaintiff's Motion for TRO, Preliminary Injunction Anf/Or Preliminary relief Under 5 U.S.C. § 705, ("Mot."), ECF No. 73-1 at 28—those claims are unlikely to succeed on the merits because Plaintiff lacks standing to challenge the PM. That is because Plaintiff has not established that any of its members, on whom Plaintiff's claim to associational standing depend, have standing to do so. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (explaining that associational standing may be invoked by an organization "on behalf of its members"); ECF No. 72 ¶ 28 (amended complaint invoking associational standing).

The primary effect of PM 26-01 was to supersede PM 25-36. It does not mandate that IJs use the template order or take any particular action. On the contrary, IJs possess decisional independence in how they apply the AAF in individual cases. *See* 8 C.F.R. §§ 1003.0(c), 1003.9(c), 1003.10(b). PM 26-01 does not operate "for the benefit of any individual applicant" and is not "intended to have the force of law." *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025). Indeed, as is typical for a PM, PM 26-01 expressly disclaims any such effect by stating that it "is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States" or its departments.  Defs.' Mem. at 7. Instead, PM 26-01 "sets only internal policies intended to allow for orderly" processing of cases subject to § 1808. *See Orellana*, 141 F.4th at 566.

Given its limited purpose and effect, PM 26-01 is not causing any injury to Plaintiff or any of its members. It does not purport to impose consequences for failure to pay the AAF beyond

those imposed by the text of § 1808 itself. Indeed, a common theme of the declarations Plaintiff submitted with its motion is a lack of any allegation that the PM—as opposed to orders in individual cases—caused any adverse outcome. Plaintiff has not demonstrated that *any* of its members has experienced adverse consequences traceable to PM 26-01. For example, Plaintiff has not shown that any denial of an asylum application resulted from PM 26-01. To take another example, to the extent Plaintiff relies on alleged injuries from IJs' issuing orders requiring payment after an alien allegedly paid the fee, *see, e.g.*, Supplemental Declaration of Robin Nice, (Nice Decl.), ¶ 8, ECF No. 73-8, any such injury, too, is not traceable to PM 26-01—indeed, Plaintiff does not allege any facts suggesting that it is.[2]

The failure to show injury traceable to PM 26-01 means that Plaintiff cannot establish the first and second requirements of standing: a concrete injury and causation by the challenged government action. *See Sierra Club v. EPA*, 873 F.3d 946, 951 (D.C. Cir. 2017) (holding that petitioners lacked standing to challenge EPA's methodology because they had "not identified 'any concrete application'" of that methodology "that threaten[ed] imminent and concrete harm to the interests of their members" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 494–95 (2009))); *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (stating that standing requires "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling" (citation omitted)). For the same reason, Plaintiff also cannot

---

[2] Some of the evidence submitted by Plaintiff does not state whether the allegedly harmed applicant is an ASAP member. *See, e.g.*, Nice Decl. ¶¶ 6–11 (not specifying whether declarant's client is an ASAP member). To the extent Plaintiff alleges harms to asylum applicants who are not members of Plaintiff, it may not use those alleged harms to establish its own standing. *See Stroube*, 413 F.3d at 458.

establish redressability. Staying the PM would not remedy Plaintiff's alleged injury. *See Murthy*, 603 U.S. at 57.

Plaintiff argues that PM 26-01 is causing consequences for its members because IJs were not requiring payment of the AAF until after PM 26-01 was issued. Mot. at 23. That does not, however, mean that PM 26-01 is binding, and it does not tie the PM to any alleged injury to one of Plaintiff's members. The obligation to require the fee comes from § 1808, not the PM. Section 1808 does not give EOIR discretion about whether to impose the AAF or in what amount. *See* 8 U.S.C. § 1808(a), (b)(1).[3] Although Plaintiff invokes EOIR's alleged "previous implicit position that agency action was necessary to implement the statute," Mot. at 23, Plaintiff does not explain what it means; in any event, a perceived "implicit" position does not bind EOIR in this litigation.

In sum, Plaintiff's alleged injury does not flow from PM 26-01. And requiring EOIR to issue "a new written policy," Mot. at 28, would not redress any member's alleged injury. Plaintiff thus lacks standing to challenge PM 26-01. Therefore, the Court should not enter any relief that requires the withdrawal of PM 26-01 or that requires EOIR, the Attorney General, Director Margolin, or IJs to act inconsistently with the PM.

## 2. Plaintiff Has Not Established Associational Standing to Bring Any of Its Claims.

Defendants incorporate by reference the argument against associational standing in their opposition to Plaintiff's previous preliminary-injunction motion. *See* Defs.' Opp'n to Pl.'s Mot.

---

[3] Although Section 1802(b) provides that the Secretary of DHS or the Attorney General "may establish[] by rule" the amount of the fee for FY 2025, the PM is not a rule but a document that sets out "internal policies." *See Orellana*, 141 F.4th at 566. EOIR does not have discretion to vary the amount of the fee other than as provided in the statute; for example, it does not have discretion to impose a lesser fee.

for TRO or Prelim. Inj., (Defs.' Opp'n), at 17–19, ECF No. 43. Although Plaintiff has amended

its complaint, the new allegations do not alter Defendants' associational-standing argument.

**B.    The APA Does Not Provide Plaintiff with a Cause of Action to Challenge PM 26-01.**

Plaintiff also lacks an APA cause of action to challenge or obtain a stay of PM 26-01 and

EOIR's "template order." *See* Mot. at 28 (seeking this relief). The APA authorizes judicial review

of "[a]gency action made reviewable by statute and final agency action *for which there is no other*

*adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added); *see Genesis Healthcare, Inc. v.*

*Becerra*, 39 F.4th 253, 262 (4th Cir. 2022) (quoting § 704 and noting that "the APA provides a

limited cause of action" (cleaned up)). But Plaintiff has identified no "statute" making documents

like PM 26-01 or the template order (in its template form) "reviewable." *See* 5 U.S.C. § 704. And

Plaintiff's members have an "adequate remedy," *see id.*: challenging orders in individual cases by

appealing to the BIA and then to a court of appeals, *see* 8 U.S.C. § 1229a(b)(4)(C), (c)(5); *id.*

§ 1252; 28 U.S.C. § 2349(a); 8 C.F.R. § 1003.1(b). For example, if an application for asylum (or,

for that matter, other relief from removal claimed on a Form I-589, Application for Asylum and

for Withholding of Removal) were denied for failure to pay the AAF, that alien could seek review

of the denial of his application.

Thus, Plaintiff does not have an APA cause of action. *See Jersey Heights Neighborhood*

*Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999) (holding that plaintiff lacked APA cause

of action where it had an adequate alternative remedy). By seeking to obtain determinations about

§ 1808's implementation through the APA, Plaintiff seemingly attempts to skirt the Supreme

Court's holding that "immigration proceedings" are "not governed by the APA." *Ardestani v. INS*,

502 U.S. 129, 133 (1991). This Court should not countenance such an attempt.

8

### C.    EOIR Has Not Unlawfully Withheld Agency Action.

Plaintiff's barebones argument in support of its 5 U.S.C. § 706(1) claim, Mot. at 24, is meritless because it has not identified any clear duty that EOIR has egregiously delayed in carrying out. "Section 706(1) permits judicial review of agency inaction, but only within strict limits," mirroring "the common law writ of mandamus." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016). Relief under Section 706(1) is controlled by the mandamus standard and "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted). Reflecting the traditional limitations on mandatory injunctions issued to co-equal branches, "[i]n the case of agency inaction" the Court "not only must satisfy [itself] that there indeed exists such a duty, but that the agency has 'unreasonably delayed' the contemplated action." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) (quoting 5 U.S.C. § 706(1)). And even once there has been an "unreasonable delay" in fulfilling the required statutory duty, courts evaluate "whether the agency's delay is so egregious as to warrant mandamus." *Core Commc'ns*, 531 F.3d at 855 (citation omitted). Where there is sufficiently egregious delay in performance of a required duty, courts must still be careful not to "enmesh[]" the judiciary "in the minutiae of agency administration." *Cobell v. Norton*, 240 F.3d 1081, 1108–09 (D.C. Cir. 2001).

Plaintiff's § 706(1) argument is not likely to succeed because Plaintiff has not satisfied the mandamus-like standard. Plaintiff has identified no "violation[] of," or "egregious" delay in executing, a "clear duty to act." *See Core Commc'ns*, 531 F.3d at 855. Plaintiff's argument to the contrary is premised on the assumption that § 1808 requires EOIR to "adopt" a policy implementing the AAF that is "coherent and reasoned" to Plaintiff's satisfaction. Mot. at 24. But

9

the statute does not require EOIR (or USCIS) to adopt a policy.[4] Instead, what it states is that "the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a fee . . . ." 8 U.S.C. §1808(a). EOIR (and USCIS) have sought to do so—indeed, their main impediment to carrying out the statute's command has been Plaintiff's bringing this litigation. Now, Plaintiff's attempt to have it both ways—seeking a blanket injunction against any enforcement of the AAF until EOIR rescinds its policy lending guidance on enforcement, while also seeking an order requiring EOIR to issue a *different* policy statement—is both illogical and beyond the Court's authority (as further addressed below with respect to the scope of relief).

### D.    Defendants Have Not Engaged in Arbitrary and Capricious Action.

Plaintiff offers two sets of arguments in support of its theory that—despite Defendants' addressing each of the Court's concerns as expressed in its original stay order—EOIR's PM 26-01 is arbitrary and capricious. But the PM is not arbitrary and capricious whether considered together with USCIS's Notice or alone. And USCIS's Notice is not arbitrary and capricious; indeed, Plaintiff makes barely any attempt to argue otherwise. The Court should hold that Plaintiff is unlikely to succeed on any of these theories.

### 1.    PM 26-01 Is Not "Inconsistent" with USCIS's Notice.

As explained in Defendants' motion, ECF No. 71, PM 26-01 is materially consistent with USCIS's Notice. Although Plaintiff argues that the two agencies' procedures are not consistent because EOIR "provides no standard minimum notice period," it appears to be taking out of

_____

[4] The statute also does not require uniformity in the collection of the fee from all asylum applicants and across agencies.  It provides that USCIS and EOIR "shall require the payment of a fee" once "an alien's [singular] application [singular] remains pending" for a calendar year. 8 U.S.C. §1808(a). Therefore, the statute is consistent with individualized collections from individual impacted aliens upon a triggering event.

10

context this Court's statement about the "need for interpretive uniformity." Mot. at 14 (quoting Mem. Op. at 15, ECF No. 54). In its October 30, 2025, stay order, the Court noted the potential under the previous PM for EOIR to find that the AAF is payable "regardless of whether individual notice has issued," which could subject an applicant to "removal under EOIR's policy, even though he had complied with USCIS's policy." Mem.Op. at 15. Now, though, EOIR "will not expect payment of an AAF that is due or otherwise seek enforcement of the AAF until an Immigration Judge has issued an order setting a deadline for payment and that deadline has passed." PM 26-01 at 4. EOIR also will now seek to collect the AAF "only for asylum applications pending for one year or more as of October 1, 2025." *Id.* at 2. Thus, it has addressed the Court's concern that EOIR and USCIS took different positions regarding the date by which each agency would first begin collecting the AAF. *See* Mem. Op. at 13.

Although Plaintiff argues that applicants "will now hear different messages from different agencies about their deadline to pay their fees," Mot. at 14, that argument elides the real issue: whether the two agencies' policies are in fact inconsistent. They are not. Nothing in the Court's stay order or in authority cited by Plaintiff holds that the agencies must take the same approach to providing notice. PM 26-01 states that EOIR "will not expect payment" of the AAF until an IJ has "set a deadline" and the "deadline has passed." Defs.' Mem. at 4. And USCIS—an agency with different procedures for processing asylum applications for reasons having nothing to do with the OBBBA or this litigation—has taken its own approach that is nonetheless consistent, stating in its Notice that "the first time the AAF is due . . . USCIS will provide personal, individual notice" of "the amount of the fee, when the fee must be paid, how the fee must be paid, and the consequences of failure to pay," and that "USCIS will provide guidance for future years' AAF payments in subsequent issuances." 90 Fed. Reg. 34511, 34515 (July 22, 2025). In any event, an alien who

11

already paid the AAF to USCIS and believes he is being improperly penalized for failure to pay it in the same 365-day period may present proof of payment to the presiding IJ.

That USCIS's individual notices provide a 30-day deadline does not make those notices inconsistent with EOIR's policy. Again: as explained in the Background section, *supra*, asylum applications arise in a different, defensive context before EOIR than before USCIS. It is rational and not arbitrary for each agency to determine how most effectively to provide notice to applicants appearing before it, given the unique mission of each agency and the unique circumstances of each set of applicants. Although Plaintiff identifies "concerns" and "confusion," Mot. at 14, it tellingly does not point the Court to any example of one of its members' being subject to an adverse decision because of alleged inconsistency between the EOIR and USCIS policies. (That over 30,000 aliens had already paid the AAF as of January 2, *see* PM 26-01 at 4—a number that has grown since then—provides additional reason to question whether confusion over payment is a significant concern.) Abstract concerns cannot justify standing to sue, let alone preliminary relief. *See Murthy*, 603 U.S. at 57 (stating that standing requires "an injury that is concrete, particularized, and actual or imminent").

What is more, Plaintiff's argument that EOIR should require that IJs impose a 30-day deadline in all cases would not only supplant the IJs' baseline discretion to manage their cases; it would also blue-pencil the OBBBA to require a deadline found nowhere in the text of the asylum-fee provision. That EOIR has not already done so reflects not a failure to consider "the problem," Mot. at 15 (quoting Mem. Op. at 14), but the reality that an asylum applicant who believes he has wrongly suffered an adverse consequence because of an IJ's deadline can raise that issue to the IJ. The situation is not materially different than any other situation in which a litigant makes a mistake with an electronic system. If an applicant receives an adverse decision despite raising a payment

12

issue to the IJ, appeal to the BIA is available. While Plaintiff does not identify any of its members who is risking an imminent asylum denial because of a missed fee—or who cannot raise such a risk to the IJ adjudicating his case—such denials may be appealed to the BIA if they occur.

In sum, EOIR has resolved any material differences with USCIS's Notice. Plaintiff's residual complaints about the two agencies' alleged discrepancies do not identify any issue not soluble through the ordinary adjudicatory process for asylum claims. They also do not support a finding of arbitrary and capricious action by EOIR.

## 2. PM 26-01 Is Not Arbitrary and Capricious Considered Alone.

Next, Plaintiff argues that PM 26-01 is "unlawful standing on its own." Mot. at 16. Its first argument, that agencies must explain why they treat "similarly situated" individuals differently, *id.*, rests on a mistaken premise: that all applicants for asylum before EOIR IJs are in fact similarly situated. That is not correct. Indeed, one reason for permitting IJs to set deadlines in individual cases is so that they can take into account individual applicants' circumstances. It is standard practice for IJs to set deadlines for filings in the cases before them. *See* 8 C.F.R. § 1003.31(h) ("The immigration judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any."). Such deadlines include payment of any required fees. Similarly, use of a template is standard and familiar practice. Plaintiff provides no basis to conclude that following these practices in the context of the AAF is arbitrary and capricious, when governing regulations allow them across the board.

Although Plaintiff next argues that EOIR's policy will "hinder" asylum applicants "from paying their fee on time," Mot. at 16, that assertion is unsupported as well. Plaintiff does not identify any of its members who failed to pay on time or anticipates imminently doing so. By taking issue with the fact that PM 26-01 "provides that fees need not be paid until an immigration

13

judge issues an order demanding payment," *id.* at 17, Plaintiff is faulting EOIR for addressing the Court's concern about advance notice to applicants: PM 26-01 addresses that concern by outlining the expectation that payment of the AAF will not be sought until an individual notice is issued. And, again, issues with missed payments (if they occur) can be raised to the presiding IJ.

Plaintiff also argues that regulations in 8 C.F.R. §§ 1003.0(c) and 1003.9(c) do not prevent setting a uniform deadline. Mot. at 18. Naturally, EOIR does not dispute that its Director may "[i]ssue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities." 8 C.F.R. § 1003.0(b)(1)(i), (c). PM 26-01 reflects such a policy. But that the Director has authority to issue policy documents does not mean that the Director has authority to bind IJs to particular decisions in individual cases or that the policy can—or even should—resolve every issue. Especially where—as noted above—IJs have default authority to set deadlines for applications, it makes sense for EOIR to address the date as of which it will treat § 1808 asylum fee collections as beginning to be due but leave the lengths of deadlines in individual cases to presiding IJs. That Plaintiff disagrees with this policy choice does not make it arbitrary and capricious.

Finally, Plaintiff argues that EOIR is "wrongly suggesting" that non-payment of the AAF can result in denial of "non-asylum claims": withholding of removal and Convention Against Torture (CAT) protection. Mot. at 19. Plaintiff is not likely to succeed on this version of its arbitrary-and-capricious theory. Although Plaintiff takes issue with the template order's reference to Form I-589, *id.* at 20, the rest of the template order makes clear that it is asylum applicants— not applicants for other forms of protection from removal—who are subject to the AAF. *See* Heilbrun Decl. Ex. 2, at 2, ECF No. 64-4 (stating that "all aliens with an asylum application pending for 365 days or more" must pay the AAF and that "[a]ny alien who has an asylum

14

application pending for one year or more must pay the AAF"). As for Plaintiff's assertion that some IJs "rejected Form I-589 applications that included *no* asylum claim," Mot. at 20, such rejections, if they occur, can be addressed through motions for reconsideration with the IJ or, later, through appeals to the BIA. Given that the template order makes clear it applies to asylum applicants, Plaintiff has not linked EOIR's policy to these alleged rejections. Even if some portion of the template order were problematic, that would not justify staying the entire policy. And Plaintiff does not explain why the remedy of motions to reconsider or individual appeals is not adequate. Plaintiff has not established that PM 26-01 is likely to be arbitrary and capricious.

**3.    USCIS's Notice Is Not Arbitrary and Capricious.**

Finally, Plaintiff is incorrect in asserting that "Defendants have not asked the Court to reconsider" that USCIS's Notice is "likely arbitrary and capricious." Mot. at 28. Defendants asked for exactly that. Defs.' Mem. at 2 (arguing that the Court should lift its stay of the Notice and, "[i]n its order doing so, the Court should also hold that Plaintiff is not likely to succeed on its arbitrary-and-capricious claim"). As is thoroughly catalogued in Defendants' motion, the basis for the Court's stay of the USCIS Notice no longer exists. *Id.* at 4–7. Specifically, USCIS's and EOIR's procedures now materially align. And Plaintiff makes no showing that USCIS's Notice is arbitrary and capricious standing alone. Thus, the Court should lift the stay.

**E.    EOIR Is Not Applying § 1808 in an Impermissibly Retroactive Manner.**

The Court already rejected Plaintiff's arguments regarding retroactivity. *See* Mem. Op. at 8–12. Nothing has changed that would require reconsidering those unsuccessful arguments, and Plaintiff simply incorporates by reference its previous briefing on them (albeit this time as to EOIR only). *See* Mot. at 21. Defendants therefore incorporate here their responses to those arguments. *See* Defs.' Opp'n at 19–31.

15

## II.    Plaintiff and Its Members Will Not Suffer Irreparable Harm Absent Preliminary Relief.

Apart from the lack of any likelihood of success, Plaintiff also has failed to demonstrate that its members will suffer irreparable harm if the Court does not enter the requested preliminary injunction. To show irreparable injury, a plaintiff must make a "clear showing" that it will suffer harm that is "'neither remote nor speculative, but actual and imminent.'" *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In addition, harm is irreparable only when it "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019). "'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date weighs heavily against a claim of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) (cleaned up). Accordingly, "the temporary loss of income . . . does not usually constitute irreparable injury." *Sampson*, 415 U.S. at 90. But here, the *only* cognizable injury Plaintiff identifies is the loss of $100 by each of its affected members. That alone suffices to defeat Plaintiff's motion. In the face of that black-letter law, though, Plaintiff insists that the alleged "economic consequences alone are irreparable harm that warrant preliminary relief" because "it is far from clear whether applicants who suffered economic harm . . . will ever be able to recover from EOIR or through litigation." Mot. at 25. That argument is wrong twice over.

*First*, it misstates the governing legal test: the operative question is whether Plaintiff has met its burden of showing that its members are likely to suffer irreparable harm, not whether it is

"clear" that asylum applicants "will ever be able to recover." *Id.* The burden, in other words, is not on Defendants to assure the availability of refunds, but rather on Plaintiff to show the likelihood that their harm will be irreparable.

*Second*, Plaintiff fails to demonstrate that refunds will not be available. Its only argument to that effect is that sovereign immunity might inhibit the ability of asylum applicants to recover their fees if those fees are found to have been unlawfully imposed. *Id.* But sovereign immunity does not necessarily prevent the entry of judgment against the government requiring it to set aside unlawful agency action, even when the inevitable "by-product" of that judgment is the reimbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). Moreover, Plaintiff's argument ignores the possibility of recourse through the presiding IJ or through BIA or federal appellate review. Plaintiff simply has not carried its burden of showing that if asylum applicants are required to pay the annual fee during the pendency of this case, they will have no recourse to recover their funds should they ultimately prevail.

Nevertheless, Plaintiff argues that despite the monetary nature of the alleged injury, that harm is nonetheless irreparable because the "limited financial means" of asylum seekers sometimes requires "mak[ing] difficult tradeoffs" regarding budgets. Mot. at 24–25. But Plaintiff cites no meaningful authority to support its view that an exception applies in this case to the general rule that monetary injury is not irreparable. In fact, the *only* case it cites for that proposition—from an out-of-circuit district court—went out of its way to emphasize the extreme circumstances warranting an exception in that case. *See id.* at 25 (citing *Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 31–32 (D.D.C. 2001)). There, the court acknowledged an exception to the governing rule when "the plaintiff is so poor that he would be harmed in the interim by the loss," noting other caselaw explaining that "the plaintiff must quite literally find himself being forced

17

into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm." *Lee*, 160 F. Supp. 2d at 31 (citing *Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1248 (E.D.N.Y. 1986)). Plaintiff comes nowhere close to demonstrating that the $100 payment at issue here resembles the loss of employment that featured in *Lee*; even assuming for argument's sake that any of its members might eventually face comparable circumstances through paying the AAF, Plaintiff's irreparable-harm argument improperly assumes that an improperly collected fee could never be recovered either through the standard IJ and BIA adjudicatory process or through an appeal.

Finally, Plaintiff attempts to satisfy the irreparable-harm requirement by arguing that if asylum applicants do *not* pay the fee, they risk suffering irreparable harm in the form of adverse immigration consequences. Mot. at 26–27. But "[a]lthough removal is a serious burden for many aliens, it is *not* categorically irreparable." *Nken*, 556 U.S. at 435 (emphasis added). Instead, the alien must establish harm in his individual case. Additionally, Plaintiff provides no reason to believe that in the *absence* of preliminary relief, its members will not comply with federal law by paying the AAF. Plaintiff has not shown that any of its members have failed to pay the AAF when required or are imminently expected to do so. Even if any of them did fail to pay and was for that reason subjected to a removal order, removal would occur only if the alien elected not to seek reconsideration or appeal, or if the alien did so and failed to persuade the IJ, the BIA, and the court of appeals of the correctness of his position. To repeat the governing test: an injunction is available only if a plaintiff shows that "he is likely to suffer irreparable harm *in the absence of preliminary relief*." *Winter*, 555 U.S. at 20 (emphasis added). Plaintiff has not made that showing.

## III.     The Equities and Public Interest Favor Defendants.

The equities and public interest do not support Plaintiff's request for preliminary relief. Defendants incorporate by reference their argument on this issue in their opposition to Plaintiff's first motion for preliminary relief. *See* Defs.' Opp'n at 27.

Additionally, Defendants note that the October 30 stay's "continued enforcement" would be "detrimental to the public interest." *Chase v. Town of Ocean City*, No. 11-cv-1771, 2015 WL 4993583, at *5 (D. Md. Aug. 19, 2015) (quoting *Horne v. Flores*, 557 U.S. 443, 447 (2009)). So would the entry of the broader injunctive relief Plaintiff now requests. That is so especially because enforcement of such an injunction risks "prohibit[ing] the enforcement of a statute enacted by a people's elected representatives," which would "constitute[] an irreparable injury." *USA Farm Labor, Inc. v. Su*, 694 F. Supp. 3d 693, 715 (W.D.N.C. 2023), *aff'd sub nom. USA Farm Labor, Inc. v. Micone*, No. 23-2108, 2025 WL 586339 (4th Cir. Feb. 24, 2025). Such an injury "weighs particularly heavily with respect to the enforcement of immigration laws, which implicates the government's 'sovereign prerogative.'" *Id.* (quoting *Miranda v. Garland*, 34 F.4th 338, 365-66 (4th Cir. 2022)); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (stating that "control over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature").

And that heavy injury to the public interest is doubly weighty here because Plaintiff seeks to enjoin implementation of a budget provision by agencies entrusted with enforcing it. Budgetary matters are a core congressional prerogative. *Cf. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (recognizing Congress's "broad discretion" under Article I of the Constitution to determine how federal taxpayer dollars are spent). Although Plaintiff argues that "the government is not prejudiced by temporarily waiting to impose annual asylum fees," Mot. at

27, that assertion ignores the very recent (and continuing) context of the OBBBA's asylum-fee provision: a severe backlog of cases and accompanying budgetary concerns. Especially because Plaintiff and its members have adequate alternative remedies for their alleged harms, the public interest favors denying preliminary relief.

IV.    **If the Court Chooses to Grant Preliminary Relief, Such Relief Must Be Narrowly Tailored to Plaintiff, Its Members, and Any Harms They Establish.**

In the event the Court does grant relief, it must be tailored to harms Plaintiff can establish. *See Murthy*, 603 U.S. at 57 (holding that plaintiffs "must demonstrate standing . . . for each form of relief that they seek" (citation omitted)). Plaintiff's requested relief bends that principle in several ways. The Court should decline the request to exceed its authority.

*First*, in this APA action purporting to challenge agency action or inaction, Plaintiff provides no basis whatsoever for the Court to "enjoin[] the Justice Department Defendants . . . from taking any action to enforce the annual asylum fee requirement . . . against any ASAP member" until those Defendants "issue a new written policy." Mot. at 28. Even if Plaintiff had standing to challenge PM 26-01—which it does not, as explained, *supra* § I.A.—and even if the Court found that EOIR (or any Defendant) had engaged in arbitrary-and-capricious action or failed to act in violation of the APA, the remedy would not be to enjoin the enforcement of a federal statute. Doing so would not only go far beyond the Court's existing stay order; it would also create a new separation-of-powers issue by enjoining the enforcement of a duly enacted congressional policy. *See Family Plan. Ass'n of Me. v. HHS*, No. 25-cv-364, 2025 WL 2439209, at *8 (D. Me. Aug. 25, 2025) (recognizing that plaintiffs' "convictions are not equal to the task of enjoining congressional will in this arena"); *cf. Turner Broad. Sys., Inc. v. FCC*, 507 U.S. 1301, 1301 (1993) (Rehnquist, C.J., in chambers) (recognizing that the Supreme Court has traditionally

presumed that "all Acts of Congress . . . 'should remain in effect pending a final decision on the merits'"). That Plaintiff takes issue with EOIR's implementation of the AAF gives the Court no basis to reach through PM 26-01 and enjoin enforcement of the statute itself.  Plaintiff cites no authority to the contrary. It is Plaintiff's burden to establish that the Court has the authority to issue the relief it seeks, and it has not done so.

Plaintiff's argument that enjoining the enforcement of a federal statute is "necessary" is devoid of merit. Mot. at 29. It is simply not accurate to claim, as Plaintiff does, that EOIR "threatened to ignore" an order of this Court. *Id.* On the contrary, PM 26-01 states that EOIR would "implement" an order enjoining regulations relevant to IJs' decisional independence. *See* Defs.' Mem. at 5 n.8. It also states—consistent with the text of the statute—that "EOIR adjudicators will remain obligated to apply the relevant provisions of the OBBBA, including the AAF, unless those provisions are themselves enjoined or invalidated." *Id.* at 7 n.12. That statement is consistent with the law and with this Court's previous orders. Indeed, the Court rejected Plaintiff's claim that it should issue "emergency" relief enjoining the implementation of the statute. Letter Order at 1. In Plaintiff's emergency motion, ECF No. 64, it "ask[ed] this Court to prohibit Defendants from requiring asylum applicants to pay the annual asylum fee authorized by 8 U.S.C. § 1808 and to stay" PM 26-01, Letter Order at 1. Denying the motion, the Court explained that it cannot "enjoin Defendants from requiring asylum applicants to pay the annual asylum fee without a legal basis to do so." *Id.* Plaintiff had not provided a legal basis then, and it has not now.

*Second*, any relief should be limited to members that Plaintiff has chosen to identify and who have standing to seek this relief. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) (holding that a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury"). The Court cannot directly grant a universal injunction. *See Trump v. CASA, Inc.*, 606 U.S. 831, 856 (2025). Nor can

it do so indirectly by extending relief to nonparties who are represented by a party, other than through class certification under Rule 23 or properly established associational standing. Plaintiff has not sought or obtained class certification or proved that all of its members have standing to obtain relief that would effectively enjoin the enforcement of a federal statute. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] properly conducted class action. . . can come about in federal courts in just one way—through the procedure set out in Rule 23."); *Summers*, 555 U.S. at 497–500 ("[T]he Court has required plaintiffs claiming organizational standing to identify members who have suffered the requisite harm."). Plaintiff cannot end-run all three of those limits—*CASA*, Rule 23, and associational standing requirements—in order to obtain an injunction against a duly enacted federal statute in favor of all of its members.

Limiting a remedy to the members Plaintiff has identified for standing purposes appropriately leaves the breadth of the remedy Plaintiff can receive in its own hands. Nothing prevents Plaintiff from naming as many of its members as it wishes so that each of those members can benefit from any relief the Court orders. Likewise, nothing prevents Plaintiff's members from seeking to litigate this case as a class action. What the Court cannot do is enjoin Defendants from requiring Plaintiff's members to pay the AAF when Defendants do not know who those members are because Plaintiff has not identified them. If it enters any of Plaintiff's requested relief—which it should not—the Court should make clear that Defendants are enjoined from taking proscribed actions against only the members that Plaintiff chooses to identify for purposes of standing.

**V.     If the Court Chooses to Grant Preliminary Relief, It Should Require Plaintiff to Post Sufficient Bond and Should Enter a Stay.**

Finally, to the extent the Court issues any injunctive relief, Defendants respectfully request the requirement of a reasonable bond, considering the financial damages and other costs that

preliminary relief will cost Defendants. Under Federal Rules of Civil Procedure 65(c), courts may grant preliminary relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained" by Defendants in the event that they are "found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To that end, the Fourth Circuit has directed that "[i]n fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). For that reason, "[t]he amount of the bond . . . ordinarily depends on the gravity of the potential harm to the enjoined party." *Id.* Here, Plaintiff seeks, among other relief, an injunction against any enforcement of a $100 fee "against any ASAP member," Mot. at 28—an injunction of enormous financial value. The loss of such a significant sum throughout the pendency of this case is precisely the harm that Rule 65(c) exists to cure. Accordingly, the Court should require Plaintiff to post bond before obtaining any injunction against Defendants prohibiting the collection of the AAF for the pendency of the case.

Defendants also request that the Court stay any injunction or stay pending appeal or, at minimum, enter a seven-day administrative stay, to allow the Solicitor General to determine whether to authorize an appeal and seek emergency appellate relief.

## CONCLUSION

The Court should deny Plaintiff's motion for preliminary relief and should lift the October 30, 2025, stay.

JANUARY 23, 2026

*Respectfully submitted,*

BRETT A. SHUMATE
Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

*/s/ Elizabeth Hedges*
ELIZABETH HEDGES
Counsel to the Assistant Attorney General
United States Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 616-0929
elizabeth.t.hedges@usdoj.gov

*Counsel for Defendants*

24