# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

ASYLUM SEEKER ADVOCACY PROJECT,

        Plaintiff,

   v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

        Defendants.

Civil Action No. 1:25-cv-03299-SAG

**Hearing Scheduled on January 28, 2026**

**Decision Requested by January 30, 2026**

**Plaintiff's Reply in Support of Motion for a Temporary Restraining Order, Preliminary Injunction, and/or Preliminary Relief Under 5 U.S.C. § 705 (ECF 73)**

## Table of Contents

Page

Introduction ................................................................................................................ 1

Argument ...................................................................................................................... 2

    I.     ASAP is likely to succeed on the merits. ............................................... 2

         A.    ASAP has standing. ...................................................................... 2

         B.    EOIR's January 2 memo is final agency action. ......................... 3

         C.    ASAP has a cause of action under the APA. .............................. 4

         D.    ASAP is likely to prevail on its argument that Defendants' actions are arbitrary and capricious.......................................................... 6

    II.    The remaining factors weigh decisively in favor of preliminary relief. .............. 10

         A.    Plaintiff's members face irreparable harms. ............................. 10

         B.    The balance of the equities and public interest favor lawful implementation of OBBBA and full and fair adjudication of asylum claims.................................................................................. 12

    III.   This Court has authority to enter preliminary relief for ASAP's members. ........ 13

    IV.   The Court should not require a bond or enter a stay pending appeal. ................. 15

Conclusion ................................................................................................................. 15

## Table of Authorities

**Page**

### Cases

*Amador v. Mnuchin*,
476 F. Supp. 3d 125 (D. Md. 2020) ...................................................................5

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (D.C. Cir. 2000) .......................................................................4

*Ardestani v. INS*,
502 U.S. 129 (1991) ......................................................................................5, 6

*Bacardi & Co. Ltd. v. USPTO*,
104 F.4th 527 (4th Cir. 2024) ..........................................................................5

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
2022 WL 326473 (D. Md. Feb. 3, 2022) (Gallagher, J.) .......................................15

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ........................................................................................4

*Carrillo v. Schneider Logistics, Inc.*,
823 F. Supp. 2d 1040 (C.D. Cal. 2011) ............................................................12

*Centro Legal de la Raza v. EOIR*,
524 F. Supp. 3d 919 (N.D. Cal. 2021) ..............................................................6

*Chamber of Com. v. FEC*,
69 F.3d 600 (D.C. Cir. 1995) ...........................................................................8

*City of Columbus v. Kennedy*,
796 F. Supp. 3d 123 (D. Md. 2025), *appeal pending*, No. 25-2012 (4th Cir.) .............12

*Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*,
365 F.3d 435 (6th Cir. 2004) ..........................................................................14

*Cortez v. Sessions*,
318 F. Supp. 3d 1134 (N.D. Cal. 2018) ............................................................11

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ...........................................................................................6

*Family Plan. Ass'n of Me. v. HHS*,
2025 WL 2439209 (D. Me. Aug. 25, 2025) .........................................................14

*Matter of Garcia Martinez*,
29 I. & N. Dec. 169 (B.I.A. 2025) ...................................................................11

*Genesis Healthcare, Inc. v. Becerra*,
39 F.4th 253 (4th Cir. 2022) ..................................................................3, 5, 6, 15

*Hunt v. Wash. State Apple Advert. Comm'n*,
　432 U.S. 333 (1977) .................................................................................14

*Int'l Ladies' Garment Workers' Union v. Donovan*,
　722 F.2d 795 (D.C. Cir. 1983) ....................................................................8

*Jersey Heights Neighborhood Ass'n v. Glendening*,
　174 F.3d 180 (4th Cir. 1999) ...................................................................5, 6

*L.G.M.L. v. Noem*,
　800 F. Supp. 3d 100 (D.D.C. 2025) ..........................................................11

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ...................................................................................2

*Make the Rd. N.Y. v. Noem*,
　2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) .......................................14, 15

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
　785 F. Supp. 3d 68 (D. Md. 2025) ............................................................15

*Mayor & City Council of Baltimore v. Trump*,
　416 F. Supp. 3d 452 (D. Md. 2019) ............................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007) .................................................................................11

*Murthy v. Missouri*,
　603 U.S. 43 (2024) .....................................................................................2

*NFIB v. DOL*,
　595 U.S. 109 (2022) .................................................................................13

*Nken v. Holder*,
　556 U.S. 418 (2009) .............................................................................11, 13

*O.A. v. Trump*,
　404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................6, 11

*Orellana v. Bondi*,
　141 F.4th 560 (4th Cir. 2025) .....................................................................4

*ORVEC v. Kempthorne*,
　473 F.3d 94 (4th Cir. 2006) ........................................................................5

*Porter v. Clarke*,
　923 F.3d 348 (4th Cir. 2019) ....................................................................14

*Ramirez v. ICE*,
　310 F. Supp. 3d 7 (D.D.C. 2018) ................................................................6

*Rodriguez v. Robbins*,
　715 F.3d 1127 (9th Cir. 2013) ..................................................................12

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ........................................................................................................7

*South Carolina v. United States*,
   907 F.3d 742 (4th Cir. 2018) .......................................................................................4

*TBS v. FCC*,
   507 U.S. 1301 (1993) ..................................................................................................14

*Teva Pharms. USA, Inc. v. FDA*,
   441 F.3d 1 (D.C. Cir. 2006) ..........................................................................................7

*Trump v. IRAP*,
   582 U.S. 571 (2017) (per curiam) ..............................................................................13

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) ................................................................................................3, 5

*Va. Coal. for Immigr. Rts. v. Beals*,
   2025 WL 2345822 (E.D. Va. Aug. 12, 2025) ...........................................................15

*West Virginia v. EPA*,
   577 U.S. 1126 (2016) ..................................................................................................14

*Yick v. Bank of Am., N.A.*,
   539 F. Supp. 3d 1023 (N.D. Cal. 2021) .....................................................................12

## Statutes

5 U.S.C. § 705 ...................................................................................................................13, 15

5 U.S.C. § 706(1) ......................................................................................................................4

## Rules

Fed. R. Civ. P. 65(c) ...............................................................................................................15

## Regulations

8 C.F.R. §§ 1003.0(b)(1)(i), (c) ................................................................................................7

91 Fed. Reg. 2561 (Jan. 21, 2026) ...........................................................................................3

## Other Authorities

DOJ, EOIR, *Types of Appeals, Motions, and Required Fees*,
   https://www.justice.gov/eoir/types-appeals-motions-and-required-fees ................11

EOIR, Immigration Court Practice Manual,
   https://www.justice.gov/eoir/reference-materials/ic .....................................................8

**Introduction**

The government does not seriously dispute that EOIR's current implementation of the annual asylum fee deviates from USCIS's policy implementing the same fee—sometimes for the same applicants. EOIR stubbornly refuses to ensure that asylum applicants have notice and then at least 30 days to pay the fee to ensure that they receive *actual* notice and have a meaningful opportunity to comply. Instead, EOIR's position is that individual immigration judges should set whatever deadline they want on an ad hoc basis—even 48 hours or less—despite the irreparable harm and risk to applicants who face potential removal to a country where they risk persecution if they miss the deadline to pay the fee.

In its January 2 memo, EOIR's lead rationale for the continuing divergence from USCIS was that EOIR simply lacked the legal power to impose a minimum notice period. The government now abandons that argument. And the government otherwise continues without explanation to ignore the obvious alternative of a minimum deadline coupled with discretion to grant extensions as warranted in individual cases. Nor does the government dispute the unreasonableness of inviting immigration judges to issue template orders misstating the consequences of not paying the annual fee by threatening to dismiss an applicant's Immigration and Nationality Act ("INA") withholding and Convention Against Torture ("CAT") protection claims—which are not subject to the annual asylum fee. Instead, the government simply denies what is plainly in the template order.

The government's other objections to ASAP's motion lack merit. ASAP has standing to bring this lawsuit, as this Court has already held. The government's arguments that the January 2 memo imposes no legal consequences and that ASAP lacks a cause of action under the APA disregard Supreme Court precedent. And contrary to the government's arguments, this Court has ample authority to stay and enjoin an agency's arbitrary and capricious implementation of a statute.

**Argument**

I.    **ASAP is likely to succeed on the merits.**

    A.    **ASAP has standing.**

ASAP's members and, therefore, ASAP have standing to challenge the January 2 memo.[1] Standing requires "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). Here, ASAP's members easily have standing because they are subject to the annual fee that the January 2 memo implements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992) ("there is ordinarily little question that the" "'object of the action . . . at issue'" has standing); *see also* Reddy 4th Suppl. Decl. ¶ 5 (record includes examples of ASAP members who received the template order referenced in the January 2 memo). In addition, ASAP members' injuries include confusion over when they are required to pay, the financial hardship of having to come up with $100 with little or no actual notice, and the risk that they will miss the deadline and lose their statutory right to seek asylum. *See* ECF 73-4 at 3–5. ASAP members also face the risk that nonpayment will wrongly deprive them of their INA withholding and CAT protection claims.

These injuries are caused by the January 2 memo's failures to: (1) conform EOIR's policy to USCIS's policy by setting a minimum notice period ensuring actual notice and adequate time to pay the fee, and (2) provide legally sound instructions to immigration judges rather than a template order that threatens wrongful denial of applicants' INA withholding and CAT protection claims. These injuries would be alleviated by an order staying the memo and forbidding the government from imposing the annual asylum fee on ASAP members until it solves these problems.

---

[1] The government incorporates its prior argument that ASAP lacks associational standing to sue on behalf of its members. ECF 81 ("Opp.") at 14–15. The Court has already rejected this argument, ECF 54 at 7–8; nevertheless, ASAP incorporates its previous arguments explaining why the government is wrong, ECF 29-1 at 19–20; ECF 45 at 7.

     **B.**     **EOIR's January 2 memo is final agency action.**

In the standing section of its brief, the government argues that the January 2 memo lacks any binding legal effect. Opp. 12–14. The question of whether an agency action has binding legal effect is a question of finality under the APA, not Article III's limits on a court's jurisdiction. *See Genesis Healthcare, Inc. v. Becerra*, 39 F.4th 253, 263 (4th Cir. 2022) (parties and district court incorrectly conflated finality with mootness). Under either framing, the government is wrong: the January 2 memo is final agency action and ASAP has standing to challenge it.

The January 2 memo is a final agency action because it: (1) represents the consummation of EOIR's decisionmaking process; and (2) imposes legal consequences. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016); *see also id.* at 599–600 (courts take a "pragmatic approach . . . to finality" (cleaned up)).

The government's argument as to the second prong—that the January 2 memo does not impose legal consequences—fails to engage with the Supreme Court and Fourth Circuit precedent ASAP cited in its opening brief. ECF 73-1 at 21–24 ("Mot.") (citing *Hawkes* and *Genesis*). The January 2 memo has legal consequences because it interprets and implements Section 1808's mandate that the Attorney General "shall require" an annual asylum fee, albeit in a manner that misreads the statute and fails to comply with the APA's standards of reasoned decisionmaking. *Id.* at 22–24; McShiras Decl. ¶¶ 6–14. And immigration judges understand as much: they began requiring payment of the fee after EOIR's July 17 memo, stopped requiring payment after this Court stayed that memo, and began requiring it again after EOIR issued the January 2 memo. Mot. 23.[2]

---

[2] Just a few days ago, EOIR issued a new Federal Register notice confirming that it is the Attorney General and EOIR—not individual immigration judges—who are responsible for implementing and requiring the fees imposed by OBBBA. *See* 91 Fed. Reg. 2561 (Jan. 21, 2026). There, the agency explained that "*EOIR* will require the FY 2026 filing fees established in this notice for any filings with the Immigration Courts or the Board of Immigration Appeals," and that "*EOIR* will

The January 2 memo's disclaimer of its own legal significance is the sort of "boilerplate" language that does not defeat finality. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000). And the Fourth Circuit case the government cites holding that an unrelated EOIR policy memo was not "intended to have the force of law," Opp. 12 (quoting *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025)), is not to the contrary. The memo in *Orellana* concerned purely internal procedures that were "*not* intended primarily to confer important procedural benefits," 141 F.4th at 566–68 (emphasis added), whereas the January 2 memo imposes a mandatory fee that asylum seekers must pay or lose their right to asylum, and even on EOIR's telling creates rights for applicants (for example, the right to at least some notice, and the right of applicants whose asylum cases were decided before October 1, 2025 not to pay the fee). ECF 71-1 at 3, 5.

If, by contrast, the January 2 memo is not a final agency action, then EOIR is neglecting its duty under Section 1808 to operationalize the annual asylum fee, and ASAP is entitled to relief under 5 U.S.C. § 706(1). Mot. 24. In accusing ASAP of trying "to have it both ways," Opp. 17, the government misses that ASAP seeks relief on its Section 706(1) claim only in the alternative. And this Court has ample authority to prevent the Justice Department Defendants from imposing a fee in the absence of final agency action implementing Section 1808 in a reasonable manner. *See South Carolina v. United States*, 907 F.3d 742, 755 (4th Cir. 2018).

### C.    ASAP has a cause of action under the APA.

Next, the government argues that ASAP lacks a cause of action under the APA. Opp. 15. Section 704 provides a cause of action for "agency action made reviewable by statute" and "also for review of final agency action for which there is no other adequate remedy in a court." *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988) (cleaned up); *see also ORVEC v. Kempthorne*, 473

---

reject any filings . . . not accompanied by a proper filing fee or request for an applicable fee waiver." *Id.* at 2563 (emphases added).

F.3d 94, 100–01 (4th Cir. 2006) (similar).  Here, according to the government, ASAP has an "adequate remedy" precluding APA review because an ASAP member who fails to pay the fee on time (voluntarily or otherwise) would trigger an order of removal, which could then be appealed to the Board of Immigration Appeals ("BIA"), and ultimately to a court of appeals.  Opp. 15.

This argument again contravenes *Hawkes*.  *See* 578 U.S. at 600–02.  Given "the APA's presumption of judicial review, the mere fact that" a plaintiff can seek judicial review of another agency action (here, an order of removal) does *not* preclude judicial review of an earlier and different agency action (here, EOIR's generally applicable implementation of the annual fee).  *Id.* at 601–02 (cleaned up); *Bacardi & Co. Ltd. v. USPTO*, 104 F.4th 527, 535 (4th Cir. 2024) (similar).

Moreover, an "adequate alternative to APA review" cannot require parties to "expose themselves" to "serious criminal and civil penalties" to seek judicial review.  *Hawkes*, 578 U.S. at 600–01 (cleaned up).  Here, if APA relief is unavailable, asylum seekers would be required to expose themselves to a removal order and then an "arduous, expensive, and long" process at the BIA before a federal court could review the dismissal of their application for non-payment of the annual asylum fee.  *Hawkes*, 578 U.S. at 601.  That makes the remedy inadequate.  Further, an adequate alternative remedy must offer the "'same genre' of relief as the APA."  *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 142 (D. Md. 2020).  But a decision overturning a removal order does not offer same "genre of relief" because an ASAP member could not seek a stay of USCIS's and EOIR's policies implementing the annual asylum fee or any other remedy ASAP seeks here.

The government's cases are inapposite.  Opp. 15 (citing *Genesis*, 39 F.4th at 262; *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999); *Ardestani v. INS*, 502 U.S. 129, 133 (1991)).  *Genesis* quoted Section 704's "other adequate remedy" language only in passing; the issue in that case was whether there was final agency action.  39 F.4th at 262.  *Jersey*

*Heights* held simply that in the Title VI context the plaintiff had an adequate remedy because it could seek direct relief from private parties who allegedly violated a prohibition on "discrimination in federally-funded programs." 174 F.3d at 191. And *Ardestani* stands for the unremarkable proposition that a "deportation proceeding [is] not subject to the APA." 502 U.S. at 131. That "does not mean . . . that any agency policy touching immigration escapes judicial review." *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 497 (D. Md. 2019). Courts regularly review agency action under the APA even where an agency's policy relates to immigration. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16–19 (2020) (rejecting government's argument that APA relief was unavailable in challenge to government's rescission of the DACA program).[3]

### D.   Defendants' actions are arbitrary and capricious.

On the merits, the government does not dispute that: (1) under the January 2 memo, immigration judges can require asylum seekers to pay the annual fee with as little as a day's notice, on penalty of denial or abandonment of asylum claims; (2) no reasonable policy would give an asylum seeker such minimal notice to pay a fee while exposing them to potential removal from the United States; or (3) EOIR's policy differs from USCIS's policy of giving applicants at least 30 days' notice. Nor does the government's brief otherwise rehabilitate the memo's arbitrary reasoning.

**1. Failure to provide fair and adequate notice.** It is arbitrary and capricious for EOIR to adopt a policy that purports to require notice but invites individual immigration judges to impose near-immediate deadlines for payment. EOIR's policy has already led at least one judge to set just a two-day notice period, ECF 64-4, which in the real world is akin to providing no meaningful advance notice at all. The January 2 memo offered only two reasons for its failure to impose a

---

[3] *See also, e.g.*, *Ramirez v. ICE*, 310 F. Supp. 3d 7, 24 (D.D.C. 2018) (APA challenge to detention policies); *O.A. v. Trump*, 404 F. Supp. 3d 109, 118 (D.D.C. 2019) (vacating rule despite availability of individual relief for plaintiffs in asylum proceedings); *Centro Legal de la Raza v. EOIR*, 524 F. Supp. 3d 919, 953 (N.D. Cal. 2021) (APA challenge to EOIR policies).

minimum notice period: first, that EOIR lacks authority to set a reasonable minimum deadline to pay the fee, and second, that immigration judges need discretion to tailor the deadline to individual circumstances. ECF 71-1 at 4–6. Neither explanation reflects reasoned decisionmaking.

The government now admits that EOIR "may 'issue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities.'" Opp. 21 (quoting 8 C.F.R. §§ 1003.0(b)(1)(i), (c) (cleaned up)). But the January 2 memo itself rests "most significantly" on the false premise that establishing a minimum notice period would improperly dictate individual immigration judges' substantive adjudications. ECF 71-1 at 4–5. The government cannot defend the defective reasoning in the memo by abandoning that argument in its brief. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). That the January 2 memo rests on a faulty legal premise is alone sufficient to render it arbitrary and capricious. *See, e.g.*, *Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006).

The January 2 memo's policy rationale is independently arbitrary and capricious. The memo asserts that the payment deadlines should be set "on a case-by-case basis" because not all asylum applicants are "similarly situated." ECF 71-1 at 6; *see also* Opp. 20–21. Neither the memo nor the government's brief explains why that forecloses establishing a reasonable *minimum* notice period as a default, nor why case-specific circumstances would ever require EOIR to collect the fee in less than 30 days, let alone within 48 hours. Such deadlines are especially unreasonable in the context of proceedings that routinely last for years due to the agency's delays, and even more so for pro applicants who do not speak English and will need to get the notice translated, who may experience delays in receiving their notice by mail (assuming it is sent to the right address), or who may be detained. Reddy 4th Suppl. Decl. ¶ 12.

EOIR could have addressed these concerns (and any case-specific issues) with an "obvious

and potentially viable alternative[]." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 816 n.41 (D.C. Cir. 1983); *see* Mot. 19. It could have set a minimum notice period but authorized immigration judges to extend it. The government asserts that it is "standard practice" for immigration judges to set whatever deadlines they want. Opp. 20. But in similar contexts, EOIR sets default deadlines for important immigration filings.[4]

The government argues that there are not yet examples of people who have been removed because they missed their fees, Opp. 13, but it is unsurprising that ASAP, less than a month into the asylum fee's current implementation, has not *yet* learned of an example. The asylum seekers who are likely to miss their deadlines are also the ones who are least likely to have realized this (because, for example, their mail was lost, EOIR sent notice to the wrong address, or they were confused by USCIS's conflicting guidance). *See* Reddy 4th Suppl. Decl. ¶¶ 8, 12. It is enough that the predictable consequence of the January 2 memo is that many applicants who would have paid the fee will miss their deadline for lack of adequate notice. *Cf. Chamber of Com. v. FEC*, 69 F.3d 600, 604 (D.C. Cir. 1995) (agency action can be challenged under the APA pre-enforcement).

**2. Inconsistent minimum notice.** The government concedes that "USCIS's individual notices provide a 30-day deadline," while EOIR's do not. Opp. 18–19. The government's argument appears to be that this inconsistency is inconsequential as long as each agency gives *some* notice, however short. *Id.* But notice is not a check-the-box triviality. Only *meaningful* notice ensures that asylum seekers have a real opportunity to comply with the law and protect access to

---

[4] *See, e.g.*, EOIR, Immigration Court Practice Manual, https://www.justice.gov/eoir/reference-materials/ic (last visited Jan. 25, 2026), at 3.1(b)(1)(A) ("[T]he response must be submitted within ten (10) days after the original filing."); *id.* at 3.1(b)(1)(B) ("Responses . . . should be filed within twenty (20) days after the original filing[.]"); *id.* at 3.1(b)(5) ("Appeals must be received . . . no later than 30 calendar days after the Immigration Judge renders an oral decision or provides a written decision[.]"); *id.* at 5.8(c) ("A motion to reconsider must be filed within 30 days[.]").

a critical right.  The government dismisses the significance of USCIS's policy because the Court's prior order stressed the "need for interpretive uniformity" without specifically focusing on the timing discrepancy between the agencies' policies.  Opp. 17–18.  But at that time there was no discrepancy because "EOIR [had] represented" to the Court that it would ensure that no fees "would be due until thirty days after individual notice is mailed."  ECF 54 at 4.

The government also has no response to the practical hardships that will stem from EOIR's and USCIS's inconsistent notice policies.  If USCIS tells applicants that after they receive notice they have 30 days to pay, but then their cases are transferred to EOIR, applicants will reasonably assume that the same policy applies.  Thinking there is a 30-day deadline (at minimum), many applicants will undoubtedly miss a new, shorter deadline imposed at random.  Mot. 14–17.  Indeed, *any* asylum seekers looking online for guidance will see information from USCIS assuring them that they will receive 30 days' notice before the fee is due, giving them a false sense of security that they won't be required to pay on short notice.  It is arbitrary and capricious for the agencies not to synchronize their policies to avoid these problems.  The government responds vaguely that EOIR and USCIS operate in different "context[s]," Opp. 19, but fails to articulate any reason why a requirement of at least 30 days' notice is impracticable at EOIR (but fine at USCIS).

For similar reasons, the Court should not lift the stay of USCIS's Federal Register Notice. The government argues that USCIS's policy is not "arbitrary and capricious standing alone."  Opp. 22.  But that misses the point—the stay of USCIS's Notice remains necessary because the agencies have *still* failed to align on a uniform and reasonable policy ensuring that applicants receive adequate notice and a reasonable opportunity to pay the fee.  Lifting the stay as to USCIS would make the problem worse and contribute to even more confusion.  In any event, there is no evidence that

USCIS has taken steps to cure the other problems ASAP previously identified with USCIS's policy—e.g., that USCIS regularly sent notices to the wrong person or address, and that the USCIS notice does not explain from what date the 30-day notice period runs or the date on which the annual asylum fee is due.  ECF 45-1 ¶¶ 16–17.  Nor has USCIS clarified the consequences of nonpayment, particularly since every Form I-589 includes INA withholding—and, if the box is checked, CAT protection—claims not subject to the fee.

**3. Incorrect treatment of non-asylum claims.**  The January 2 memo is also arbitrary and capricious because it incorporates a template order that authorizes immigration judges to treat non-payment of the asylum fee as abandonment or denial of an entire Form I-589 application, including INA withholding and CAT protection claims.  Mot. 19–21.  The government does not seriously dispute that it would be arbitrary and capricious to instruct immigration judges to use a template order that invites those unlawful decisions.  Opp. 21–22.  Instead, the government denies that the template order suggests immigration judges will dismiss INA withholding and CAT protection claims for non-payment of the asylum fee.  The government points to language in the template order stating who must pay the fee—"all aliens with an asylum application pending for 365 days or more."  *Id.*  But "an asylum application" (Form I-589) automatically includes a claim for INA withholding and may also include claims for CAT protection.  Nor does the government dispute the template order's subsequent and legally incorrect statement that nonpayment can result in abandonment or denial of the entire application.

## II.    The remaining factors weigh decisively in favor of preliminary relief.

### A.    Plaintiff's members face irreparable harms.

If ASAP members' asylum claims are denied for non-payment and members are ordered removed, they risk persecution, wrongful imprisonment, physical harm, torture, and even death.

ECF 29-2 ¶ 64.  The threat of removal is not speculative.  EOIR's template order instructs appli-
cants that their application will be denied if they are unable to pay the fee by the deadline.  ECF
64-4 at 2.  And the January 2 memo acknowledges that denial is "frequently accompanied by an
order of removal."  ECF 71-1 at 6.

This Court has already recognized that "[r]emoval constitutes irreparable harm" for asylum
applicants.  ECF 54 at 16.  *Nken v. Holder*, 556 U.S. 418 (2009), is not to the contrary.  *Nken*'s
statement that "removal . . . is not categorically irreparable," *id.* at 435, "stands only for the prop-
osition that 'deportation *pursuant to a valid removal order* is' not necessarily irreparable harm"
where an individual can be returned if she prevails in later legal proceedings.  *L.G.M.L. v. Noem*,
800 F. Supp. 3d 100, 130 (D.D.C. 2025).  And *Nken* involved a removal order entered *after* the
adjudication of an asylum application on the *merits*, not denial of asylum and removal *absent*
determination of whether the individual has a meritorious asylum claim.  556 U.S. at 422–23.

The government contends that denial of asylum is not irreparable because applicants can
appeal a removal order to the BIA or move for reconsideration.  Opp. 25.  But courts do not require
plaintiffs seeking to challenge an unlawful mandate to either comply with it or face an enforcement
action and the related consequences.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29
(2007).  Nor is appeal to the BIA an adequate avenue to prevent irreparable harm here.  *Supra* at
4–6; *see also O.A.*, 404 F. Supp. 3d at 134.  Seeking appeal or reconsideration may be practically
impossible for those who struggle to pay the annual asylum fee, as the process is complex, and
minimum fees are over $1,000.[5]  Even if some applicants were able to prevail on an appeal or a

---

[5] *See* DOJ, EOIR, *Types of Appeals, Motions, and Required Fees*, https://www.jus-
tice.gov/eoir/types-appeals-motions-and-required-fees.  Although there is a process to apply for a
fee waiver alongside a motion to reopen or appeal, the BIA has recently taken steps to limit access.
*See Matter of Garcia Martinez*, 29 I. & N. Dec. 169, 171 (B.I.A. 2025) (non-detained respondents

motion to reconsider, delayed adjudication of their asylum claims is itself an irreparable harm, particularly given the risk of detention, *see Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018), deportation, *see* 8 U.S.C. § 1252(b)(3)(B); 8 CFR § 1003.23(b)(1)(v), and the concomitant delay in potential family reunification and U.S. citizenship after winning asylum.

Among those ASAP members who can ultimately come up with $100 on as little as two days' notice, many will suffer significant, irreparable economic hardship. *See* ECF 29-2 ¶ 61; Reddy 4th Suppl. Decl. ¶ 7. The unpredictability and short notice periods exacerbate the burden by making saving and planning for payment more difficult. Many applicants will have to forego basic necessities, including food and clothing for their families. *See* ECF 29-2 ¶ 61; ECF 73-4 ¶ 13. Asylum seekers have already had to choose between paying asylum fees or paying for phone service—which is essential for applicants who must complete immigration check-ins by phone. *See* Bah Decl. ¶ 16. Severe personal economic hardships like this can be irreparable. *See, e.g.*, *Yick v. Bank of Am., N.A.*, 539 F. Supp. 3d 1023, 1025–26 (N.D. Cal. 2021); *Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040, 1045 (C.D. Cal. 2011).[6]

### B.    The balance of the equities and public interest favor lawful implementation of OBBBA and full and fair adjudication of asylum claims.

The public has no interest in the agencies' unlawful implementation of a statute. *See City of Columbus*, 796 F. Supp. 3d at 174. That is particularly true here, where the agencies' implementation interferes with the United States' longstanding commitment—embodied in more than

---

with private counsel are "presumed to have the ability to pay any requisite filing fee"). And some indigent asylum seekers will be forced to apply for INA withholding and CAT protections only because they cannot afford the $100 asylum fee. Bah Decl. ¶¶ 18–19; McShiras Decl. ¶¶ 15–17.
[6] The government's gesture at post-litigation "refunds" makes little sense respecting ASAP's arguments regarding inadequate notice. Still, a thicket of logistical and doctrinal challenges (including those the government has recently pressed in other litigation) belie the government's suggestion that recoupment is plausible. *See City of Columbus v. Kennedy*, 796 F. Supp. 3d 123, 172 (D. Md. 2025), *appeal pending*, No. 25-2012 (4th Cir.); *see also* ECF 45 at 16 (responding to government's prior "wiggle words" regarding refunds).

75 years of federal law—to provide asylum to those who need this country's protection.  The agencies' failure to lawfully implement the annual asylum fee threatens Congress's mandate of full and fair adjudication of asylum claims and the "public interest in preventing [individuals] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436.  That far outweighs any minimal impact to the agencies' "budgetary concerns," Opp. 26–27, from temporarily delaying collection of the fees.[7]

### III.    This Court has authority to enter preliminary relief for ASAP's members.

Defendants argue that the Court cannot "enjoin[] the enforcement of a federal statute." Opp. 28.  To be clear, ASAP does *not* ask the Court to enjoin Section 1808 or any other federal statute.  ASAP instead seeks: (1) a stay of EOIR's January 2 memo (including the template order EOIR is using); (2) a continuation of the existing stay against USCIS's Federal Register Notice; and (3) *preliminary* injunctive relief, limited to ASAP's members, preventing the Justice Department Defendants from evading this Court's jurisdiction by continuing their arbitrary implementation of Section 1808 while this case is litigated.  Mot. 28–29.

That relief does not prohibit either agency from carrying out Congress's directives in a manner that is consistent with their obligations under Section 1808 and the APA.  Congress empowered federal courts to grant broad relief against unlawful agency action.  *See* 5 U.S.C. § 705 (authorizing federal courts to "issue all *necessary and appropriate process* to postpone the effective date of an agency action *or to preserve status or rights*" (emphases added)); *cf. Trump v. IRAP*, 582 U.S. 571, 579 (2017) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the

---

[7] USCIS's ongoing pause on all asylum adjudications undermines the government's argument that the annual fee helps alleviate backlogs. *Compare* ECF 72 ¶¶ 45, 62, *with* Opp. 9–10.

legal issues it presents.").[8]  Courts regularly stay, vacate, and enjoin agency action taken under a statutory mandate when agencies implement the statute in an arbitrary way.  *See, e.g.*, *NFIB v. DOL*, 595 U.S. 109, 113–14 (2022) (staying vaccine mandate promulgated under statutory directive to issue mandatory occupational safety standards); *West Virginia v. EPA*, 577 U.S. 1126 (2016) (staying EPA action implementing statutory mandate under the Clean Air Act); *Make the Rd. N.Y. v. Noem*, 2025 WL 3563313, at *31–32, *37 (D.C. Cir. Nov. 22, 2025) (denying request to stay district court's order postponing agency action regarding removal procedures).[9]

In addition to a stay, preliminary injunctive relief is necessary here because of EOIR's preemptive instruction telling immigration judges to disregard any decision from this Court staying the January 2 memo.  ECF 71-1 at 7 n.12.  Absent that relief, the Justice Department Defendants are likely to continue implementing the policy announced in the January 2 memo, and force ASAP (and the Court) to play whack-a-mole with emergency motions every time the agency issues a new directive to immigration judges.  *See Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 460 (6th Cir. 2004) (courts "may craft declaratory and injunctive relief designed to preclude a federal agency from acting in contravention of its statutory and regulatory authority" and "require an agency to modify its current or future practices in order to account for past violations").

Defendants likewise misunderstand the nature of injunctive relief available in a case like this one.  ASAP has standing to challenge the policies at issue on behalf of *all* of its affected

---

[8] The government points to this Court's order denying ASAP's prior request to clarify that the existing stay applies to the January 2 memo to support its argument that ASAP cannot request equitable relief.  Opp. 28.  But this Court held that it could not stay EOIR's new policy because "Plaintiff's complaint did not challenge" the January 2 memo, ECF 70, a problem ASAP cured in an amended complaint, ECF 72 ¶¶ 135–42.

[9] Defendants cite no cases in the APA context to the contrary.  *See* Opp 20–21 (first citing *Family Plan. Ass'n of Me. v. HHS*, 2025 WL 2439209, at *8 (D. Me. Aug. 25, 2025) (challenge under Fifth Amendment); and then citing *TBS v. FCC*, 507 U.S. 1301, 1301 (1993) (constitutional challenge to the Cable Television Consumer Protection and Competition Act)).

members. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "Once a plaintiff demonstrates to a court subject-matter jurisdiction and standing to challenge a qualifying final agency action, it may seek and obtain *any relief* from the court other than monetary damages." *Genesis*, 39 F.4th at 262. ASAP need not identify its members by name to seek that relief. *See Make the Rd. N.Y.*, 2025 WL 3563313, at *33–36 (rejecting argument that a court must confine a Section 705 stay to "members [a plaintiff] identifies to the government"); *Va. Coal. for Immigr. Rts. v. Beals*, 2025 WL 2345822, at *7–8 (E.D. Va. Aug. 12, 2025) (finding associational standing where harmed members were anonymous). Such party-specific equitable relief is readily administrable. Reddy 4th Suppl. Decl. ¶¶ 17–18 (describing process by which ASAP members proved membership to access injunctive remedy entered by a Court in this district).

## IV.    The Court should not require a bond or enter a stay pending appeal.

Finally, Defendants again seek a bond under Rule 65(c) and a stay pending appeal. Opp. 29–30. The Court has already rejected both requests in earlier stages of this case. ECF 54 at 18–19. Rule 65(c)'s bond requirement does not apply to relief under 5 U.S.C. § 705. *Id.* at 19. If the Court concludes a bond is necessary, the Court should impose only a nominal bond because the "risk of harms" to the government is slight. *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 2022 WL 326473, at *10 (D. Md. Feb. 3, 2022) (Gallagher, J.); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 126 (D. Md. 2025) (collecting cases setting only a nominal bond when enjoining agency action). The Court should also reject the government's cursory requests for a stay, ECF 81 at 30, for which Defendants have again "offered no argument." ECF 54 at 19.

## Conclusion

ASAP respectfully requests that the Court grant ASAP's motion for preliminary relief and deny the government's motion to lift the stay, as detailed in ASAP's Proposed Order (ECF 73-2).

DATED:  January 26, 2026

Respectfully submitted,

*/s/ Andrew G. Barron*

Matt Gregory*
Susan M. Pelletier*
Eric Brooks*
Andrew G. Barron (D. Md. Bar 30311)
T. Hunter Mason*
Rachel E. Schwab (D. Md. Bar 31646)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:     (202) 955-8500
Facsimile:     (202) 831-6088
mgregory@gibsondunn.com
spelletier@gibsondunn.com
ebrooks2@gibsondunn.com
abarron@gibsondunn.com
hmason@gibsondunn.com
rschwab@gibsondunn.com

Conchita Cruz*
Jessica Hanson (D. Md. Bar 31903)
Leidy Perez*
Marcela X. Johnson*
Juan E. Bedoya*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone:     (646) 647-6779
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org
juan.bedoya@asaptogether.org

*Counsel for Plaintiff*

*Admitted pro hac vice*

16