IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ASYLUM SEEKER ADVOCACY PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-03299-SAG |

**Plaintiff's Response to Defendants' Notices**

Plaintiff Asylum Seeker Advocacy Project submits this Response to Defendants' Notices filed on January 29, 2026.  ECF 85, ECF 86, ECF 87.

***Response to ECF 85 (EOIR)***

Defendants' first supplemental declaration from Director Margolin simply notes that the EOIR template order was made available to immigration judges on December 8, 2025.  ECF 85-1 at ¶ 4.  That is immaterial to the Court's resolution of the pending motions.

Nothing in ASAP's motion for preliminary relief turns on whether EOIR created the template order on December 8 or January 2.  As ASAP has explained, until January 2, immigration judges lacked the authority to direct anyone to pay the asylum fee, because EOIR's prior policy requiring the fee had been stayed and EOIR had not yet adopted a new policy requiring the fee.  The government still does not dispute that no immigration judge *used* the template order until after EOIR's January 2 memo expressly directed immigration judges to begin imposing the annual asylum fee and referred them to the template order.  The policies ASAP challenges here arise from EOIR's unlawful implementation and enforcement of the fee (including the template order's unlawful instruction to immigration judges that they can deny requests for CAT protection and INA withholding for nonpayment of the annual asylum fee), and do not turn on the date on which a draft template order first existed inside the agency.

Regardless, even if EOIR first instructed immigration judges that they can dismiss requests for INA withholding and CAT protection on December 8 and merely waited until January 2 to announce that new policy to the public, that timing likewise makes no difference.  ASAP expressly challenges EOIR's new policy with respect to INA withholding and CAT protection as unlawful in Count 5 of the amended complaint.  ECF 72 ¶¶ 154–60; *see also id.* ¶¶ 48–54, 56, 72, 95, 115–16, 120–25 (challenging EOIR's policy authorizing the imposition of asylum fees on applications

for INA withholding and CAT protection). Whether the agency finalized the policy weeks earlier or when it publicly announced it in the January 2 memo instructing immigration judges to begin imposing the fee again and to use the template order, the challenged agency action is final. Thus, either way the policy is subject to this Court's review under the Administrative Procedure Act and the Court can grant preliminary relief under Section 705.

***Response to ECF 87 (EOIR)***

EOIR's second notice continues to refuse to state a clear position on a basic and fundamental question that goes directly to the agency's implementation of the annual asylum fee— does EOIR expect applicants for CAT protection and INA withholding to pay the fee, on pain of dismissal of their applications, despite the plain language of Section 1808 limiting the fee to applications for asylum?

As ASAP has previously explained, there is no statutory basis to deny an applicant's INA-withholding or CAT-protection claims for failure to pay the annual asylum fee because INA withholding and CAT protections are distinct forms of relief. ECF 73-1 ("ASAP Mot.") 19–21. An applicant seeking INA withholding or CAT protection certainly does not owe the fee simply because the agencies require applicants to use a single form (I-589) to seek all three forms of relief. The fee is called the "annual *asylum* fee," and as the name indicates, it is owed only by individuals whose "application for *asylum* remains pending." 8 U.S.C. § 1808(a) (emphases added). INA withholding and CAT protection are distinct remedies, addressed by different sections of the U.S. Code, that "differ[]" from asylum "in important ways." *Mejia v. Sessions*, 866 F.3d 573, 586 n.8 (4th Cir. 2017); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987) ("Asylum and

withholding of deportation are two distinct forms of relief."); ECF 72, First Am. Compl. ¶¶ 48–54, 56.[1]

The government has inexplicably failed even to attempt to argue that the template order is consistent with Section 1808—or the government's own prior interpretation of the statute. In October, the Court asked the government for "EOIR's position with respect to whether a failure to pay the asylum fee would render a person ineligible for withholding removal or CAT relief." October 28 Hr'g Tr. 41:10–13. The government's counsel responded that "the nonpayment of the annual asylum fee would not impact someone's application for the[] other avenues" of withholding of removal or CAT relief, and that "the process for CAT or these other avenues has not changed. The application remains the same, the process remains the same . . . The AAF does not impact that process." *Id.* at 41:14–25, 42:1–3.

When ASAP argued this time around that the template order is inconsistent with the statute and arbitrary and capricious because it suggests that the fee *does* apply to CAT protection and INA withholding, ASAP Mot. 19–21, the government failed to mount a statutory defense or otherwise attempt to walk back its prior admission that Section 1808 means what it says and applies only to asylum claims. Having been given ample opportunity in its briefs, at argument, and now in a supplemental filing to make a statutory argument in defense of the template order, the government has waived any response on that issue multiple times over. *See, e.g.*, *Grayson O Co. v. Agadir Int'l*

---

[1] Further driving this point home, Section 1802(a) provides that the *initial* asylum fee applies to "an application for asylum under [8 U.S.C.] section 1158," which concerns only asylum and makes no reference to withholding or CAT protection. *See United States v. Davis*, 588 U.S. 445, 457 (2019) ("[A]bsent evidence to the contrary, we presume the [statutory] term is being used consistently.").

4

*LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief.").[2]

In sum, it is arbitrary and capricious and otherwise unlawful for EOIR to give its immigration judges—and asylum applicants—patently erroneous legal instructions. *See* 5 U.S.C. § 706(2). And at best, EOIR is being intentionally ambiguous on an issue that is fundamental to its statutory mandate to require an annual *asylum* fee. That too is arbitrary and capricious for the reasons ASAP has previously explained. ASAP Mot. 19–21. Whether EOIR's instructions are legally erroneous or intentionally ambiguous, they will have severe consequences for the applicants who will be ordered removed and returned to their home country to suffer persecution for nonpayment of the annual asylum fee—instead of having their claims for INA withholding and CAT relief considered on the merits.

\* \* \*

For these reasons and those in ASAP's prior briefs and argument, the Court should enter preliminary relief barring the Justice Department Defendants (i.e., the Attorney General, Director Margolin, and EOIR) from implementing the policy set out in the January 2 memo and the template order.

---

[2] The government implies that EOIR is somehow *unable* to take a position on the proper interpretation of Section 1808. That makes little sense given that the July 17 and January 2 memos, template order, and EOIR's prior filings and argument in this case take multiple positions on the meaning of Section 1808. And in practically the same breath, the government admits that the Attorney General has authority to make a "decision on this question," ECF 87 at 2–3, without acknowledging that the Attorney General is a named defendant in this case. Moreover, EOIR is represented in this case by the Department of Justice, which is obviously capable of taking a position on a question of statutory interpretation. *See* 28 U.S.C. § 516 ("the conduct of litigation in which the United States, an agency, or officer thereof is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General").

***Response to ECF 86 (USCIS)***

USCIS's notice and declaration include a new template notice form that cures one of the problems ASAP previously identified in October—that USCIS was failing to inform applicants of their deadline to pay the fee. ASAP agrees with the government that the new template solves this particular problem and appreciates USCIS's efforts to provide clarity to asylum applicants as to when their fees are due.

Still, the Court should not lift the stay of USCIS's implementation of the annual asylum fee. USCIS's notice provides no indication that the agency has cured another systemic problem with its earlier efforts to provide notice to asylum applicants—namely, USCIS was systematically sending the notices to the wrong address or attorney. *See* ECF 45-1 ¶ 17; Oct. 28 Hr'g Tr. 12:11–20. As ASAP explained in October, USCIS was mailing the notices to an applicant's *original* attorney who filed an application at the address included with the *initial* I-589 application, even where the applicant had retained a new attorney (or the same attorney had changed addresses), and even where the attorneys had filed the applicable forms with the agency informing them of their new contact information. This problem appears to have been specific to the annual asylum fee, as many of these same attorneys received other notifications from USCIS at their correct addresses.

Further, ASAP members reported receiving no notice at all from USCIS, despite USCIS's online case status tool or USCIS Questionnaire confirming that their annual asylum fee was due. *See* ECF 45-1 ¶¶ 18-21. It is unclear whether notice was even sent to these members, and, if so, whether notice was sent to the address included in their initial I-589 application or their most updated address on file. Unlike many attorneys who use forwarding services when their business

6

address changes, individual asylum applicants are less likely to realize (and report to ASAP) that USCIS has sent mail to a prior address.[3]

Lifting the stay as to USCIS will also create significant (and unnecessary) confusion given EOIR's stubborn refusal to harmonize its implementation of the annual asylum fee with USCIS's policy. ASAP Mot. 27–28; ECF 82 at 14–15. And since USCIS has paused its consideration of asylum applications, there is no good reason to lift the stay prior to the agencies resolving these issues.[4]

\* \* \*

For these reasons and those in ASAP's prior briefing and argument, the Court should deny the government's motion to lift the stay as to USCIS.

DATED: January 30, 2026

Respectfully submitted,

/s/ Andrew G. Barron

Matt Gregory\*
Susan M. Pelletier\*
Eric Brooks\*
Andrew G. Barron (D. Md. Bar 30311)
T. Hunter Mason\*
Rachel E. Schwab (D. Md. Bar 31646)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:   (202) 955-8500
Facsimile:    (202) 831-6088
mgregory@gibsondunn.com
spelletier@gibsondunn.com
ebrooks2@gibsondunn.com
abarron@gibsondunn.com

---

[3] ASAP remains willing and eager to work with USCIS to help the agency resolve these problems before it begins re-imposing the annual asylum fee.

[4] https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf

hmason@gibsondunn.com
rschwab@gibsondunn.com

Conchita Cruz*
Jessica Hanson (D. Md. Bar 31903)
Leidy Perez*
Marcela X. Johnson*
Juan E. Bedoya*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003-1502
Telephone:     (646) 647-6779
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org
juan.bedoya@asaptogether.org

*Counsel for Plaintiff*

*Admitted *pro hac vice*