IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ASYLUM SEEKER ADVOCACY PROJECT** | |
| Plaintiff, | |
| v. | Civil Case No.: SAG-25-03299 |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Asylum Seeker Advocacy Project, a membership organization of asylum seekers, brings this action against Defendants United States Citizenship and Immigration Services ("USCIS"), Joseph B. Edlow in his official capacity as Director of USCIS, Executive Office for Immigration Review ("EOIR"), Daren Margolin in his official capacity as Director of EOIR, and Pamela Bondi in her official capacity as Attorney General of the United States (collectively, "Defendants") for claims regarding the implementation of the new annual asylum fee ("AAF"). ECF 72. On October 30, 2025, this Court issued a Memorandum Opinion and Order staying a notice in the Federal Register issued by USCIS ("Federal Register Notice") and a policy memorandum issued by EOIR ("July 17 Memo"), both of which implemented the AAF at the respective agencies. ECF 54, 55.

On January 2, 2026, EOIR issued a new policy memorandum that rescinded the July 17 Memo and again directed implementation of the AAF ("January 2 Memo"). ECF 71-1. Defendants have now filed a motion to lift this Court's previously issued stay, ECF 71, and Plaintiff has filed an amended complaint challenging the January 2 Memo and a motion for a temporary restraining

order, a preliminary injunction, or a stay pursuant to 5 U.S.C. § 705 regarding the January 2 Memo, ECF 72, 73. On January 28, 2026, this Court held a hearing on both motions. This Court has reviewed all of the filings. ECF 71, 72, 73, 81, 82, 83, 85, 86, 87, 89, 91. For the reasons explained below, this Court will grant Defendants' motion and deny Plaintiff's motion.

## I.   BACKGROUND

On July 4, 2025, the One Big Beautiful Bill Act (the "Act") became law. ECF 72 at ¶ 1. One section of the Act created a new requirement for asylum applicants codified at 8 U.S.C. § 1808, which provides, in pertinent part:

> In addition to any other fee authorized by law, for each calendar year that an alien's application for asylum remains pending, the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a fee, equal to the amount specified in subsection (b), by such alien.

8 U.S.C. § 1808(a). Section 1808(b)(1), in turn, provides that "[f]or fiscal year 2025, the amount specified in this section shall be the greater of--(A) $100; or (B) such amount as the Secretary of Homeland Security may establish, by rule." 8 U.S.C. § 1808(b)(1). Section 1808(b)(2) provides:

> During fiscal year 2026, and during each subsequent fiscal year, the amount specified in this section shall be equal to the sum of—
>
> (A) the amount of the fee required under this subsection for the most recently concluded fiscal year; and
>
> (B) the product resulting from the multiplication of the amount referred to in subparagraph (A) by the percentage (if any) by which the Consumer Price Index for All Urban Consumers for the month of July preceding the date on which such adjustment takes effect exceeds the Consumer Price Index for All Urban Consumers for the same month of the preceding calendar year, rounded down to the nearest dollar.

8 U.S.C. § 1808(b)(2).

The Act also created a new initial asylum fee codified at 8 U.S.C. § 1802, which requires asylum applicants to pay a fee when they file their application. 8 U.S.C. § 1802.

2

A person currently in removal proceedings may apply for asylum defensively before EOIR. ECF 72 at ¶¶ 56–57. A person not currently in removal proceedings, however, applies for asylum affirmatively with USCIS. *Id.* Although a person's asylum application is pending before only one agency at a time, that application may be transferred between the two agencies under certain circumstances. *Id.* at ¶ 58.

In July, 2025, USCIS issued its Federal Register Notice, and EOIR issued its July 17 Memo, both of which implemented the AAF at the respective agencies. *Id.* at ¶¶ 74–75. As pertinent here, the Federal Register Notice provides that asylum applicants whose applications had been pending since the beginning of fiscal year ("FY") 2025 on October 1, 2024 or earlier and remained pending at the end of FY 2025 on September 30, 2025 would have to pay the AAF amount specified in the Act for FY 2025. USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 Fed. Reg. 34511, 34515 (July 22, 2025). USCIS does not require that applicants pay the AAF for the first time until they have received individual notice of at least thirty days before the payment due date. ECF 72 at ¶ 77.

On October 30, 2025, this Court stayed the Federal Register Notice and July 17 Memo as arbitrary and capricious agency action pursuant to 5 U.S.C. § 705. ECF 54, 55. This Court reasoned that USCIS and EOIR had each failed to consider the position of the other agency in enacting their respective policies, a failure that resulted in material inconsistencies. ECF 54 at 14–15. For the remainder of 2025, it appears that neither USCIS nor EOIR required payment of the AAF. ECF 72 ¶ 10.

On January 2, 2026, EOIR issued the January 2 Memo, a new policy memorandum that rescinded the July 17 Memo and directed implementation of the AAF. ECF 71-1. EOIR then began requiring applicants to pay the fee pursuant to the January 2 Memo. ECF 72 ¶ 102.

The January 2 Memo states that EOIR will not require payment of the AAF for asylum applicants whose applications had been pending for one year or more between July 5, 2025 and September 30, 2025 but no longer remained pending on October 1, 2025. ECF 71-1 at 2. It also provides that even once an applicant's AAF becomes due (when his application has been pending for at least one year), EOIR will not require payment until an immigration judge has set a payment deadline and that deadline has passed. *Id.* at 4. The Memo states that no officer at EOIR, including the Director, may direct an immigration judge to adjudicate a particular case in a particular way, including which deadlines to set. *Id.* at 3. Instead, the Memo directs immigration judges to set deadlines for payment of the AAF according to each immigration judge's discretion in each case. *Id.* at 4. It also "encourage[s]" immigrations judges to use a template order to notify applicants of the payment deadline. *Id.*

That template order references Form I-589, which applicants use to apply for asylum, withholding of removal, and Convention Against Torture ("CAT") protection, and informs applicants that failure to pay the AAF by the deadline provided in the order "may result in a finding that you have abandoned or withdrawn your application and may result in its denial or dismissal." ECF 72 ¶ 14; ECF 73-10. EOIR first made the template order available to its immigration judges on December 8, 2025. ECF 85-1 ¶ 4. It appears that EOIR's immigration judges are now systematically using the template order to set payment deadlines, and immigration judges in at least three cases involving ASAP members have set payment deadlines of just two days after the date of the order. ECF 82-1 ¶ 5; 73-8 ¶¶ 6–7; ECF 83-1 ¶ 4.

## II. LEGAL STANDARDS

A temporary restraining order or a preliminary injunction is warranted when the movant demonstrates four elements: (1) that the movant is likely to succeed on the merits, (2) that the

movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). The movant must establish all four elements to prevail. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). These same elements also govern issuance of a stay pursuant to 5 U.S.C. § 705. *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 935, 950 (D. Md. 2020).

A preliminary injunction affords "an extraordinary and drastic remedy" prior to trial. *See Munaf v. Green*, 553 U.S. 674, 689–90 (2008); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating that preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances") (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). Because preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.* (quoting *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)).

### III. DISCUSSION

#### A. Standing

As an initial matter, Defendants again contend that Plaintiff lacks standing to bring this action. They first re-raise the associational standing arguments that they made in response to Plaintiff's earlier motion for preliminary relief. Defendants acknowledge that those arguments

remain the same notwithstanding Plaintiff's amended complaint, so this Court will reject them for the reasons described in its October 30 Opinion. *See* ECF 54 at 7–8.

Defendants also raise a traditional standing argument. Standing requires a plaintiff to show (1) injury in fact, (2) that is caused by the conduct of the defendant, and (3) that is likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants contend that the January 2 Memo lacks legal effect such that Plaintiff's members have suffered no injury caused by it or that could be redressed by this Court's enjoining or staying of it. Plaintiff responds that the January 2 Memo constitutes final agency action, which requires, as pertinent here, that the agency action is "one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). This Court agrees with Plaintiff that even though Defendants do not phrase this argument in terms of final agency action, case law interpreting its legal consequences requirement is instructive.

A court must conduct a practical, rather than formalistic, review of an agency action to determine whether it is final. *See Fort Sumter Tours, Inc. v. Andrus*, 440 F. Supp. 914, 918 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977) ("[I]t is not the label affixed to the action of the agency, but rather a realistic appraisal of the consequences of the action which must govern."). Guidance setting "only internal policies" for the processing of cases that is not "for the benefit of any individual applicant or intended to have the force of law" is not subject to review. *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025). Guidance giving notice of how an agency has interpreted a relevant statute has legal effect, however, even if that effect is not felt until the interpretation is applied in an individual case. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S.

6

590, 599–600 (2016). In determining whether an action constitutes final agency action, courts consider the way in which the agency itself treats the action. *Sw. Airlines Co. v. DOT*, 832 F.3d 270, 275 (D.C. Cir. 2016). Furthermore, "boilerplate" language disclaiming legal effect cannot overcome directive language elsewhere in the document indicating legal effect. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000).

    This Court concludes that the January 2 Memo has legal effect. It expressly disclaims entitlement to payment of AAFs for applications pending for at least one year between July 5, 2025 and September 30, 2025 but that do not remain pending on October 1, 2025. ECF 71-1 at 4 ("EOIR . . . will waive the AAF for any asylum application that was pending for one year or more between July 5, 2025, and September 30, 2025, and was administratively final . . . as of September 30, 2025."). The Memo further states that EOIR will not require payment of the AAF, even once it becomes due upon an application remaining pending for more than one year, until an immigration judge issues an order setting a deadline for payment and that deadline has passed. *Id.* Thus, the January 2 Memo functions not merely as setting internal policies but rather expressly benefits certain applicants by dictating EOIR's position that it will not require payment for certain applications or for certain periods, even after the AAF becomes due. The boilerplate language disclaiming legal effect at the end of the Memo cannot overcome this directive language. EOIR's own treatment of the Memo is particularly revealing of the document's legal effect. Between the issuance of this Court's order staying the July 17 Memo and the issuance of the January 2 Memo, EOIR did not require AAF payments. Immigration judges began requiring AAF payments again, however, as soon as EOIR issued the January 2 Memo. Furthermore, immigration judges have imposed the fee in accordance with the January 2 Memo and appear to be systematically doing so using the template order. Thus, the January 2 Memo had legal effect.

7

Defendants counter that even if the January 2 Memo constitutes final agency action, it is not reviewable under the Administrative Procedure Act ("APA") because other adequate remedies are available, namely, appeal of individual denials of asylum applications for failure to pay the AAF. The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A remedy is not adequate, however, if accessing it would "carry the risk of 'serious criminal and civil penalties.'" *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967). Appealing individual orders denying asylum applications for failure to pay the AAF does not constitute an adequate alternative remedy because accessing it, through failure to pay the AAF, would require applicants to risk the serious penalty of removal. Accordingly, this Court concludes that Plaintiff may challenge the January 2 Memo pursuant to this APA action and will now address the merits of Plaintiff's motion for preliminary relief.

### B. Plaintiff's Motion for Preliminary Relief

#### 1) Retroactivity

Plaintiff alleges that the January 2 Memo impermissibly applies § 1808 retroactively by (1) applying it to asylum applicants who filed their applications when no AAF existed and (2) counting time before July 4, 2025 to calculate the length of time an application has been pending. This Court rejected the retroactivity arguments underlying these claims in its October 30 Opinion, and Plaintiff acknowledges that it re-raises them solely to preserve them for appeal. *See* ECF 73-1 at 21. Accordingly, this Court will deny the motion for preliminary relief as to Plaintiff's retroactivity claims for the reasons described in its October 30 Opinion. *See* ECF 54 at 8–12.

#### 2) Arbitrary and Capricious Agency Action

Plaintiff also alleges that the January 2 Memo constitutes arbitrary and capricious agency action. The APA requires a court to "hold unlawful and set aside agency action, findings, and

8

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Fourth Circuit has delineated the scope of this Court's arbitrary and capricious review:

> In determining whether agency action was arbitrary or capricious, the court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made.

*Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019) (quoting *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)).

Agency action is arbitrary and capricious when it has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Additionally, "an order may not stand if the agency has misconceived the law," *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943), so an agency action is arbitrary and capricious if the agency bases its decision on a legally erroneous rationale, *Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006). *See also Prill v. NLRB*, 755 F.2d 941, 947 (D.C. Cir. 1985) ("An agency decision cannot be sustained . . . where it is based not on the agency's own judgment but on an erroneous view of the law."). A court must conduct an arbitrary and capricious review based on the facts before the decisionmaker at the time the decision was made. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Plaintiff argues that the January 2 Memo is arbitrary and capricious because it (1) continues to conflict with USCIS's Federal Register Notice in terms of the notice period before which applicants must pay the AAF, (2) fails to ensure adequate notice before requiring payment of the AAF, and (3) suggests that failure to pay the AAF risks denial of withholding of removal and CAT

protection because the template order that it encourages immigration judges to use references the form used to apply for those types of relief in addition to asylum. This Court will address each contention in turn.

### a) Inconsistency with USCIS's Policy

This Court concludes that the inconsistency in notice periods between EOIR's and USCIS's policies does not render the January 2 Memo arbitrary and capricious. In its October 30 Opinion, this Court concluded that EOIR's and USCIS's then-effective policies were arbitrary and capricious for failing to consider an important aspect of the problem, namely, that they were inconsistent in material ways. ECF 54 at 14–15. Specifically, this Court noted that USCIS's policy did not require payment until individual notice had issued, whereas EOIR's policy could have been interpreted, and immigration judges in several cases had interpreted it, to not require notice. *Id.* at 15. Thus, an individual with an application pending before USCIS who had not yet paid the AAF because he had not yet received notice could have had his application transferred to EOIR and then rejected for failure to have already paid. *Id.* Because of this inconsistency, an individual who had complied with one agency's policy could have been immediately in violation of the other agency's policy without any opportunity to comply with that policy.

The present inconsistency in notice periods does not create the same problem. An individual whose application is transferred from USCIS to EOIR now must receive individual notice before he must pay the AAF to EOIR, so no individual who had complied with USCIS's policy would be immediately in violation of EOIR's policy upon transfer. This Court agrees with Plaintiff that an individual whose application is transferred and then given two-days' notice to pay may lack a meaningful opportunity to comply with EOIR's policy, but that harm stems from the decisions made by individual immigration judges to impose near-immediate deadlines, rather than

10

the inconsistency between the two policies. Applicants would face the same risk if both agencies adopted a consistent two-day notice period. Furthermore, although Plaintiff argues that inconsistent notice periods will lead to confusion about when applicants transferred to EOIR must pay, this Court perceives no greater risk of confusion caused by inconsistent deadlines than by consistent ones. For example, it is not clear that an applicant given 30-days' notice by USCIS to pay by May 1, whose application is transferred to EOIR on April 15, would be less confused about the payment deadline if EOIR issued a 30-day notice to pay by May 15 than if EOIR issued a 15-day notice to pay by May 1.

For these reasons, this Court cannot say that EOIR acted arbitrarily and capriciously in declining to adopt a 30-day-notice period consistent with USCIS's policy.

    **b) Failure to Ensure Adequate Notice**

Plaintiff further argues that the January 2 Memo is arbitrary and capricious independent of USCIS's policy because it fails to ensure that applicants receive adequate notice before they must pay the AAF. According to Plaintiff, the Memo grounds its decision to allow immigration judges to set deadlines in individual cases on an erroneous view of the law and failed to consider the obvious alternative of setting a minimum notice period, while permitting immigration judges to extend that period.

The January 2 Memo states that EOIR lacks authority to set a uniform notice period for every applicant because its immigration judges have "decisional independence." ECF 71-1 at 3–5. The Memo reasons that EOIR's regulations prohibit the agency from dictating deadlines in individual cases and the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), requires EOIR to follow its own regulations. *Id.*

11

The Memo misconstrues the law in reaching this conclusion. Although EOIR's regulations require immigration judges to "exercise their independent judgment and discretion," they must do so consistently with "regulations." 8 C.F.R. § 1003.10(b). The Memo emphasizes 8 C.F.R. § 1003.0(c), which provides, in pertinent part, that "the Director shall have no authority to adjudicate cases arising under the Act or regulations or to direct the result of an adjudication assigned to the Board, an immigration judge, the Chief Administrative Hearing Officer, or an Administrative Law Judge." But the Memo fails to acknowledge that that same subsection continues: "Nothing in this part, however, shall be construed to limit the authority of the Director under paragraph (a) or (b) of this section." *Id.* Subsection (b), in turn, provides, in pertinent part, "The Director shall have the authority to: (i) Issue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities . . . ." 8 C.F.R. § 1003.10(b)(1)(i).

These regulations make clear that immigration judges do not exercise discretion wholly unconstrained by the Director. Although the Director lacks authority to "direct the result of an adjudication," setting a procedural rule to govern all cases, such as a uniform notice period for payment of the AAF, does not direct the result, or ultimate disposition, of any particular adjudication. Furthermore, this Court perceives setting a uniform procedural rule for implementation of a new statutory requirement as exactly the type of action expressly reserved to the Director under subsection (b)(1)(i), authorizing him to "[i]ssue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities." Finally, Defendants have offered no explanation as to why the Director lacks authority to set a uniform notice period for payment of the AAF but may, as he did in the January 2 Memo, dictate that applicants with applications no longer pending as of October 1, 2025

need not pay the AAF or that no applicant need pay the AAF even once it becomes due until an immigration judge sets a deadline and that deadline has passed.

Accordingly, this Court concludes that EOIR misconstrued the law in deciding it lacked authority to set a uniform notice period. That conclusion does not end this Court's arbitrary and capricious inquiry, however, because the January 2 Memo makes clear that the decision to decline to prescribe a uniform notice period did not depend on EOIR's erroneous legal determination. The Memo provides:

> In short, even if applicable regulations and the *Accardi* doctrine allowed EOIR to dictate to Immigration Judges how to rule in particular cases, it would be unwise as a matter of policy to impose by fiat a "one-size-fits-all" deadline on approximately 2.4 million asylum applications whose applicants are differently-situated and who the Immigration Judges know better than EOIR management.

ECF 71-1 at 5. Thus, even absent EOIR's erroneous legal conclusion, the agency concluded as a matter of policy that a uniform notice period was undesirable. The Memo provides a reasoned explanation for this policy decision, noting the different circumstances affecting applicants before it, including those in custody, those proceeding pro se, and those proceeding as a family unit but with different application filing dates and therefore different dates on which the AAF has been pending for more than one year. *Id.* Thus, EOIR based this decision on an exercise of its own judgment, independent of its erroneous legal conclusion, and this Court cannot say that that decision reflected a clear error of judgment such that it was arbitrary and capricious.

Nor can this Court say that EOIR acted arbitrarily and capriciously in failing to consider what Plaintiff perceives as the obvious alternative of setting a minimum notice period while permitting immigration judges to extend that period. The failure to consider obvious alternatives is an issue that arises most frequently in the context of review of agency rulemakings, *Ramirez v. ICE*, 471 F. Supp. 3d 88, 178–79 (D.D.C. 2020) (collecting cases), and Plaintiff relies on a case

involving notice-and-comment rulemaking for this proposition, *see Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 816 n.41 (D.C. Cir. 1983). It is not clear that an agency must expressly consider obvious alternatives when issuing guidance such as the January 2 Memo.

Even assuming without deciding that EOIR had to expressly consider obvious alternatives, this Court concludes that setting a minimum notice period while allowing immigration judges to extend it did not constitute such an obvious alternative at the time of EOIR's decision that the agency had to address it. With the benefit of hindsight and the facts now before this Court (involving numerous cases of immigration judges providing just two days of notice), setting a floor for notice seems like an obvious alternative. EOIR did not have those facts before it when it reached this decision, however, and this Court must limit its review to the facts before the agency at the time it made its decision. EOIR explained why it determined that immigration judges should possess discretion to set notice periods based on the individual circumstances of each applicant and each case. There is no evidence presently in the record that EOIR should have known at the time it issued the January 2 Memo that some immigration judges would exercise that discretion in a manner that arguably fails to provide adequate notice, such that obvious reason existed to explicitly set a floor. Thus, this Court cannot say based on the present record that setting a minimum notice period but permitting immigration judges to extend it constituted an obvious alternative at the time EOIR made its decision.[1]

c) **Unlawful Treatment of Non-Asylum Claims**

Finally, Plaintiff argues that the template order that the January 2 Memo encourages immigration judges to use unlawfully suggests that failure to pay the AAF also subjects applicants

---

[1] Of course, whether EOIR should now take some action in light of what may be prevalent due process issues is not before this Court in the instant motions.

14

to denial of their applications for withholding of removal and CAT protection. Notwithstanding that Defendants had previously represented that failure to pay the AAF would not subject applicants to denial of these other forms of relief, *see* ECF 51 at 41:14–19, Defendants now refuse to take a position on that issue, *see* ECF 87. For the purpose of this motion, this Court need not decide this now-apparently contested issue because even assuming without deciding that the AAF applies only to asylum claims and that the January 2 Memo impermissibly suggests to the contrary through its encouragement to use the template order, Plaintiff has failed, at this stage, to demonstrate a likelihood of irreparable harm absent preliminary relief.

  To be entitled to preliminary relief, a plaintiff must make a "clear showing" that, without such relief, it will suffer irreparable harm that is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). At this stage, this Court must conclude that the likelihood of irreparable harm that Plaintiff has identified, unlawful denial of withholding of removal and CAT protection due to failure to pay the AAF, remains only speculative. No evidence exists in the present record of an immigration judge denying withholding of removal or CAT protection for failure to pay the AAF after the template order became available. Plaintiff points to instances it raised in October of such denials, *see* ECF 45-5, but those denials occurred before the template order became available in December. Plaintiff also points to instances of immigration judges and immigration courts denying applications for withholding of removal or CAT protection due to failure to pay the *initial* asylum fee, *see* ECF 64-9 ¶¶ 4–5; ECF 73-3 ¶¶ 4–5, but those instances also appear to have no connection to the template order, which concerns the

AAF, rather than the initial asylum fee. Accordingly, this Court must, at this point, deny Plaintiff's motion for preliminary relief based on the alleged ambiguity of the template order.[2]

Because Plaintiff has failed to demonstrate entitlement to preliminary relief as to any of its claims, this Court must deny its motion.

### C. Defendants' Motion to Lift the Stay

For the reasons described above, this Court concludes that the inconsistency between USCIS's and EOIR's policies that led this Court to stay those policies no longer exists. Accordingly, this Court will lift its October 30 stay of USCIS's Federal Register Notice.

This Court is not persuaded otherwise by Plaintiff's argument that the stay should remain in place because USCIS has not provided any evidence that it has resolved an issue that Plaintiff identified earlier in this litigation, that USCIS was systematically sending AAF notices to old addresses even after applicants had filed the proper forms to update their addresses with USCIS and that some applicants had not received notices despite their AAF becoming due.[3] Although this Court continues to find this issue concerning, Plaintiff has made no argument as to how this issue is caused by something unlawful about USCIS's Federal Register Notice, as opposed to clerical problems in implementing that Notice. This Court may not continue to stay the Federal Register Notice without a legal basis to do so. The parties have indicated that they would be willing to work together to resolve this issue, however, and this Court encourages them to do so.

---

[2] Nothing will prevent this issue from being re-raised at an appropriate time in this litigation, should evidence of such denials materialize.

[3] The parties agree that USCIS has now resolved another issue that Plaintiff identified earlier in this litigation, that USCIS's payment deadline notices did not make clear from what date the thirty days of notice would run. See ECF 86-1 ¶ 3; ECF 89 at 6.

IV.  CONCLUSION

For the reasons stated above, Defendants' motion to lift the stay, ECF 71, is granted, and Plaintiff's motion for preliminary relief, ECF 73, is denied. A separate Order follows.


Dated: February 2, 2026                                         /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge