**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ASYLUM SEEKER ADVOCACY PROJECT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*,**<br><br>**Defendants.** | * * * * * * * * * * * * * | **Civil No. SAG-25-03299** |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Asylum Seeker Advocacy Project, a membership organization of asylum seekers, brings this action against Defendants Executive Office for Immigration Review ("EOIR"), Daren Margolin in his official capacity as Director of EOIR, and Todd Blanche in his official capacity as Attorney General of the United States (collectively, "Defendants") for claims regarding the implementation of the new annual asylum fee ("AAF"). ECF 72 at ¶¶ 24–26.[1]

On October 30, 2025, this Court issued a Memorandum Opinion and Order staying (1) a notice that United States Citizenship and Immigration Services ("USCIS") issued in the Federal

[1] Plaintiff's Amended Complaint originally brought claims against United States Citizenship and Immigration Services ("USCIS"), Joseph Edlow in his official capacity as the Director of USCIS, the Executive Office for Immigration Review ("EOIR"), Daren Margolin in his official capacity as Director of EOIR, and Pamela Bondi in her official capacity as the Attorney General of the United States. ECF 72 at ¶¶ 22–26. In April, 2026, Pamela Bondi ceased serving as the Attorney General, and Todd Blanche was named the Acting Attorney General. Under Federal Rule of Civil Procedure 25(d), then-Acting Attorney General Blanche was "automatically substituted as a party" for former-Attorney General Pamela Bondi. On May 22, 2026, Plaintiff voluntarily dismissed its claims against USCIS and its Director, Joseph Edlow. *See* ECF 114.

Register ("Federal Register Notice") and (2) a policy memorandum issued by EOIR ("July 17 Memo"), which implemented the AAF at the respective agencies. ECF 54, 55.

On January 2, 2026, EOIR issued a new policy memorandum ("January 2 Memo") that rescinded the July 17 Memo and redirected implementation of the AAF. ECF 71-1. The same day, EOIR filed a motion to lift this Court's previously issued stay. ECF 71. On January 17, 2026, Plaintiff filed an amended complaint challenging USCIS's Federal Register Notice, EOIR's new January 2 Memo, and a template order that EOIR had distributed to its immigration judges. ECF 72 at ¶¶ 128–159. Plaintiff's amended complaint alleged that USCIS's Federal Register Notice and EOIR's January 2 Memo and template order: applied retroactively to asylum applications absent clear authorization from Congress (**Counts I and II**); implemented the AAF in an arbitrary and capricious manner (**Count III**); and unlawfully instructed immigration judges to reject CAT and withholding claims for failure to pay the AAF (**Count V**). Plaintiff also alleged, in the alternative, that EOIR and USCIS unlawfully withheld agency action to properly implement the AAF (**Count IV**). Along with their amended complaint, Plaintiff filed a motion for a temporary restraining order, a preliminary injunction, or a stay of USCIS's and EOIR's policies. ECF 73. On February 2, 2026, this Court issued a second Memorandum Opinion ("February 2 Opinion") and Order, lifting its stay on USCIS's and EOIR's implementation of the AAF and denying Plaintiff's motion for interim relief. ECF 94, 95.

Defendants have now filed a motion to dismiss Plaintiff's amended complaint, ECF 99, and Plaintiff has cross-filed a motion for summary judgment, ECF 123. On September 10, 2026, this Court held a hearing on both motions. This Court has reviewed all of the filings concerning these cross-motions. ECF 99, 123, 132, 139. For the reasons explained below, this Court will treat

Defendants' motion to dismiss as a motion for summary judgment and will grant in part and deny in part Plaintiff's and Defendant's cross-motions for summary judgment.

## I. BACKGROUND

On July 4, 2025, the One Big Beautiful Bill Act (the "Act") became law. ECF 72 at ¶ 1. One section of the Act created a new annual fee for asylum applicants, which provides, in pertinent part:

> In addition to any other fee authorized by law, for each calendar year that an alien's application for asylum remains pending, the Secretary of Homeland Security or the Attorney General, as applicable, shall require the payment of a fee, equal to the amount specified in subsection (b), by such alien.

8 U.S.C. § 1808(a). Section 1808(b)(1), in turn, provides that "[f]or fiscal year 2025, the amount specified in this section shall be the greater of—(A) $100; or (B) such amount as the Secretary of Homeland Security may establish, by rule." Once the AAF is set for fiscal year 2025, the Act provides for annual inflation adjustments:

> During fiscal year 2026, and during each subsequent fiscal year, the amount specified in this section shall be equal to the sum of—
>
> (A) the amount of the fee required under this subsection for the most recently concluded fiscal year; and
>
> (B) the product resulting from the multiplication of the amount referred to in subparagraph (A) by the percentage (if any) by which the Consumer Price Index for All Urban Consumers for the month of July preceding the date on which such adjustment takes effect exceeds the Consumer Price Index for All Urban Consumers for the same month of the preceding calendar year, rounded down to the nearest dollar.

*Id.* § 1808(b)(2).[2] The Act also created a new initial asylum fee, codified at 8 U.S.C. § 1802, which requires asylum applicants to pay a fee when they first file an application.

[2] In January, EOIR made an inflation adjustment to the annual asylum fee ("AAF") for fiscal year 2026, raising the fee from $100 to $102. *See* Inflation Adjustment for EOIR OBBBA Fees; Fiscal Year 2026, 91 Fed. Reg. 2561, 2562 (Jan. 21, 2026).

A person currently in removal proceedings may apply for asylum defensively before EOIR. ECF 72 at ¶¶ 56–57. A person not currently in removal proceedings, however, applies for asylum affirmatively with USCIS. *Id.* Although a person's asylum application is pending before only one agency at a time, that application may be transferred between the two agencies under certain circumstances. *Id.* at ¶ 58.

In July, 2025, USCIS issued its Federal Register Notice and EOIR issued its July 17 Memo which implemented the AAF at the respective agencies. *Id.* at ¶¶ 74–75. As pertinent here, USCIS's Federal Register Notice provided that asylum applicants whose applications had been pending since the beginning of fiscal year 2025 on October 1, 2024 or earlier and remained pending at the end of fiscal year 2025 on September 30, 2025 would have to pay the AAF amount specified in the Act for fiscal year 2025. *See* USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 Fed. Reg. 34511, 34515 (July 22, 2025). USCIS did not require that applicants pay the AAF for the first time until they received individual notice at least thirty days before the payment due date. ECF 72 at ¶ 77.

EOIR's July 17 Memo, by contrast, stated that the AAF would apply to "any asylum application pending for more than one year as of a date after the date of enactment of [the Act]"—*i.e.*, as of July 5, 2025. ECF 123-3 at 24. The July 17 Memo did not guarantee asylum applicants a notice period before the AAF payment would come due. *Id.* at 23–26.

On October 30, 2025, this Court stayed USCIS's Federal Register Notice and EOIR's July 17 Memo as arbitrary and capricious agency actions pursuant to 5 U.S.C. § 705. ECF 54, 55. This Court reasoned that USCIS and EOIR had each failed to consider the other agency's position when enacting their respective policies, a failure that resulted in material inconsistencies. ECF 54 at 14–

15. For the remainder of 2025, it appears that neither USCIS nor EOIR required payment of the AAF. ECF 72 at ¶ 10.

On January 2, 2026, EOIR issued its January 2 Memo, a new policy memorandum that rescinded the July 17 Memo and directed reimplementation of the AAF. ECF 71-1. Soon after, EOIR began requiring applicants to pay the AAF pursuant to the January 2 Memo. ECF 72 at ¶ 102. In alignment with USCIS's Federal Register Notice, EOIR's January 2 Memo states the agency will not require payment of the AAF for asylum applicants whose applications had been pending for one year or more between July 5, 2025 and September 30, 2025 but no longer remained pending on October 1, 2025. ECF 71-1 at 3. It also provides that even once an applicant's AAF becomes due (when his application has been pending for at least one year), EOIR will not require payment until an immigration judge has "set[] a deadline for payment and that deadline has passed." *Id.* at 5. The January 2 Memo asserts that no officer at EOIR, including the Director, may direct an immigration judge to adjudicate a particular case in a particular way, including which payment deadlines to set. *Id.* at 4 (citing 8 C.F.R. §§ 1003.0(c), 1003.9(c), 1003.10(b)). Instead, the Memo directs immigration judges to set case-by-case AAF payment deadlines according to each judge's discretion. *Id.* at 5. The Memo notes, "as a matter of best practice," the immigration judge's payment order "should . . . contain information about how to pay [the AAF] and the consequences of a failure to pay." *Id.* To that end, it "encourage[s]" immigrations judges to use a template order provided by EOIR. *Id.*

EOIR first made its AAF template order available to immigration judges on December 8, 2025. ECF 85-1 at ¶ 4. The template order first states:

> [The Act] requires all aliens with an asylum application pending for 365 days or more to pay an annual fee (AAF) of $100, in addition to any other fee. [The Act] also authorizes annual increases of the AAF for inflation, in addition to any other fee increases. Any alien who has an asylum application pending for one year or

> more must pay the AAF and for each year thereafter for which the application remains pending. Only one fee per 365-day period is required.

*Id.* at 4. The template then lists two conditions that could independently obligate an applicant to pay the AAF.

> ☐ Your Form I-589, Application for Asylum and for Withholding of Removal, has been pending for 365 days or more since October 1, 2024, and you have not previously been ordered to pay the AAF.
>
> ☐ Your Form I-589, Application for Asylum and for Withholding of Removal, has been pending for 365 days or more since you were last ordered to pay the AAF.

*Id.* Each of the template order's two payment conditions reference Form I-589, an integrated application that applicants use to apply for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. ECF 72 at ¶ 14. The final paragraph of the template order states: "Your payment of [the AAF] is due on [due date]. Failure to timely pay the fee may result in a finding that you have abandoned or withdrawn your application and may result in its denial or dismissal." ECF 85-1 at 4.

The template order directs asylum applicants ordered to pay the AAF to EOIR's online payment portal. *Id.* It also provides applicants the following instructions regarding their digital receipt:

> Once paid, you will receive a digital receipt that includes a Tracking ID. Please save or print that receipt immediately. You will not receive a copy of that receipt via email. The Tracking ID will be required if you ever need to retrieve a copy of the receipt.

*Id.* EOIR's online payment portal is the only method to pay the AAF to EOIR. *See id.* ("[P]ayment must be made through EOIR's Payment Portal[.]"); 8 C.F.R. § 1103.7(a)(1) ("The only accepted form of fee payment is payment through the EOIR Payment Portal:

https://epay.eoir.justice.gov/index.").[3] Once an applicant pays the AAF through the portal, a Payment Tracking ID appears on their screen, and a digital copy of a receipt becomes available for download. ECF 123-5 at ¶ 6; ECF 123-6 (example digital receipt). A copy of the receipt is not emailed to the applicant. ECF 123-6. The receipt warns applicants to "[s]ave or print this receipt immediately" and that "[a] copy will not be sent via email." *Id.* The receipt further warns that "[a] copy of this receipt must be included with the application, motion, or appeal that is filed with the Immigration Court or the BIA Clerk's Office" and a "[f]ailure to include a receipt showing proof of payment will result in rejection of the filing." *Id.*

Since EOIR distributed its template order, it appears that EOIR's immigration judges have systematically used the template order to set AAF payment deadlines, modifying only the case details and payment due date as needed. *See, e.g.*, ECF 82-1 at ¶ 5; ECF 73-10 (example order #1); ECF 83-2 (example order #2); ECF 83-3 (example order #3). In at least three cases involving ASAP members, immigration judges used the template order to set AAF payment deadlines just one or two days after the order date. *See* ECF 73-8 at ¶¶ 6–7; ECF 82-1 at ¶ 5; ECF 83-1 at ¶¶ 5–6. In one such case, the immigration judge's order was not served to the attorney of record until the day the AAF payment was due. ECF 83-1 at ¶ 5.

On January 17, 2026, Plaintiff filed an amended complaint challenging both EOIR's January 2 Memo and its template order pursuant to the Administrative Procedure Act ("APA"). ECF 72. Defendants now move to dismiss Plaintiff's amended complaint, *see* ECF 99, and Plaintiff cross-moves for summary judgment, *see* ECF 123.

---

[3] USCIS appears to require asylum applicants to submit AAF payments through its own separate online payment portal. *See* USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 Fed. Reg. 34511, 34515 (July 22, 2025) ("USCIS will require that AAF be paid using an online fee payment process."); *see also* USCIS, Annual Asylum Fee, https://my.uscis.gov/accounts/annual-asylum-fee/start/overview (last visited Sept. 11, 2026).

## II. REVIEWABLITY

Before proceeding to the merits of Plaintiff's claims, the Court addresses the government's arguments that this Court lacks jurisdiction to hear this case.

### A. Subject Matter Jurisdiction

Plaintiff challenges federal agency actions under the APA's cause of action. Accordingly, this Court has subject matter jurisdiction under the federal question statute. *See Lee. v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (citing 28 U.S.C. § 1331).

Although the APA embodies a basic presumption of judicial review, its judicial review provisions do not apply if another statute precludes judicial review. *Id.* The government contends that four provisions in Title VIII of the immigration code, independently or in conjunction, preclude this Court's jurisdiction over Plaintiff's APA claims. ECF 99 at 9–14. When analyzing whether any of Title VIII's provisions precludes the Court's jurisdiction, we "take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (internal quotation marks omitted). As explained below, nothing in Title VIII precludes this Court's authority to hear Plaintiff's APA claims.

**Section 1251(f)(1).** The government first cites 8 U.S.C. § 1252(f)(1), which limits the Court's authority to "enjoin or restrain the operation of the provisions of [§§ 1221–1232] of [Title VIII]." This provision does not concern subject matter jurisdiction but instead limits the remedies this Court may order. *See Biden v. Texas*, 597 U.S. 785, 801 ("[W]e see no basis for the conclusion that section 1252(f)(1) concerns subject matter jurisdiction."); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) ("By its plain terms, and even by its title, [section

1252(f)(1)] is nothing more or less than a limit on injunctive relief."). The provision thus does not preclude this Court's review of Plaintiff's APA claims.

**Section 1252(b)(9).** The government next cites 8 U.S.C. § 1252(b)(9) as a limit on the Court's jurisdiction. That argument is also unavailing. Section 1252(b), which funnels petitions for review of removal orders to the federal courts of appeals, applies only "[w]ith respect to review of an order of removal." Similarly, paragraph (9) is limited to "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding *brought to remove an alien* from the United States under this subchapter[.]" *Id.* § 1252(b)(9) (emphasis added). "On their face, these provisions apply only to challenges to an 'order of removal.'" *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *9 (4th Cir. July 1, 2025). Because "[t]here is no such order here . . . these provisions don't apply." *Id.*; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (holding that 8 U.S.C. § 1252(b)(9) "is certainly not a bar where . . . the parties are not challenging any removal proceedings.").[4]

**Section 1252(a)(5).** For much the same reason, the government's reliance on 8 U.S.C. § 1252(a)(5) fails. Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal

[4] The government's reference to the Third Circuit's decision in *Khalil v. President* does not save its preclusion argument. 164 F.4th 259 (3d Cir. 2026). In that case, the Third Circuit held that Section 1252(b)(9) precluded review of an individual's constitutional and APA claims that arose from his removal proceeding. This case concerns no individual removal proceeding; instead, Plaintiff brings a facial APA challenge to EOIR's policies implementing the AAF. The government's reading of *Regents* also fails. *See* ECF 99 at 12–14 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19)). Although the Court noted that cases concerning "the process by which . . . removability will be determined" may trigger the jurisdictional bar of Section 1252(b)(9), the clear statutory language of Section 1252(b)(9) and the greater context of the Court's discussion in *Regents* make it clear that the statutory provision concerns challenges to individual removal proceedings, not broad policy challenges like Plaintiff's. *Regents*, 591 U.S. at 19.

entered or issued under any provision of [the Immigration and Nationality Act].” Again, the Court is reviewing no such removal order, so the provision is inapposite.

**Section 1252(a)(4).** Finally, 8 U.S.C. § 1252(a)(4) does not limit this Court’s jurisdiction to hear Plaintiff’s claims as the government suggests. Section 1252(a)(4) provides that “a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT.]” Plaintiff brings no claims under the CAT, so this provision does not apply.

### B. Standing

The government (for the third time) fails to demonstrate that Plaintiff lacks standing to bring this action. The government first re-raises its argument that EOIR’s January 2 Memo lacks legal effect such that Plaintiff’s members have suffered no injury caused by it or that could be redressed by this Court’s enjoining or staying of it. *See* ECF 99 at 18–19. As the Court explained in its February 2 Opinion, the January 2 Memo indeed “has legal effect” and causes Plaintiff’s alleged injuries; the Court thus rejects the government’s standing argument for the reasons described in that Opinion. *See* ECF 94 at 6–8.

The government also re-raises the associational standing arguments it made in response to Plaintiff’s earlier motions for preliminary relief. *See* ECF 99 at 21–22. The government acknowledges that its arguments remain the same notwithstanding Plaintiff’s amended complaint, so this Court will reject them for the reasons described in its October 30 Opinion. *See* ECF 54 at 7–8.

### C. Judicial Review under Section 704 of the APA

The government next argues that the January 2 Memo and the template order are not reviewable under the APA’s judicial review provision. ECF 99 at 14–18. This Court disagrees.

The APA authorizes judicial review of (1) "final agency action[s]," (2) "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The January 2 Memo and template order satisfy both conditions.

*1. Final Agency Action*

To be "final," an agency action must meet two requirements. First, the action must "mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). Second, the action must be "one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). The government does not contest that the January 2 Memo and template order meet the first requirement. The government argues only that the January 2 Memo and template order do not determine rights or obligations or otherwise carry legal effect. *See* ECF 99 at 14–18.

A court must conduct a practical, rather than formalistic, review of an agency action to determine whether it is final. *See Fort Sumter Tours, Inc. v. Andrus*, 440 F. Supp. 914, 918 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977) ("[I]t is not the label affixed to the action of the agency, but rather a realistic appraisal of the consequences of the action which must govern."). Guidance setting "only internal policies" for the processing of cases that is not "for the benefit of any individual applicant or intended to have the force of law" is not subject to review. *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025). Guidance giving notice of how an agency has interpreted a relevant statute has legal effect, however, even if that effect is not felt until the interpretation is applied in an individual case. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599–600 (2016) (citing *Frozen Food Express v. United States*, 351 U.S. 40 (1956)). In

determining whether an action constitutes final agency action, courts also consider the way in which the agency itself treats the action. *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016).

As this Court explained in its February 2 Opinion, the January 2 Memo is a final agency action. The January 2 Memo "expressly disclaims entitlement to payment of AAFs" for certain applicants, "states that EOIR will not require payment . . . until an immigration judge issues an order setting a deadline," and thereby does not merely set internal policies, "but rather expressly benefits certain applicants by dictating EOIR's position." ECF 94 at 7. The government's behavior surrounding the January 2 Memo further supports this conclusion. Between the issuance of this Court's order staying the July 17 Memo and the issuance of the January 2 Memo, EOIR did not require AAF payments. ECF 72 at ¶ 10. Immigration judges began requiring AAF payments again, however, as soon as EOIR issued the January 2 Memo. ECF 72 at ¶ 102. Furthermore, immigration judges have imposed AAF payments in accordance with the January 2 Memo. For these reasons, the Court reaffirms its holding that the January 2 Memo constitutes a final agency action. *See* ECF 94 at 6–7.

The template order is also a final agency action. When "an agency acts as if a document issued at headquarters is controlling in the field . . . [and] bases enforcement actions on the policies or interpretations formulated in the document," that document is "for all practical purposes binding." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) (internal quotation marks omitted). Since EOIR made the template order available to its immigration judges in December, 2025, it appears immigration judges have systematically used it to impose payment deadlines—including in several cases handled by Plaintiff—and multiple immigration judges have relied on it to deny applicants' asylum, withholding, and CAT claims as abandoned for

nonpayment.[5] *See* ECF 83-1 at ¶ 7; ECF 123-5 at ¶ 16; ECF 123-12 at ¶¶ 4–6, 11–13. The fact that immigration judges *can* modify the template order's substance does not negate the reality that immigration judges appear to be regularly using the template to issue AAF payment orders while modifying only clerical details, such as case information and payment due dates. *Compare* ECF 73-10 (example order #1), *with* ECF 83-2 (example order #2), *and* ECF 83-3 (example order #3). The template order's implementation of the AAF requirement (particularly its erroneous suggestion that AAF non-payment may forfeit CAT and withholding claims, discussed *infra* section IV.D) thus carries "clear legal consequences of enormous significance" for asylum applicants and constitutes a final agency action. *Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 997 F.3d 1247, 1253 (D.C. Cir. 2021) (internal quotation marks omitted).

*2. No Other Adequate Remedy in a Court*

Turning to the second component of APA § 704's judicial review provision, the government argues that asylum applicants have an adequate remedy in court because they can challenge removal orders in individual cases by appealing to the BIA and then to a court of appeals. ECF 99 at 14–15. As this Court explained in its February 2 Opinion, a remedy is not adequate if accessing it would "carry the risk of 'serious criminal and civil penalties.'" *Hawkes*, 578 U.S. at 600 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967)). Appealing individual removal

---

[5] The government also argues the January 2 Memo and template order have no legal effect because they merely "describe the agencies' implementation of requirements plainly contemplated by the [Act]." ECF 99 at 16 (citation omitted). That argument significantly understates the agency's role in implementing the AAF. Although the Act broadly requires EOIR to collect initial and annual asylum fees, *see* 8 U.S.C. §§ 1802, 1808, the Act does not require dismissal of asylum claims for nonpayment of those fees, establish the minimum amount of payment notice that immigration judges must afford asylum applicants before payment is due, or condition asylum claims on an asylum applicant's procurement of an AAF payment receipt. These are "concrete consequences" created and implemented by EOIR's January 2 Memo and template order, not the Act. *Del. Valley Regional Ctr., LLC v. DHS*, 106 F.4th 1195, 1204–05 (D.C. Cir. 2024) (citation omitted).

orders does not constitute an adequate alternative remedy for asylum applicants because accessing it, through failure to pay the AAF, would require applicants to risk the serious penalty of removal. Accordingly, Plaintiff properly challenges both the January 2 Memo and the template order under the APA's judicial review provision.

**D. Mootness**

The government's final reviewability argument concerns mootness. Claims become moot, and thus outside the Court's subject matter jurisdiction, "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (citation omitted). The government argues that Plaintiff's claims seeking forward-looking relief against EOIR's July 17 Memo are moot because that memo has been replaced by the January 2 Memo. The government further argues that Plaintiff's allegations against USCIS's Federal Register Notice have been resolved based on the undisputed record and are also moot. *See* ECF 99 at 20–21. Because Plaintiff expressly waived argument on these points, *see* Hr'g Tr., ECF 143 at 4–5, these issues are indeed moot and beyond this Court's review.

## III. LEGAL STANDARD

Section 706 of the APA requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[.]" 5 U.S.C. § 706(2)(A). APA claims "are adjudicated without a trial or discovery, on the basis of an existing administrative record, [and accordingly] are properly decided on summary judgment." *Audobon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007); *see also Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.5 ("It is probably the better practice for a district court always to convert [a motion to dismiss an APA case] to summary judgment."); 10B Wright and Miller, Federal Prac. & Proc. 3d § 2733 (2007). But the ordinary summary judgment standard set

forth in Rule 56 "does not apply because of the limited role of a court reviewing the administrative record." *Deese v. Esper*, 483 F. Supp. 3d 290, 304 (D. Md. 2020) (citation omitted). "Rather, summary judgment is the mechanism by which the court decides as a matter of law whether the administrative record permitted the agency to make the decision it did." *Id.* (citations omitted).

"Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). But a court must "vacate agency action if it is not 'based on a consideration of the relevant factors' or where 'there has been a clear error of judgment.'" *Defs. of Wildlife v. U.S. Dep't of the Interior*, 931 F.3d 339, 345 (4th Cir. 2019) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "Generally, an agency decision is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (quoting *State Farm*, 463 U.S. at 43).

## IV. ANALYSIS

### A. Counts I & II – Retroactivity

Plaintiff's first two counts allege that the January 2 Memo unlawfully applies 8 U.S.C. § 1808 retroactively by (1) applying it to asylum applicants who filed their applications when no AAF existed, and (2) counting time before July 4, 2025 to calculate the length of time an

application has been pending. ECF 72 at ¶¶ 128–134. This Court has twice rejected Plaintiff's retroactivity claims. *See* ECF 54 at 8–12; ECF 94 at 8. Because Plaintiff's retroactivity arguments are materially unchanged from before, this Court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment on Counts I and II for the reasons described in its October 30 Opinion. *See* ECF 54 at 8–12.

**B. Count III – Arbitrary and Capricious Decisionmaking**

Plaintiff's third count asserts two theories for why EOIR's January 2 Memo is arbitrary and capricious. First, Plaintiff argues the January 2 Memo fails to ensure asylum applicants receive meaningful and adequate notice before they are penalized for nonpayment of the AAF. Second, Plaintiff argues the January 2 Memo fails to provide sufficient clarity to applicants on how to comply with the AAF requirement. This Court addresses these arguments in turn.

*1. Inadequate Notice Period for AAF Payment*

Plaintiff first re-raises its argument that EOIR's decision to forego setting a uniform notice period before requiring payment of the AAF is arbitrary and capricious because it rests on a legal error—specifically, the January 2 Memo's incorrect assertion that EOIR lacks authority to set a uniform notice period because its immigration judges have "decisional independence." ECF 71-1 at 4–5. As explained in this Court's February 2 Opinion, EOIR misconstrues the law in reaching that conclusion. ECF 94 at 11–13. In fact, the same subsection of the Code of Federal Regulations that supposedly bars EOIR's Director from impeding an immigration judge's decisional independence also states that the "[EOIR] Director shall have the authority to . . . [i]ssue operational instructions and policy, including procedural instructions regarding the implementation of new statutory or regulatory authorities . . . ." 8 C.F.R. § 1003.0(b)(1)(i). Plaintiff

thus correctly argues that the government misconstrued its own regulations in deciding it lacked authority to set a uniform notice period.

That conclusion does not end this Court's arbitrary and capricious inquiry, however, because the January 2 Memo makes clear that the decision to not prescribe a uniform notice period did not depend on EOIR's erroneous legal determination. The January 2 Memo provides:

> In short, even if applicable regulations and the *Accardi* doctrine allowed EOIR to dictate to Immigration Judges how to rule in particular cases, it would be unwise as a matter of policy to impose by fiat a "one-size-fits-all" deadline on approximately 2.4 million asylum applications whose applicants are differently-situated and who the Immigration Judges know better than EOIR management.

ECF 71-1 at 6. Thus, even absent EOIR's erroneous legal conclusion, the agency independently concluded that a uniform notice period was undesirable as a matter of policy. Whether the January 2 Memo's lack of a uniform notice period survives arbitrary-and-capricious review thus hinges on the reasonableness of the justifications that EOIR offered for its policy of setting AAF payment notice periods on a case-by-case basis.

Plaintiff attacks EOIR's policy rationale on four grounds: that EOIR (1) failed to adequately consider the hardship its policy would impose on applicants, (2) was aware its immigration judges would fail to provide adequate notice, (3) overestimated the ability of the administrative review process to remedy insufficient notice, and (4) failed to consider the obvious alternative of setting a minimum notice period. *See* ECF 123-1 at 24–32. Each of these arguments fails.

**Hardship.** Plaintiff first asserts EOIR failed to consider the hardships that extremely short notice periods may impose on asylum applicants. Plaintiff is correct that short one- or two-day notice periods to pay the AAF may create hardship and even Due Process violations for individual asylum applicants, many of whom live on the financial margins. This is especially true when applicants face logistical hurdles, such as limited internet access to EOIR's payment portal or

dependency on receiving mailed notice that their AAF payment is due. In these instances, it is entirely plausible that providing only a few days notice to pull together a $100 AAF payment may amount to an abuse of discretion on the part of the immigration judge and a violation of an applicant's due process rights. *Cf. Freza v. Att'y Gen.*, 49 F.4th 293, 299–300 (3d Cir. 2022) (finding a violation of due process rights where an immigration judge proceeded with a hearing "less than 24 hours" after the asylum seeker's first meeting with counsel).[6]

However, the possibility that due process violations may arise as immigration judges set AAF payment deadlines on a case-by-case basis does not render EOIR's policy unreasonable on its face. First, it is not unreasonable for EOIR to entrust its immigration judges—who regularly set case schedules, *see* 8 C.F.R. § 1003.18(a), and administer fees, *see, e.g.*, 8 C.F.R. §§ 1003.24, 1103.7(b)—with setting AAF payment deadlines that fit the circumstances of each individual asylum case. *See* ECF 71-1 (providing a non-exhaustive list of "differently-situated asylum applicants" who may require case-specific AAF payment deadlines).

Second, in instances where an immigration judge engages in an abuse of discretion and sets a too-short payment deadline that causes significant hardship, the January 2 Memo expressly identifies EOIR's administrative review process as a remedy for those asylum applicants. ECF 71-1 at 6 ("any alien whose application is denied based on a failure to pay the AAF may challenge that denial through a motion to reopen or reconsider, an appeal to the Board of Immigration Appeals or, if necessary, a petition for review in federal court"). Overall, then, this Court cannot

[6] The government argues that all asylum applicants ordered to pay the AAF have technically "already been on notice for at least a year" because the AAF applies only to asylum applications pending for at least one year. ECF 132 at 24. That argument is flawed. As Plaintiff persuasively argues, it is unrealistic "to expect that individuals with long-pending asylum applications are on notice by virtue of the [AAF's] enactment alone—especially when they have never previously had to pay any fees related to their asylum application." ECF 139 at 12.

find that EOIR failed to adequately consider the potential for applicant hardship in eschewing a uniform notice period.

**Likelihood of short payment deadlines.** Plaintiff's second argument that EOIR was aware its immigration judges "would fail to provide adequate notice" also fails. ECF 123-1 at 27. While the Court agrees that EOIR had a duty to consider the *possibility* that its immigration judges would occasionally err while adjudicating individual asylum claims, the Court finds that EOIR sufficiently addressed that issue by identifying its administrative review process as a safeguard.

The main case Plaintiff cites in support of this argument, *Las Americas Immigrant Advocacy Center v. U.S. Department of Homeland Security*, does not change this Court's conclusion. 783 F. Supp. 3d 200 (D.D.C. 2025). In *Las Americas*, a district court held a Department of Homeland Security policy was arbitrary and capricious when it allowed Customs and Border Protection ("CPB") officers to determine on a case-by-case basis whether noncitizens had meritorious credible fear claims that warranted receiving a credible fear interview from an asylum officer. The court noted that, unlike asylum officers, CPB officers had little to no experience in discerning credible fear, served in an adversarial role to noncitizens which could decrease the likelihood that noncitizens expressed fear, and did not receive training on how torture or country of origin may impact a noncitizen's behaviour. Given these factors, the court found it "unsurprising" that CPB officers lacked adequate consistency when making credible fear determinations, rendering the policy arbitrary and capricious. *See id.* at 224–27. That case does not analogize to EOIR's decision to grant its immigration judges the authority to set case-by-case AAF payment deadlines. Unlike the unqualified CPB officers at issue in *Las Americas*, immigration judges undoubtedly have experience in setting deadlines and implementing fee requirements like the AAF when adjudicating asylum claims. Certainly, immigration judges may

set AAF payment deadlines that vary from case to case, but EOIR was not unreasonable in asserting these differences would arise from asylum applicants "not be[ing] similarly situated" in the eyes of individual immigration judges. ECF 71-1 at 6.

**Insufficient administrative review at EOIR.** Plaintiff's most persuasive challenge against EOIR's lack of a uniform notice period concerns whether EOIR's administrative review procedures—specifically, reconsideration before an immigration judge or an appeal to the BIA—offer sufficient safeguards against overly-short deadlines. ECF 123-1 at 29–31. This Court finds that they do.

To start, it bears repeating that the January 2 Memo expressly confirms that administrative review remains available for applicants whose asylum claims are rejected for non-payment of the AAF. *See* ECF 71-1 at 6. The January 2 Memo also reasonably explains why EOIR believes its administrative review pathway offers sufficient protection to applicants. As the January 2 Memo notes, "only approximately 10 out of roughly 69,000 asylum applications adjudicated in the fourth quarter of [fiscal year] 2025"—or less than 0.015% of asylum applications—"were denied due to a failure to pay the AAF." *Id.* at 6 n.11. Further, each of those denials appeared to have been "subsequently remedied through normal channels at EOIR, *i.e.* reopening by the Immigration Judge or an appeal to the BIA." *Id.* Given the few instances EOIR identified where asylum applications were rejected for failure to pay the AAF, and the subsequent remediation of those claims through reconsideration or administrative appeal, this Court cannot conclude that EOIR made a "clear error of judgment" in continuing to funnel that small portion of aggrieved applicants who failed to pay the AAF through its administrative review process. *Defs. of Wildlife*, 931 F.3d at 345.

Plaintiff counters that EOIR's administrative review processes "may be practically impossible for many applicants" to access, given the high costs of filing a motion for reconsideration or a BIA appeal ($1,065 and $1,030, respectively). ECF 123-1 at 30. However, the statistics cited by EOIR demonstrating how infrequently AAF nonpayment results in denials, combined with the fact that both immigration judges and the BIA have discretion to waive those filing fees "upon a showing that the filing party is unable to pay the fee," adequately belay those concerns. 8 C.F.R. § 1003.24(d). Plaintiff's related argument that EOIR "failed to provide adequate guidance" on whether applicants should move for reconsideration, reopening, or appeal when they are given insufficient time to pay the AAF also fails. ECF 123-1 at 29–30. It is reasonable for EOIR to highlight all three options as potential avenues for relief and leave it to each applicant's judgment to choose the remedy best suited to their situation.

Under the deferential standard of arbitrary-and-capricious review, then, this Court cannot find that EOIR made a clear error of judgment when it determined its administrative review process offered a sufficient safeguard to asylum applicants given insufficient notice periods to pay the AAF.[7]

---

[7] Plaintiff contends EOIR's fee waivers themselves offer insufficient protection to asylum applicants as BIA has recently made them unavailable to represented, non-detained respondents. *See Matter of Garcia Martinez*, 29 I. & N. Dec. 169, 171 (B.I.A. 2025) (non-detained respondents with private counsel are "presumed to have the ability to pay any requisite filing fee"). The reasonableness of that policy choice, however, is not at issue in this case.

In a similar vein, Plaintiff highlights that the Department of Justice issued an interim final rule on February 6, 2026 curtailing certain aspects of BIA appeals, decreasing the protection offered by EOIR's administrative review process. *See* Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267 (Feb. 6, 2026). On March 8, 2026, a federal district court set aside several portions of that rule, finding that the government did not comply with the APA's notice-and-comment rulemaking requirements. *See Amica Ctr. for Immgr. Rts. v. Exec. Off. for Immigr. Review*, No. 1:26-cv-00696, ECF 32, 33 (D.D.C. Feb. 26, 2026). That court then stayed the case, on April 10, 2026, pending the completion of a notice-and-comment period and the promulgation of a final rule by EOIR. *See id.* at ECF 45 (joint stipulation to stay). Because EOIR has not yet

**Consideration of alternatives.** Plaintiff's final argument on this front is that EOIR failed to consider reasonable alternatives to its case-by-case notice policy. As explained above, the January 2 Memo constitutes a final agency action and is thus subject to APA Section 706(2)(A)'s arbitrary and capricious standard of review. *See Spirit Airlines*, 997 F.3d at 1255. Under that standard, EOIR was obliged to "consider responsible alternatives to its chosen policy and . . . give a reasoned explanation for its rejection of such alternatives." *Id.* (citation omitted).[8] This Court finds that EOIR did so here. Specifically, the January 2 Memo expressly considered the possibility of a "one-size-fits-all deadline" for AAF payment notice but declined to take that path because it believed its immigration judges were better situated to set case-by-case deadlines based on each applicant's unique situation. ECF 71-1 at 6.

Plaintiff contends this was not enough, and while EOIR considered and dismissed setting a uniform notice period, it failed to consider setting a uniform *minimum* notice period, with immigration judges afforded discretion to offer additional time beyond the floor. ECF 123-1 at 31–32. That argument goes too far. EOIR was not required to elaborate on every variation of a one-size-fits-all deadline, such as a uniform minimum notice period. *See State Farm*, 463 U.S. at 51 ("a rulemaking cannot be found wanting simply because the agency failed to include every

published its forthcoming proposed rule, any conflict it may create with EOIR's January 2 Memo and template order is merely conjectural at this point and may not serve as a basis for setting aside the January 2 Memo and template order.

[8] The government argues it was not required to consider reasonable alternatives at all because the January 2 Memo was (1) not a legislative rule, or (2) because the Memo qualifies as an "interpretative rule[], general statements[]of policy, or rule[] of agency organization, procedure, or practice" under APA § 553(b)(A). *See* ECF 132 at 27–28. To the first point, the January 2 Memo is a final agency action and therefore must satisfy the demands of APA § 706(2)(A), including its requirement that agencies consider reasonable alternatives. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021). To the second point, APA § 553(b)(A) concerns exceptions to APA's procedural notice-and-comment requirements and is irrelevant to the agency's obligation to engage in reasoned decisionmaking.

alternative device and thought conceivable by the mind of man.") (internal quotation omitted). The Court thus finds that EOIR considered reasonable alternatives to its policy choice.

*2. Unduly Burdensome and Conflicting Payment Requirements*

Moving beyond the lack of a uniform notice policy, Plaintiff also argues that EOIR's January 2 Memo and template order are arbitrary and capricious because (1) they create a proof-of-payment system that is unduly burdensome on applicants, and (2) they materially conflict with USCIS's policies. Here, this Court agrees in part.

**Proof of payment.** On their face, the January 2 Memo and template order offer sufficiently clear instructions on how the AAF requirement should be met. The January 2 Memo instructs that "[an] Immigration Judge's order, as a matter of best practice, should . . . contain information about how to pay and the consequences of a failure to pay." ECF 71-1 at 5. To that end, the January 2 Memo encourages immigration judges to use the template order that, in turn, instructs applicants to (1) pay the AAF through EOIR's online payment portal, (2) by a payment deadline, and (3) "save or print [their] receipt immediately." ECF 85-1 at 4. Simple enough.

Issues arise, however, from the digital receipt that the template order instructs asylum applicants to preserve. In pertinent part, EOIR's digital receipt states:

> A copy of this receipt must be included with the application, motion, or appeal that is filed with the Immigration Court or the BIA Clerk's office. Failure to include a receipt showing proof of payment will result in a rejection of the filing . . . . Save or print this receipt immediately. A copy will not be sent via email. The tracking ID is required to retrieve a duplicate receipt.

ECF 73-7 at 2. As EOIR's digital receipt makes clear, the agency will reject asylum-related claims if an applicant cannot provide a copy of their AAF payment receipt at an immigration proceeding. ECF 73-7 at 2. Despite the crucial role the AAF payment receipt serves in ensuring asylum applicants' claims are duly processed, however, the January 2 Memo and template order offer no consideration for the significant hurdles a receipt requirement may create for many asylum

applicants. To start, because EOIR does not mail or e-mail a receipt to applicants upon payment, the onus is placed on applicants to "save or print [their] receipt immediately." *Id.* Failing to address the obvious, EOIR offers no explanation for how those without ready access to a printer or computer, such as "aliens in DHS detention" or "state custody," can or should save or print their receipts.[9]

Even for those with ready access to a printer or computer device, the unpredictable timelines associated with detentions and immigration proceedings can make compliance unreasonably difficult for asylum applicants. An example raised by Plaintiff at the September 10 hearing illustrates the point. An asylum applicant paid the AAF on his phone and took a screenshot of his receipt as proof of payment, as seemingly permitted by the digital receipt's instruction to "save" the receipt. When that applicant later reported to a routine Immigrations and Customs Enforcement ("ICE") check-in, he was unexpectedly detained and had his cell phone confiscated. Shortly thereafter, the applicant appeared before an immigration judge who ordered him removed for not offering his AAF receipt on the spot. *See* Hr'g Tr., ECF 143 at 27–28. Thus, despite paying the AAF as required, and saving a copy of the digital receipt as instructed, the applicant faced adverse immigration consequences for his failure to provide immediate proof of payment.

It is too easy to imagine variations of the same issue: for example, someone's printed receipt is confiscated by ICE before they are brought before an immigration judge; or someone leaves their receipt at home to run errands, is unexpectedly detained and brought before an immigration judge, and then must rely on a third party to bring them their receipt on short notice. In any of these variations, it is patently unreasonable that an asylum applicant who has paid the

---

[9] These two subgroups of asylum seekers are specifically mentioned in the January 2 Memo. *See* ECF 71-1 at 6.

AAF, but cannot readily produce their receipt to an immigration judge through no fault of their own, may forfeit their asylum claims.

The government attempts to minimize the problems with its receipt requirement, stating that immigration judges "may reasonably resolve [proof-of-payment issues] in the ordinary course of managing his or her own docket." ECF 132 at 25. But this post-hoc assurance, offered with no supporting details, offers too little, too late to satisfy the APA's requirement of reasoned decision-making. Agency actions may be set aside as arbitrary and capricious if they "entirely fail[] to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. Agency actions may also be set aside as arbitrary and capricious if they fail to consider reasonable alternatives. *Spirit Airlines*, 997 F.3d at 1255. Looking across the January 2 Memo, the template order, and the record provided, it is not apparent that EOIR considered the significant compliance issues its receipt requirement could impose on asylum applicants. The record also does not reflect that EOIR considered *any* alternatives to its receipt requirement, much less the reasonable alternative that its sister agency, USCIS, apparently adopted in not requiring applicants to provide proof of payment at all.[10] *See* Hr'g Tr., ECF 143 at 26 (Plaintiff's counsel stating that USCIS does not require applicants to provide proof of AAF payment). For these reasons, the January 2 Memo and template order must be set aside as arbitrary and capricious agency actions.

**Inconsistencies with USCIS.** Plaintiff also challenges EOIR's January 2 Memo as inconsistent with USCIS's Federal Register Notice. As part of its obligation to perform reasoned decisionmaking, EOIR must also ensure its AAF payment policies do not materially conflict with USCIS's policies. *See DeNaples v. Off. of the Comptroller of the Currency*, 706 F.3d 481, 488

[10] Though the administrative record does not provide details about EOIR's recordkeeping, it defies logic to believe that EOIR lacks an electronic system to track AAF payments where an applicant has no proof on his person.

(D.C. Cir. 2013) (internal quotation marks and citation omitted) ("No one should face multiple and perhaps conflicting interpretations of the same requirement' when disobedience may result in [significant] penalties."). Accordingly, there exists "a compelling need for interpretive uniformity" of a particular statute when "a single individual may be subject to [action regarding that statute] by multiple agencies." *Id.*; *see also Benitez v. Wilkinson*, 987 F.3d 46, 52–53, 56 (1st Cir. 2021) (concluding that an agency had "exercised its judgment in an arbitrary, capricious, or irrational way" by failing to consider the position of its sister agency, which the court viewed as "at least a 'significant factor' that should weigh on the [agency's] analysis") (quoting *Murillo-Robles v. Lynch*, 839 F.3d 88, 91 (1st Cir. 2016)).

Plaintiff once again argues that the inconsistent notice periods provided by EOIR's January 2 Memo and USCIS's Federal Register Notice render EOIR's January 2 Memo arbitrary and capricious. As the Court already held in its February 2 Opinion, however, the remaining inconsistency in notice periods between EOIR's and USCIS's policies is not material. ECF 94 at 10–11. At this stage, both EOIR's January 2 Memo and USCIS's Federal Register Notice require that applicants receive some notice that the AAF payment is due before adverse immigration consequences may attach. Thus, even asylum applicants transferred between the two agencies will receive individual notice from the agency presently adjudicating their asylum claim before they must pay the AAF. For that same reason, Plaintiff's related concern that applicants will not know whether to follow a deadline set by USCIS or EOIR also fails. Applicants can reasonably be expected to follow the payment deadline set by the agency presently adjudicating their asylum case, not a deadline set by the sister agency.

Plaintiff further argues that EOIR failed to adopt a policy that would ensure the agency does not "double-charge[]" applicants who already paid the AAF to USCIS. ECF 123-1 at 34. This

argument also falls short. The Act states the AAF must be paid once "each calendar year" to either "the Secretary of Homeland Security *or* the Attorney General, as applicable." 8 U.S.C. § 1808(a) (emphasis added). Because the Secretary of Homeland Security and the Attorney General are the respective heads of USCIS and EOIR, it is clear from the Act that the AAF is due to only one agency each year, not both. Nothing in the January 2 Memo or the template order suggest that EOIR has construed the Act to require payment of the AAF to EOIR if it was already paid that year to USCIS. This Court thus cannot find that EOIR's January 2 Memo or template order creates significant confusion or otherwise fails to address an "*important* aspect of the problem." *State Farm*, 463 U.S. at 43 (emphasis added). To the extent any immigration judge errs and double charges an asylum applicant in contravention of the Act, this Court is satisfied that EOIR's administrative review process offers a sufficient safeguard.

This Court will thus grant Plaintiff's motion for summary judgment and deny Defendants' motion for summary judgment on Count III for the reasons stated above.

**C. Count IV – Unlawfully Withheld or Unreasonably Delayed Agency Action**

Plaintiff brings an alternative claim pursuant to APA § 706(1) to compel EOIR to implement the Act's asylum fee provision, should this Court hold that the January 2 Memo and template order do not constitute final agency actions. *See* ECF 72 at ¶¶ 143–53. Because the Court holds that the January 2 Memo and template order constitute final agency actions, *supra* section II.C.1, Count IV is dismissed as moot.

**D. Count V – Unlawful Application of the AAF to Withholding and CAT Applications**

Plaintiff's final claim asserts that EOIR's template order must be set aside because it unlawfully instructs immigration judges to dismiss CAT and withholding claims for failure to pay

the AAF. *See* ECF 123-1 at 35–38. This Court holds that Plaintiff is correct and that EOIR's template order must be set aside for conflicting with BIA precedent that binds the agency.

"[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid" and may be set aside under the APA. *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Under its own regulations, EOIR may not instruct its immigration judges to take action that conflicts with BIA precedent. 8 C.F.R. § 1003.1(g)(1) (stating that BIA decisions, unless modified or overruled by the BIA or Attorney General, "are binding on all . . . immigration judges in the administration of the immigration laws of the United States."). In July, 2026, the BIA held that "consistent with the plain language of the [Act], the [AAF] and consequences for not paying it do not extend to an application for statutory withholding of removal or a request for protection under the CAT." *Matter of L-F-R-*, 29 I&N Dec. 787, 788 (BIA 2026). To avoid running afoul of BIA's binding precedent, then, EOIR must not instruct its immigration judges to deny applications for withholding or CAT protection solely for failure to pay the AAF. As Plaintiff persuasively argues, however, the phrasing of EOIR's template order raises that exact risk.

As pertinent here, the final paragraph of EOIR's template order states that a "[f]ailure to timely pay the [AAF] may result in a finding that you have abandoned or withdrawn your *application* and may result in *its* denial or dismissal." ECF 85-1 at 4 (emphases added). The government argues that the "application" mentioned in this paragraph refers only to an "asylum application," as brought up twice in the opening paragraph of the template order. *See id.* However, further down, the template order requires the AAF be paid for any "Form I-589, *Application* for Asylum and for Withholding of Removal" that has been pending for over a year without an AAF payment. *See id.* (emphasis added). At best then, the template order makes it unclear whether

immigration judges should deny or dismiss only the asylum application or the entire Form I-589 application when an applicant does not pay the AAF by the payment deadline.

The ambiguous command of EOIR's template order thus leaves the door open for immigration judges to improperly deny entire Form I-589 applications—including any claims for withholding or CAT protection contained therein—when applicants fail to timely pay the AAF. At the September 10, 2026 hearing, the government contended this issue was "largely moot[ed]" because immigration judges now know to follow *L-F-R-*'s precedent and ignore the erroneous reading of its template order. Hr'g Tr., ECF 143 at 11. However, the fact remains that so long as the template order remains available to immigration judges in its present form, it is both foreseeable and plausible that judges may apply the incorrect reading of EOIR's template order and deny CAT and withholding claims for failure to pay the AAF. Given the significant potential for conflict with the BIA's holding in *Matter of L-F-R-* and the severity of harm that applicants may face if their withholding or CAT protection claims are improperly denied—potential removal to countries they fear may subject them to imprisonment or torture—additional care and clarity is demanded of the government's template order and it must be set aside. *See Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329, 1334 (D.C. Cir. 1995) ("When sanctions are drastic . . . elementary fairness compels clarity."). This Court will thus grant Plaintiff's motion for summary judgment and deny Defendants' motion for summary judgment on Count V.

## V. REMEDIES

"Vacatur is the normal remedy under the APA, which provides that a reviewing court 'shall . . . set aside' unlawful agency action." *Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705, 717 (quoting 5 U.S.C. § 706(2)); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018) ("The Supreme Court has recognized that Section 706(2)(A)

requires federal courts to set aside federal agency action' that is 'not in accordance with law.") (citation omitted); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 842 (Kavanaugh, J., concurring) ("The federal courts have long interpreted the APA to authorize vacatur of agency actions. Both the text and the history of the APA support that interpretation, and courts have had no real difficulty applying the remedy in practice."). This Court believes the ordinary remedy is the best one here—because the January 2 Memo and template order both suffer from legal defects, they each must be vacated under Section 706 of the APA.

This Court does not believe that any further remedy is necessary to afford complete relief to the Plaintiff and therefore denies its requests for further declaratory and injunctive relief, ECF 72 at ¶ 160. As relevant here, Plaintiff asks this Court to declare that : (1) Section 1808 is not self-executing and Defendants lack authority to require applicants to pay the AAF or impose consequences for nonpayment until EOIR adopts a new policy implementing the AAF in a manner that complies with the APA; (2) Defendants lack authority to impose adverse consequences on applicants who timely paid the AAF to USCIS or EOIR through any method of payment; (3) the initial asylum fee and AAF do not apply to claims for withholding or CAT protection; (4) Defendants lack authority to deny claims for withholding or CAT protection based on nonpayment of the AAF; and (5) any applicant who received a wrongful removal order as a result of EOIR's policies is entitled to relief. *See id.*; ECF 123-1 at 48. Plaintiff's request for declaratory relief is driven by its concern that the government will continue to implement 8 U.S.C. § 1808 in ways that conflict with the ruling of this Court, particularly given the government's express suggestion that the Act's AAF provision is self-executing. *See* ECF 71-1 at 7 n.12 (stating that even if the January 2 Memo is enjoined, "EOIR adjudicators will remain obligated to apply the relevant provisions of the [Act], including the AAF, unless those provisions are themselves enjoined or invalidated.")

Although Plaintiff may be right that EOIR's January 2 Memo and template order broadly advance unlawful interpretations of the Act's requirements, those unlawful interpretations in the ether are not before this Court; the specific agency actions are. This Court does not need to independently enter declaratory judgment to find the January 2 Memo and template order are unlawful; it has already so held.

As to Plaintiff's request for injunctive relief, this Court finds that vacating the two final agency actions should afford Plaintiff complete relief. Plaintiff essentially asks this Court to enter an injunction to forbid the government from enforcing the January 2 Memo and template order or the understandings of the Act that this Court has found unlawful against them. Of course, vacating a rule means that it is void, null, and nonexistent; the government cannot continue to enforce it, implement it, or otherwise use it. *See Corner Post*, 603 U.S. at 838 (Kavanaugh, J., concurring) ("The text of § 706(2) directs federal courts to vacate agency actions in the same way that appellate courts vacate the judgment of trial courts."); *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must 'initiate another rulemaking proceeding if it would seek to confront the problem anew.'"); M. Sohoni, *The Past and Future of Universal Vacatur*, 133 YALE L.J. 2305, 2308 n.4 (noting that vacatur "means the invalidation of a rule, not just 'as to the plaintiffs' but 'as to anyone,' with the effect of restoring the status quo before the rule's adoption."). The principle that an agency should not continue to use a vacated rule is the natural outflow of vacatur; an affirmative injunction is not necessary to implement this Court's ruling.[11]

[11] Plaintiff's prayer for relief also seeks an order requiring "EOIR to make appropriate efforts to reimburse or credit asylum seekers for any attempts to pay the annual fee made through the EOIR's initial fee portal, by mail, or through other means." ECF 72 at ¶ 160.j. This Court cannot enter such an order because monetary damages are not a form of relief permitted by the APA. *See Genesis Healthcare, Inc. v. Becerra*, 39 F.4th 253, 262 (D.C. Cir. 2022) (citing 5 U.S.C. § 702).

## VI. CONCLUSION

For the reasons stated above, the January 2 Memo and template order are held unlawful and thus set aside under 5 U.S.C. § 706 for failing to address and consider the compliance problems created by EOIR's receipt requirement. The template order is independently held unlawful and set aside for containing language that improperly suggests that immigration judges may dismiss CAT and withholding claims (or a Form I-589) for failure to pay the AAF. Plaintiff's motion for summary judgment is granted as to Counts III and V and denied as to Counts I, II, and IV. The government's motion, construed as a motion for summary judgment, is granted as to Counts I, II, and IV, and denied as to all other counts.

A separate Order follows.

Dated: September 22, 2026

/s/
Stephanie A. Gallagher
United States District Judge